UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20552-GAYLES/TORRES

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and
ESTHER NUHFER,

    Defendants.
_____/

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS'
JOINT MOTION FOR RELEASE OF *LIS PENDENS* ON SUBSTITUTE ASSETS**

The United States of America hereby responds in opposition to *David Rivera and Esther Nuhfer's Joint Motion for Release of Lis Pendens on Substitute Assets* [ECF No. 54] ("Motion").

In their Motion, Defendants ask this Court to issue an order requiring the Government to lift *lis pendens* it has recorded against several real properties, so Defendants can hire present counsel to represent them on a permanent basis. However, controlling Eleventh Circuit precedent holds that a *lis pendens* is not a "seizure" or "restraint." *United States v. Register*, 182 F.3d 820, 835-36 (11th Cir. 1999). Further, contrary to Defendants' assertions, the Government properly filed the *lis pendens* at issue here. Florida law requires only a "fair nexus" between the pending action and the property for a *lis pendens* to be recorded. See *J.B.J. Inv. of S. Fla., Inc. v. Maslanka*, 163 So. 3d 726, 728 (Fla. 5th DCA 2015) ("If alienation of the property or the imposition of intervening liens *conceivably* could disserve the purposes for which *lis pendens* exists, a fair nexus must be found.") (emphasis added). That nexus is satisfied here, where upon conviction the property specifically identified in the Indictment (and more) will be forfeited.

Here, consistent with the Sixth Amendment, the Government has offered to consider

1

releasing *lis pendens* on substitute property if Defendants show they financially need such property to retain counsel. They have refused to do so. Indeed, Defendants do not attempt to make any *prima facie* showing of need in their Motion. Rather, they argue financial need is not required under *Luis v. United States*, 578 U.S. 5 (2016). But in *Luis*, the Supreme Court held that the Sixth Amendment is implicated only when restrained substitute property is "needed" to pay a "reasonable fee" to obtain counsel of choice. 578 U.S. at 10, 18, 23. Thus, while Defendants frame *lis pendens* as violative of the Sixth Amendment, *Luis* instead shows that Defendants have no Sixth Amendment right to substitute property without a showing of financial need. Moreover, Defendants appear to have other resources to secure counsel. Without a showing of financial need here, the Court should deny the Motion.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On November 16, 2022, a Grand Jury sitting in the Southern District of Florida returned an Indictment charging Defendants in Count 1 with conspiracy to commit an offense against the United States, that is, failure to register as a foreign agent, in violation of 18 U.S.C. § 371 and 22 U.S.C. §§ 612(a), 618(a)(1), in Count 2 with failure to register as a foreign agent, in violation of 22 U.S.C. §§ 612(a) and 618(a)(1), in Count 3 with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and in Counts 4-8 with engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. § 1957. (Indictment, ECF No. 3.)

The Indictment alleged that Rivera and Nuhfer conspired to unlawfully enrich themselves by engaging in political activities in the United States on behalf of the Government of Venezuela, and by representing Venezuelan governmental interests before U.S. officials, in an effort to influence U.S. foreign policy toward Venezuela. It also alleged that to conceal these efforts, Defendants failed to register under the Foreign Agents Registration Act ("FARA") as agents of

the Venezuelan government and created the false appearance that they were providing consulting services to PDV USA Inc., a wholly owned subsidiary of the Venezuelan state-owned and state-controlled oil company, Petroleos de Venezuela, S.A. ("PDVSA"). (*Id.* at 4-27.) As part of this conspiracy, between late March and late October 2017, over $20 million in U.S. currency was transferred to Interamerican Consulting, Inc., which Rivera divided among himself, Nuhfer, and others. (*Id.* at 8, 10, 13, 13-14, 16-17, 25, 27.) From in or around February 2017 through in or around December 2018, Defendants conspired to launder these proceeds, engaging in monetary transactions in criminally derived property of a value greater than $10,000. (*Id.* at 28-31.)

The Indictment also contained forfeiture allegations, which provided that upon conviction of a violation of, or conspiracy to violate, 22 U.S.C. §§ 612(a) and 618(a)(1), Defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to 18 U.S.C. § 981(a)(1)(C). (*Id.* at 31.) The forfeiture allegations also provided that upon conviction of a violation of 18 U.S.C. §§ 1956 and/or 1957, Defendants shall forfeit to the United States any property, real or personal, involved in such offense, and any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1). (*Id.*)

The forfeiture allegations then listed five assets alleged to be subject to forfeiture as directly forfeitable assets pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1). (*Id.* at 32.) Additionally, the forfeiture allegations specifically identified other assets alleged to be subject to forfeiture as substitute property pursuant to 21 U.S.C. § 853(p). (*Id.* at 33.) The Government has recorded *lis pendens* on all real properties identified for forfeiture, pursuant to Florida (and similar Georgia) law.[1] After additional review, *lis pendens* currently are recorded on the following seven real

---

[1] Defendants do not challenge the *lis pendens* under Georgia state law. (Mot. at 2 n.1.) Rivera specifically requests the release of *lis pendens* recorded on the (a) New Smyrna Beach property and (f) the Oviedo property. (*Compare id. with* Indictment, at 33.) Defendants identify Rivera's

3

properties identified in the Indictment as substitute property as to each of Defendants: (1) 3663 S. Atlantic Ave, Unit 20C, New Smyrna Beach, Florida 32169 (Rivera); (2) 9425 S.W. 38th Street, Miami, Florida 33165 (Nuhfer); (3) 82 Tingler Lane, Marathon, Florida 33050 (Nuhfer); (4) 3060 Fleet Street, Marietta, Georgia 30064 (Rivera); (5) 549 Bethesda Court, Oviedo, Florida 32765 (Rivera); (6) 13604 SW 83rd Court, Palmetto Bay, Florida 33158 (Nuhfer); and (7) 2188 Ellis Mountain Drive, S.W., Marietta, Georgia 30064 (Rivera).[2] (*See* Notice of Filing, ECF No. 55.)

After Defendants were indicted, their temporary counsel contacted the United States concerning the *lis pendens* on real properties identified as substitute assets in the Indictment, asking for them to be released to pay for counsel to make a permanent appearance. The Government consistently stated that it is willing to consider releasing the *lis pendens* if Defendants can make a showing that they need substitute property to retain counsel. Defendants declined to address information provided to them by the Government or to make any showing of financial need, beyond a bare offer by counsel to state there was a need.

On February 10, 2023, counsel for Defendants each entered a Notice of Temporary Appearance, indicating that a "limited appearance is being entered to litigate the propriety of the government placing *lis pendens* on [Defendants'] innocent 'substitute assets.'" (ECF Nos. 37, 38, and 40.) On March 13, 2023, pursuant to the Court's briefing schedule, Defendants filed their Motion, requesting the release of *lis pendens* on substitute property to pay for their attorneys' fees.

---

wife, the nominal titleholder to the Oviedo property, as an "Interested Party" who will join the motion separately. (*Id.*) Any attempt by a third party to intervene at this stage of the proceeding is barred by 21 U.S.C. § 853(k)(1). *United States v. Moser*, 586 F.3d 1089, 1094 (8th Cir. 2009) ("Federal Rule of Criminal Procedure 32.2(b)(2) and 21 U.S.C. § 853(k) preclude third-party claimants from actually intervening in underlying criminal cases."); *United States v. Douglas*, 55 F.3d 584, 586 (11th Cir. 1995) ("Section 853(k)(1) similarly bars third-parties from intervening directly in the criminal forfeiture prosecution.").

[2] Based on the Government's own review as well as information provided by counsel for Rivera, the United States released the *lis pendens* recorded on 237 Cole Street N.E., Marietta, Georgia.

## **LEGAL STANDARD**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defence." U.S. CONST. AMD. VI. When defendants' assets are directly forfeitable, they have "no Sixth Amendment right to use those tainted funds to hire an attorney." *United States v. Gosney*, 2023 WL 1434183, at *4 (11th Cir. Feb. 1, 2023); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989) ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney even if those funds are the only way that that defendant will be able to retain the attorney of his choice."). But "the pretrial restraint of legitimate, untainted assets *needed* to retain counsel of choice violates the Sixth Amendment." *Luis*, 578 U.S. at 10 (emphasis added). In such a case, the defendant "has a Sixth Amendment right to use her own 'innocent' property to pay a *reasonable fee* for the assistance of counsel." *Id.* at 23 (emphasis added).

## **ARGUMENT**

### I. **Defendants make no showing of financial need to warrant the Court's intervention on Sixth Amendment grounds.**

#### A. **As set forth in *Luis* and subsequent cases, the Sixth Amendment is implicated only when assets are *needed* to secure counsel.**

In their Motion, Defendants aver "*Luis* controls this case." (*See* Mot. at 12.) Defendants, however, misconstrue the facts and holding of *Luis*. They erroneously argue that in *Luis*, "the Supreme Court held that the pretrial restraint of substitute assets violated both the Fifth and Sixth Amendment rights of the accused." (*See id.*) However, the Supreme Court's decision in *Luis*—consistent with its decisions in *Caplin & Drysdale* and *United States v. Monsanto*, 491 U.S. 600 (1989)—affirms that the Sixth Amendment is implicated only when assets are *needed* for counsel.

In *Luis*, the Government restrained assets under 18 U.S.C. § 1345, a statute that authorizes the restraint of assets "of equivalent value to" property obtained as a result of a health care or

5

banking offense. *See* 578 U.S. at 9-10; 28 U.S.C. § 1345(a)(2)(B)(i). As the Supreme Court noted, "[t]he Government claimed that Luis had fraudulently obtained close to $45 million, almost all of which she had already spent…. [A]nd hoping to preserve the $2 million remaining in Luis' possession …, the Government sought a pretrial order prohibiting Luis from dissipating her assets." 578 U.S. at 8.[3] Under those circumstances, the Court considered "[w]hether the pretrial restraint of a criminal defendant's legitimate, untainted assets (those not traceable to a criminal offense) *needed* to retain counsel of choice violates the Fifth and Sixth Amendments." *Id.* at 10 (emphasis added). The Court answered yes, that "the pretrial restraint of legitimate, untainted assets *needed* to retain counsel of choice violates the Sixth Amendment." *Id.* (emphasis added).

Defendants contend that they do not have to show a "need" or the "reasonableness" of proposed legal fees in order to have the *lis pendens* released to retain counsel, arguing *Luis* imposes no such requirement. (Mot. at 18-19.) Defendants, however, fail to cite any decision that supports their contention. That is because post-*Luis*, courts continue to hold that there is no Sixth Amendment violation when defendants have not established financial need for an asset that is under restraint or *lis pendens*. *See, e.g.*, *United States v. Marshall*, 754 F. App'x 157, 161 (4th Cir. 2018) ("[W]e hold that *Luis* does not apply if the defendant did not need the restrained funds to retain counsel … [defendant] does not dispute that *Luis* error requires a showing of the need for

---

[3] In *Luis*, because the alleged fraud was $45 million, and the temporary restraining order restrained all proceeds of defendants' health care offenses or "property of an equivalent value," there was no dispute that the defendant needed restrained assets because she was "in possession of much less than $45 million in personal assets." *United States v. Luis*, 966 F. Supp. 2d 1321, 1329 (S.D. Fla. 2013); Temporary Restraining Order, ECF No. 11, *United States v. Luis et al.,* Case No. 12-cv-23588-PCH (S.D. Fla.); *see also* Corrected Mot. To Modify Restraining Order, at 2, ECF No. 46, *United States v. Luis et al.,* Case No. 12-cv-23588-PCH (S.D. Fla.) ("As proffered in open court during her pretrial detention hearing in the criminal case, Ms. Luis does not own assets totaling $45 million, so the TRO effectively freezes *all* of the assets of defendant Sila Luis, even those not traceable to the alleged Medicare fraud.") (emphasis in original).

6

the restrained funds"); *United States v. Jones*, 844 F.3d 636, 641 (7th Cir. 2016) ("[I]f [defendant] had sufficient alternative assets available to him, then *Luis* would not have strengthened his litigating position."); *United States v. $89,866.18*, 2021 WL 1560813, at *2 (N.D. Ind. Apr. 21, 2021) ("[C]ourts have not interpreted *Luis* to mean that a defendant need no longer show a *bona fide* need for the funds.") (citing cases); *see also United States v. Lindell*, 766 F. App'x 525, 528 (9th Cir. 2019) (Sixth Amendment not violated where defendant failed to demonstrate that he needed untainted funds to pay for counsel); *United States v. Gosney*, 2022 WL 18542509, at *3 (S.D. Fla. June 10, 2022) (over Government's objection, allowing defendant "to make the prerequisite showing of financial need on an *ex parte* basis" and then requesting clarification "on whether [defendant] intended to meet his ultimate burden to prove at an adversarial hearing that he needs the restrained assets to hire his counsel of choice"), *aff'd* 2023 WL 1434183 (11th Cir. Feb. 1, 2023); *United States v. Balotin*, 2023 WL 2264181, at *19 (M.D. Fla. Feb. 8, 2023) (while expressing concerns as to whether Florida *lis pendens* were recorded properly, ultimately finding that because defendant "failed to fully disclose his assets pretrial and has failed to make any effort to do so now in support of [his motion for new trial]," he had not established that any properties with *lis pendens* "was necessary to secure [the defendant's] Sixth Amendment right.").[4]

In *$89,866.18*, a criminal defendant asked that the court release "all funds [in the parallel civil forfeiture] that cannot be traced to the alleged underlying criminal conduct to pay his counsel, and [argued] that the release of untainted funds need not be tied to a demonstration of particular need of them after the Supreme Court's decision in [*Luis*]." 2021 WL 1560813, at *2. The court analyzed several cases, and determined that *Luis* did not obviate a defendant's obligation to show

---

[4] The *Balotin* court did not consider the arguments presented below regarding the propriety of recording *lis pendens*, including the Supreme Court's recognition of the Government's "important" interest in substitute property. *Compare* 2023 WL 2264181, at *6 *with infra* at 13-20.

7

a "*bona fide* need." *Id.* There, because defendant presented only "a vague assertion of *bona fide* need and a statement of the amount of fees he currently owes his counsel of choice," the court declined to release funds. *Id.*

Among other cases, *$89,866.18* relied on *United States v. Hernandez-Gonzalez*, 2017 WL 2954676 (S.D. Fla. June 26, 2017), *R&R adopted*, 2017 WL 3446815 (S.D. Fla. Aug. 10, 2017). In *Hernandez-Gonzalez*, Chief U.S. Magistrate Judge Edwin G. Torres wrote, "it is settled law that 'a defendant must "show a *bona fide* need to utilize [seized] assets ... to conduct his defense" in order to be entitled to a hearing.'" 2017 WL 2954676, at *7 (alteration in original). Although (as Defendants note in their Motion) *Hernandez-Gonzalez* involved traceable assets, Chief Magistrate Judge Torres articulated the kind of financial disclosure required to determine "need" that would apply to the release of any asset. *See id*. Chief Magistrate Judge Torres rejected the request for a hearing on a motion to release seized assets because "Defendant has not proffered any verified financial affidavits for himself in support of his Motion and no banking statements that show a lack of available assets." *Id. Accord United States v. Aventura Techs., Inc.*, 607 F. Supp. 3d 278, 282-85 (E.D.N.Y. 2022) (analyzing under *Luis* and *Kaley v. United States*, 571 U.S. 320 (2014), (among other cases) whether defendant must still show need to release untainted assets, and holding defendant still must make that showing).

Moreover, when addressing financial need, the Court may consider defendants' family members' finances. *See United States v. Kirshenbaum*, 156 F.3d 784, 792 (7th Cir. 1998); *Hernandez-Gonzalez*, 2017 WL 2954676, at *7 ("[A] court may inquire into the finances of family members when assessing financial need."); *United States v. Real Prop. Known as 223 Spring Water Lane*, 2021 WL 9439845, at *9 (E.D. Ky. Sept. 28, 2021).

8

**B.       Defendants ignore the financial *need* requirement of the Sixth Amendment because they likely have assets that are not under restraint or *lis pendens* that can be used to secure counsel.**

Here, Defendants consistently have refused to make *any* showing of financial need or disclose counsels' proposed fees to the Government. (*E.g.*, Mot. at 19.) The Government's investigation has revealed a strong basis to believe that Defendants have other assets with which they can retain counsel and pay a reasonable fee. For example, on June 17, 2022, Rivera filed a Form 6 statement of financial interests with the Florida Division of Elections in an effort to run for state office. In the Form 6, filed under oath, Rivera stated that he had net worth of $984,137 as of June 15, 2022. Rivera listed various other assets that are not named in the Indictment. These include, in part, a real estate property in Mexico that Rivera estimated was worth $150,000 and other financial accounts in Mexico, Taiwan, and Haiti totaling approximately $160,000 in value. In addition, Rivera reported $120,000 in income from two companies, including $97,000 from a Mexican company named Xemma Holdings, S.A. de C.V. (*See attached* **Exhibit 1**, 2022 Form 6.) This disclosure of foreign assets largely is consistent with a Form 6 that Rivera previously filed in 2016 in an earlier run for office. (*See attached* **Exhibit 2**, 2016 Form 6).[5]

In addition, Rivera transferred significant assets to members of his immediate family. For example, in December 2019, Rivera caused a company he controlled, Lewis Baach Advisors LLC, to pay his sister approximately $266,980.20 by transferring the funds to one of his sister's accounts at Wells Fargo Bank for which Rivera was a named beneficiary. In March 2021, Rivera, in several

---

[5] Notably absent from the 2022 Form 6 are the substitute real properties and one of the directly forfeitable properties identified in the Indictment. In addition, Rivera failed to disclose on the Form 6 several bank accounts at Synovus Bank and South State Bank for which he was either the sole or joint accountholder that had a combined balance of approximately $554,346 at the time of the Form 6's filing.

transactions,[6] transferred an additional approximately $1.5 million from various of his personal accounts to his sister's accounts at Wells Fargo, at which time several other members of Rivera's family were added as beneficiaries to the accounts. As late as September 2022, these same accounts had a total balance of approximately $500,000 when they were closed by Wells Fargo.

For Nuhfer, the Government is aware of an unrestrained account holding assets in excess of $100,000. The Government also is aware that her husband is employed and may be able to contribute financially to her defense.

## II.     *Lis pendens* on substitute property is not a restraint for constitutional purposes.

Further, there is no Sixth Amendment issue because a *lis pendens* is not a "restraint" on Defendants' properties. Although Defendants label the *lis pendens* as "restraints" and argue that it is "impossible" for them to use those properties to secure counsel (Mot. at 13), it has been the law in this Circuit for over 20 years that a *lis pendens* is not a restraint or seizure. *United States v. Register*, 182 F.3d 820 (11th Cir. 1999). And contrary to Defendants' argument, *Register* is not disturbed by *Luis,* implicitly or otherwise.

### A.     **Florida *lis pendens* is not a restraint.**

Under Florida law, *lis pendens* merely notify prospective buyers and third parties of the pending action and that the Government has claimed an interest in the property. In *Register*, the defendant argued that *lis pendens* filed against his only two Florida real properties prevented him from hiring his attorney of choice in violation of the Sixth Amendment, and that he was entitled

---

[6] These transfers took place within two weeks of U.S. District Judge Marcia G. Cooke's grant of summary judgment in favor of the Federal Election Commission ("FEC") in a civil lawsuit the FEC filed against Rivera. Judge Cooke's order required Rivera to pay a fine of $456,000 in penalties for his willful violations of federal elections law. *See* Order, at 34-37, Feb. 23, 2021, ECF No. 163, *Fed. Election Comm. v. Rivera*, Case No. 17-cv-22643 (S.D. Fla.); *see also* Order Denying Mot. To Alter or Amend Judgment, ECF No. 191, *Fed. Election Comm. v. Rivera*, Case No. 17-cv-22643 (S.D. Fla.).

to a hearing under the Fifth Amendment to determine if the assets were untainted.[7] 182 F.3d at 834. The Eleventh Circuit disagreed, unambiguously stating that a *lis pendens*—filed by the Government pursuant to the same Florida statute at issue here—was not a restraint:

> Here, prior to trial and the jury's finding of forfeitability, ***the government did not "seize," physically or otherwise, the property*** in which Charles Register claimed an ownership interest, and ***it did not obtain a restraining order*** from the district court preventing Charles Register from disposing of these parcels of real estate. Instead, the government filed a notice of *lis pendens* pursuant to Florida law, an action that had the effect of notifying the public (and in particular, prospective buyers or recipients of the land) that the government claimed an interest in the property. Admittedly notices of *lis pendens* have the practical effect of impeding an owner's ability to sell property, particularly at its (unrestricted) market value…. Still, "the *right* to alienate the property ... exist[s]."

*Id.* at 835-36 (emphasis added) (citations omitted). And the Eleventh Circuit then summarized:

> In short, a filing of a *lis pendens* pursuant to state statute does not constitute a "seizure" and does not affect property interests to an extent significant enough to implicate the Due Process Clause of the Fifth Amendment. Consequently, Charles Register was not entitled to a pre-trial hearing on the legitimacy of the government's claim to his property under the criminal forfeiture statute.

*Id.* at 837; *see also United States v. Bohning*, 321 F. App'x 855, 858 (11th Cir. 2009) (following *Register* and holding "Bohning was not entitled to a hearing with regard to the *lis pendens* on his residence, as it did not constitute a seizure."); Order, at 7, Feb. 14, 2020, ECF No. 181, *United States v. Guruceaga et al.*, Case No. 18-cr-20685 (S.D. Fla.) (Torres, J.) (following *Register* and *Bohning* and declining to lift *lis pendens* because "the notices of lis pendens are not a seizure of their properties"); *United States v. Lebed*, 2005 WL 2495843, at *10 (E.D. Pa. Oct. 7, 2005) (relying on, *inter alia*, *Register* and holding "in the context of forfeiture *lis pendens* simply do not rise to the level of restraint or seizure as set forth in 21 U.S.C. § 853(e), the relevant forfeiture

---

[7] Defendants' attempt to distinguish *Register*'s holding as dicta is unavailing. The Eleventh Circuit was responding directly to the defendant's arguments. *Compare* (Mot. at 15) *with Register*, 182 F.3d at 834.

procedures for pretrial restraint set forth under § 2461(c). Because we hold that *lis pendens* do not amount to an impermissible restraint on Defendants' assets, Defendants' Motion for the Discharge of Certain *Lis Pendens* is denied.").

As *Register* observes, even where a *lis pendens* is filed, a defendant may still seek to sell that property. This may be contrasted with an injunction, or when the Government obtains a protective order under 21 U.S.C. § 853(e) that prohibits alienation of the property. For example, in *United States v. Balsiger*, 910 F.3d 942, 951 (7th Cir. 2018), the defendant sold his residence for a substantial amount despite the recorded *lis pendens*. In that case, "the court underscored its concern that Balsiger was engaging in intentional delay and attempting to manufacture a Sixth Amendment claim." *Id.* at 949. The Seventh Circuit observed that despite complaining of the *lis pendens*, the defendant never alerted the court of the sale and did not use the sale proceeds or "other significant assets" to retain an attorney. *Id.* at 951. Here, any assertion Defendants cannot sell the properties remains as speculative as is their financial need to use them to secure counsel.

Because in the Eleventh Circuit a Florida *lis pendens* is not a restraint, Defendants' citations to other circuits discussing "pretrial restraint" of substitute assets under 21 U.S.C. § 853 are inapposite. (Mot. at 14.)

      **B.**    *Luis* **does not abrogate** *Register*.

Recognizing that *Register* is binding law, Defendants go on to argue that *Luis* somehow disturbs *Register*'s holding. (Mot. at 16-17.) In *Luis*, the restraint on substitute property was authorized by 18 U.S.C. § 1345, an injunctive action. *Lis pendens* was not at issue in *Luis* and, indeed, the term "*lis pendens*" is not mentioned at all in *Luis*.

Two decisions out of the Third Circuit confirm that *Luis* leaves *Register*'s holding undisturbed. Initially in *United States v. Thomas*, 440 F. App'x 148, 152 (3d Cir. 2011) [hereinafter *Thomas I*], the Third Circuit held, pre-*Luis*, that "*lis pendens* were not impermissible pretrial

restraints on an owner's ability to alienate property." There, the Third Circuit considered *lis pendens* filed, *inter alia*, on a substitute asset, and its reasoning was the same as the Eleventh Circuit's in *Register*—a "*lis pendens* simply serves to notify," it "does not prevent the sale of the property, nor is it a lien on the property," it did not constitute "impermissible pretrial restraints on an owner's ability to alienate property," and defendant "was free to liquidate the properties as he saw fit." *Id.* (citations omitted).

After *Luis* was decided, Thomas asked the Third Circuit to revisit its 2011 holding based on "a new rule of law." *United States v. Thomas*, 750 F. App'x 120, 125 (3d Cir. 2018) [hereinafter *Thomas II*]. The Third Circuit, however, held *Luis* was distinguishable because its earlier determination in *Thomas I* was that "the *lis pendens* notice was not a 'restraint' on the [substitute] Willis Mill property because it did not prevent Thomas from selling it" and that "*Luis* does not provide any guidance on whether a *lis pendens* notice should be treated for Sixth Amendment purposes like a court-ordered freeze." *Id.* (declining to change its 2011 holding in *Thomas I*); *see also Balsiger*, 910 F.3d 942 (post-*Luis* decision finding *lis pendens* recorded on the defendant's residence—an "untainted asset"—did not infringe on his Sixth Amendment rights).[8]

C. **The Supreme Court's analysis in *Luis* confirms that a "fair nexus" exists between this case and the identified properties to record a Florida *lis pendens*.**

In the Motion, Defendants also argue that the recording of *lis pendens* on substitute property is improper under Florida law.[9] All Florida *lis pendens* law requires, however, is a "fair

---

[8] While the Seventh Circuit in *Balsiger* also stated, "we cannot foreclose a circumstance where a *lis pendens* operates to infringe on a defendant's right to choice of counsel," that circumstance is not present here for at least two reasons. First, the Government has stated that if Defendants can show a need to use substitute property to secure counsel, the Government would release it, to respect their Sixth Amendment rights. Defendants have declined to show any financial need. Second, *Register* controls in this case, which found a Florida *lis pendens* is not a restraint.

[9] "Because there is no federal *lis pendens* law, and this matter concerns real property located in Florida, Florida state law applies." *Zokaites v. 3236 NE 5th St., Inc.*, 2007 WL 9706338, at *2 n.1

13

nexus" between the legal proceeding and the real property. That nexus is more than satisfied here.

As Defendants acknowledge, a *lis pendens* is proper when a "fair nexus" exists between the real property and legal dispute. (Mot. at 9 (quoting *Conseco Servs., LLC v. Cuneo*, 904 So. 2d 438, 439 (Fla. 3d DCA 2005)); *Id.* at 4 (stating "[i]t is blackletter law in Florida that to place a valid *lis pendens* on a property, the action must be founded on a duly recorded instrument … *or there must be a nexus between the property at issue and the underlying case*") (emphasis added).) As they also acknowledge, this requires only a "good faith, viable claim." (*Id.* at 9 (quoting *Nu-Vision, LLC v. Corp. Convenience, Inc.*, 965 So. 2d 232, 234 (Fla. 5th DCA 2007)).) And this is not a heavy burden; "[t]he relevant question is whether alienation of the property or the imposition of intervening liens, if either actually occurred, *conceivably* could disserve the purposes for which *lis pendens* exists. Where the answer is yes, fair nexus *must* be found." *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993) (emphasis added). All that is required is "a minimal showing that there is at least some basis for the underlying claim." *Nu-Vision*, 965 So. 2d at 235; *Saadi v. Pierre a Maroun*, 2020 WL 1894351, at *3 (M.D. Fla. Jan. 3, 2020). "The proponent need not demonstrate a substantial likelihood of success on the merits[.]" *J.B.J. Inv. of S. Fla., Inc. v. Maslanka*, 163 So. 3d 726, 728 (Fla. 5th DCA 2015) (citing *Chiusolo*, 614 So. 2d at 492).

The United States is entitled to forfeit substitute property under 21 U.S.C. § 853(p) when directly traceable property is not available for forfeiture, and any one of five prongs have been met. The statute allows for the forfeiture of specific, identifiable substitute *property* where other *property* is unavailable. *See* 21 U.S.C. §§ 853(a), (p). Two of the available prongs to authorize substitute property forfeiture include when illicit assets have been transferred to third parties or substantially diminished in value. *See* 21 U.S.C. § 853(p)(1)(B), (D). By Defendants' own

---

(S.D. Fla. Nov. 13, 2007).

arguments, those prongs are met here. If Defendants require substitute property to pay for counsel, then they certainly no longer possess unidentified directly forfeitable assets, meaning substitute asset forfeiture *must* occur. *United States v. Knowles*, 819 F. App'x 781, 783 (11th Cir. 2020) ("Rule 32.2(e) further provides that, if the government shows that the defendant's property is subject to forfeiture as substitute property, the court *must* enter an order forfeiting that property.") (emphasis added). Thus, the substitute properties listed in the Indictment are subject to mandatory forfeiture. *See United States v. Fleet*, 498 F.3d 1225, 1227-31 (11th Cir. 2007) (any of defendant's property may be forfeited as substitute asset); *Knowles*, 819 F. App'x. at 783 ("We've held that the word 'any' in § 853(p) is a broad word that 'does not mean some or all but a few, but instead means all …'") (citing *Fleet*, 498 F.3d at 1229). And as a result, the Government has shown a good faith, viable claim that the substitute real properties are subject to forfeiture.

Defendants' focus in arguing against the propriety of the *lis pendens*, however, is on the uncertainty of litigation and the Government's likelihood of success. They ask the Court to dissolve the *lis pendens* because one cannot say for certain that the Government will be successful at trial (and after), improperly labeling the Government's interest as "potential and speculative." (Mot. at 7-8.) This is wrong for two reasons.

First, the Supreme Court acknowledged in *Luis* that the Government presently has an "important" interest in substitute property. *See Luis*, 578 U.S. at 18-19. In *Luis*, the plurality characterized the Government's interest in substitute property as analogous to "a contingent, future executory interest in property," while the dissent viewed the Government's interest in directly forfeitable and substitute property to be the same. *Compare id.* at 18 *with id.* at 42 (Kennedy J. dissenting (joined by Alito J.) ("The Government has no greater ownership interest in Monsanto's tainted assets than it has in Luis' substitute assets.")). Defendants do not dispute that *lis pendens*

15

may be placed on directly traceable property, nor do they argue that such *lis pendens* violates Florida law. For both directly forfeitable and substitute property, an ancillary result is that the overall forfeiture money judgment a defendant owes will be credited once such property is forfeited and liquidated.[10]

Second, Defendants' arguments mischaracterize Florida *lis pendens* law. When evaluating whether a fair nexus exists, the Court is not to consider the likelihood of success on the merits; uncertainty about the outcome of the case does not preclude a *lis pendens*. *Landmark at Crescent Ridge LP v. Everest Fin., Inc.*, 219 So. 3d 218, 221 (Fla. 1st DCA 2017) ("The uncertainty about the outcome on the merits of the case at this preliminary stage of the litigation does not preclude a showing of the required 'good faith, viable claim' with a fair nexus to the property subject to the *lis pendens*."); *Nu-Vision*, 965 So. 2d at 235 (only "a minimal showing" required); *see Axos Clearing, LLC v. Reynolds*, 2019 WL 2082551, at *3 (S.D. Fla. May 9, 2019) (same). The Government needs only a "minimal showing" that there is and will be a basis for that forfeiture. *Landmark at Crescent Ridge*, 219 So. 3d at 221. The record at this preliminary stage (Defendants have yet even been arraigned) more than satisfies that requirement. On the face of the Indictment, Defendants' criminal acts generated more than $20 million in criminal proceeds. (*See* Indictment,

---

[10] Indeed, Florida courts have upheld *lis pendens* when a judgment may later be executed against real property. *E.g.*, *Saadi*, 2020 WL 1894351, at *8 (*lis pendens* proper under Florida law where plaintiff obtained judgment against defendant but was unsuccessful in collecting, and *may* be able to recover through execution and sale of condominium in supplemental proceeding) (citing *LB Judgment Holdings, LLC v. Boschetti*, 271 So. 3d 115, 125 (Fla. 3d DCA 2019)). *Saadi* describes a process most similar to that contained within the federal forfeiture scheme. Under Florida law, a party may commence supplementary proceedings to recover on a judgment. *Id.* (citing Fla. Stat. 56.29(3)(b)). A similar two-step process is encompassed within § 853 (which in turn is incorporated into 18 U.S.C. § 981 by 28 U.S.C. § 2461(c)). That two-step state-court process allows a judgment creditor to place *lis pendens* on properties the creditor seeks to collect on. *Id.*; *LB Judgment Holdings*, 271 So. 3d at 118-21. Similarly, under the federal scheme, all of Defendants' property is subject to forfeiture where directly forfeitable property is not available.

Count 1.) The value of the directly forfeitable property the Government located in this case is far less than that amount. (*See* Indictment ¶ 4, at 31-34 (Forfeiture Allegations).) Under these circumstances, substitute property forfeiture would be available. (*See supra.*)

Furthermore, Defendants cite state cases (Mot. at 10-12) that are neither factually nor legally equivalent to this one. For example, Defendants focus on *DeGuzman v. Balsini*, 930 So. 2d 752, 754 (Fla. 5th DCA 2006), in which a former spouse filed *lis pendens* related to a contempt action to recover child support. The court there noted there was "no connection" between child support and the properties, and that when the primary purpose of a lawsuit is money damages, a *lis pendens* is not appropriate. That case does not describe a criminal prosecution and related forfeiture or the equivalent. Defendants other cited cases similarly are not analogous. *Sheehan v. Reinhardt ex rel. Est. of Warren*, 988 So. 2d 1289, 1291 (Fla. 2d DCA 2008) (lawsuit based on marital settlement agreement); *Cimbler v. Brent*, 963 So. 2d 812, 813 (Fla. 2d DCA 2007) (no facts as to underlying claim); *Lake Placid Holding Co. v. Paparone*, 414 So. 2d 564, 566 (Fla. 2d DCA 1982) (claim for broker's fee and broken promise to pay it).

Defendants also argue federal courts "routinely order the federal government to remove *lis pendens* where they violate state laws[.]" (Mot. at 4.) Notably, Defendants do not cite to a single case decided under Florida law or after *Luis* for this proposition. Defendants rely principally on *United States v. Jarvis*, 499 F.3d 1196, 1200 (10th Cir. 2007) (*Id.* at 10-11). *Jarvis*, however, was decided under New Mexico *lis pendens* law and its rationale conflicts with *Luis*. In *Jarvis*, the Tenth Circuit's decision turned, in large part, on its assertion that "the United States had no interest in the title to or a claim upon the [substitute] properties at the time of the indictment or the recording of the *lis pendens* on the properties," calling any interest a "potential and speculative future interest." *Id.* at 1205. As discussed, however, considering the ultimate outcome of the case

is improper under Florida *lis pendens* law. *See supra*. And the Supreme Court in *Luis* recognized the Government has an "important" interest in substitute assets, so *Jarvis* therefore no longer is persuasive in its analysis.[11]

Defendants' other cited federal cases also do not apply Florida *lis pendens* law and are pre-*Luis*. (Mot. at 5-7 (citing *United States v. Kavalchuk*, 2010 WL 703105, at *4 (D.N.H. Feb. 23, 2010) (Massachusetts law); *United States v. Coffman*, 2010 WL 3984886, at *4 (E.D. Ky. Oct. 7, 2010) (decided under Kentucky law and relying on *Jarvis*); *United States v. Jewell*, 556 F. Supp. 2d 962, 964 (E.D. Ark. 2008) (Arkansas law); *United States v. Kramer*, 2006 WL 3545026, at *10 (E.D.N.Y. Dec. 8, 2006) (New York law)).)

Indeed, Defendants fail to consider cases where a court has found a *lis pendens* properly

---

[11] Defendants state, "that interest [in substitute assets] cannot mature into an actual interest until after conviction and does not relate back to a pre-conviction date, it cannot satisfy the prerequisites for the recording of a *lis pendens*." (Mot. at 8.) That is wrong under *Luis*, and also fails to acknowledge the state of the law. Although the Eleventh Circuit has not spoken on whether the relation-back doctrine applies to substitute assets, or to what extent, courts hold that the doctrine applies to substitute assets. *See, e.g.*, *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003) ("Given that the purpose of the relation-back provision in § 853(c) was to 'prevent defendants from escaping the impact of forfeiture by transferring assets to third parties,' and the purpose of § 853(p) was similarly to address this very 'impediment[ ] to significant criminal forfeitures,' the substitute property that is subject to forfeiture under § 853(p) must be read to include all property of the defendant at the time of the commission of the acts giving rise to the forfeiture." (citations omitted); *United States v. Derochemont*, 2011 WL 6319293, at *2-3 (M.D. Fla. Dec. 15, 2011) (applying relation-back doctrine to substitute assets); *United States v. Gallion*, 2010 WL 3620257, at *12 (E.D. Ky. Sept. 10, 2010) ("[U]nder the relation back doctrine, all right, title and interest in the property subject to forfeiture are deemed vested in the United States at the time of the commission of the acts giving rise to forfeiture. This doctrine also applies to substitute assets such as those identified in the Superseding Indictment."); *United States v. Ivanchukov*, 405 F. Supp. 2d 708, 712 (E.D. Va. 2005) ("[T]he Government's interest in substitute assets, like its interest in tainted assets, vests at the time the act giving rise to forfeiture is committed"). Other courts hold that the Government's interest vests later, for example at indictment. *United States v. Peterson*, 820 F. Supp. 2d 576, 585 (S.D.N.Y. 2011) ("[T]he government's interest in substitute assets vests upon the issuance of the grand jury indictment.") *aff'd sub nom. United States v. Crew*, 537 F. App'x 3 (2d Cir. 2013). *But see United States v. Kramer*, 2006 WL 3545026, at *6-8 (E.D.N.Y. Dec. 8, 2006) (Government's interest in substitute assets does not vest until conviction).

18

filed against a Florida property sought for forfeiture. For instance, they do not address *United States v. Woods*, 436 F. Supp. 2d 753, 755 (E.D.N.C. 2006). In *Woods*, the court determined that *lis pendens* filed on substitute property was proper under, *inter alia*, Florida law. That court recognized "the government gained an interest in all forfeitable property owned by defendants, including any identifiable substitute property, at the moment in time that the crimes alleged in the indictment occurred" and that "the criminal prosecution constitutes an action which could affect title to the real property claimed by the government as subject to forfeiture." *Id.* at 755; *accord United States v. Makki*, 2007 WL 781821, *16 (E.D. Mich. Mar. 13, 2007) (finding nothing improper in government's *lis pendens* on property listed in the indictment as substitute assets). The reasoning in *Woods* is consistent with the later-decided *Luis*, which recognized competing interests between a defendant and the Government in substitute assets, and that the Government indeed has an "important" contingent interest in substitute assets. *See Luis*, 578 U.S. at 19.[12] And a contingent interest is sufficient to support a *lis pendens*. *E.g.*, *Kerns v. Kerns*, 53 P.3d 1157, 1161 (Colo. 2002) ("[A] claimant must record a notice of *lis pendens* if he wishes to preserve his contingent interest against those who purchase or encumber the property while the lawsuit is pending.").

Finally, the purpose behind a *lis pendens* is satisfied here. *Lis pendens* "warn future purchasers or encumbrancers that a suit is pending that could affect title in a given piece of property." *J.B.J. Inv. of S. Fla.*, 163 So. 3d at 728. As the Indictment makes plain, upon conviction, the Government intends to forfeit the property identified—including the substitute property. The

---

[12] The plurality in *Luis* acknowledged that the "distinction between (1) what is primarily 'mine' (the defendant's) and (2) what is primarily 'yours' (the Government's) does not by itself answer the constitutional question posed." *Luis,* 578 U.S. at 17-19. The plurality balanced those competing interests and held the Government's interest, "despite their importance," would give way if the Sixth Amendment would be violated. *Id.* at 19. As explained above, because Defendants make no showing of financial need, the Sixth Amendment is not implicated here and the Government's "important" interests are not overcome.

*lis pendens* warns potential purchasers of the Government's interest in the identified real property, so they can make an informed decision on their purchase.

## CONCLUSION

For the foregoing reasons the Court should deny the Motion.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By: */s/ Joshua Paster and Nalina Sombuntham*
Joshua Paster, Court ID No. A5502616
Nalina Sombuntham, Fla. Bar No. 96139
Harold E. Schimkat, Court ID No. A5500567
Assistant United States Attorneys
99 N.E. 4th Street
Miami, Florida 33132-2111
Telephone: (305) 961-9224 / (305) 961-9342
Facsimile: (305) 536-4089
joshua.paster@usdoj.gov
nalina.sombuntham@usdoj.gov
harold.schimkat@usdoj.gov
*Counsel for United States of America*