# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20552-Cr-GAYLES/TORRES

UNITED STATES OF AMERICA,

     *Plaintiff,*

vs.

DAVID RIVERA and ESTHER NUHFER,

     *Defendants.*

_____/

## ORDER ON DEFENDANTS' JOINT MOTION FOR RELEASE OF LIS PENDENS ON SUBSTITUTE ASSETS

This matter is before the Court on David Rivera's ("Mr. Rivera") and Esther Nuhfer's ("Ms. Nuhfer") (collectively, "Defendants") joint motion to dissolve the notices of *lis pendens* that the United States of America (the "Government") recorded on Defendants' substitute assets in connection with these criminal proceedings. [D.E. 54]. The government filed a response to the motion on April 4, 2023, [D.E. 56], to which Defendants replied on May 30, 2023. [D.E. 68]. Therefore, Defendants' motion is now ripe for disposition.[1] After careful consideration of the motion,

_____

[1] On April 10, 2023, United States District Judge Darrin P. Gayles referred the subject motion to the undersigned Magistrate Judge for disposition. [D.E. 59].

response, relevant authority, and for the reasons discussed below, Defendants' motion is **GRANTED**.

## I.    BACKGROUND

In November 2022, a federal grand jury returned an indictment charging Defendants with multiple federal crimes. [D.E. 3]. The indictment alleges conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371, failure to register as foreign agents in violation of 22 U.S.C. §§ 612(a) and 618(a)(1), money laundering conspiracy under 18 U.S.C. § 1956(h), and engaging in transactions in criminally derived property in violation of 18 U.S.C. § 1957. These charges stem from Defendants' alleged involvement in a conspiracy to enrich themselves by engaging in undisclosed political activities in the United States on behalf of the government of Venezuela. Specifically, it is alleged that Mr. Rivera and Ms. Nuhfer engaged in lobbying efforts with U.S. politicians aimed at normalizing relations between the U.S. and Venezuela and preventing additional economic sanctions against President Maduro and his regime. In return for their lobbying efforts, Venezuelan agents purportedly compensated Defendants with tens of millions of dollars, which Defendants obtained through the execution of a consultancy agreement. The indictment specifies that the Government is seeking a judgment of at least $23,750,000 from the Defendants.

To satisfy this potential money judgment, the Government has identified several properties that are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a) and 982(a) for being assets connected to Defendants' unlawful activity ("tainted assets").

*Id*. at 31 ¶ 4 (a)–(f).[2]   Additionally, the indictment identifies eight parcels of Defendants' real property as "substitute property" for possible forfeiture if the tainted assets are unavailable upon conviction.  *Id*. at 32–33.  In December 2022, the United States recorded notices of lis pendens with the county clerks where the substitute properties are located, stating that "pursuant to 21 U.S.C. § 853(p) the United States may seek to forfeit the real property [described herein]."  [D.E. 55-1].

The pending motion questions the propriety of the lis pendens that the Government has attached to the assets identified as substitute property in the indictment.  In essence, Defendants submit that the Government has impermissibly exceeded the scope of its statutory authority by recording notices of lis pendens on these untainted properties, as neither state nor federal law grants it the authority to constrain innocent assets in this manner prior to trial and conviction.  As we explain in more detail below, Defendants' objection is well taken.

## II.    APPLICABLE PRINCIPLES OF LAW

### A.    *Federal Forfeiture Law*

Upon a defendant's conviction, federal law empowers the Government to confiscate, via forfeiture, all property associated with the defendant's criminal activity.  Specifically, 21 U.S.C. § 853, the federal criminal forfeiture statute, provides for the forfeiture of two types of assets upon conviction.  First, Section 853(a)

---

[2] On November 21, 2022, upon application by the Government, this Court issued an order pursuant to 21 U.S.C. § 853(e) enjoining and restraining the tainted assets in order to preserve their availability for criminal forfeiture.  [D.E. 8].

authorizes the forfeiture of three categories of property directly linked to a defendant's offense of conviction (tainted property). These categories include:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such [offense];

(2) any of the [defendant]'s property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such [offense]; and

(3) in the case of a person convicted of engaging in a continuing criminal enterprise[,] . . . any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

21 U.S.C. § 853(a).

Second, if, after conviction, the tainted property has been depleted, its value diminished, or is otherwise beyond the government's reach, Section 853(p) separately provides for the forfeiture of "substitute property" ("untainted property") up to the value of any property that would have been directly subject to forfeiture under Section 853(a). Unlike tainted property, substitute assets are not involved in or connected in any way to a defendant's alleged criminality.

Besides providing for the forfeiture of tainted property after a conviction, the statute also permits the imposition of pretrial restrictions of particular assets owned by the defendant. Specifically, upon motion by the government, Section 853(e)(1)(A) authorizes district courts to enter orders or take other necessary steps "to preserve the availability of property described in [Section 853(a)]" that "would, in the event of conviction, be subject to forfeiture."

The authority to exert this power over a defendant's property prior to a conviction derives from the common law "tainted theory", under which title to property involved in criminality is said to vest in the Government upon the commission of the criminal act, and which has been codified in § 853(c)'s so called "relation back" provision. *See United States v. Kramer*, No. 1:06CR200-ENV-CLP, 2006 WL 3545026, at *4 (E.D.N.Y. Dec. 8, 2006). Section 853's forfeiture scheme does not contain an analogous relation back provision applicable to untainted, or substitute, assets. *See United States v. Parrett*, 530 F.3d 422, 428–29 (6th Cir. 2008) ("Although the federal statute allows the [] government . . . 'to preserve the availability' of tainted property, 21 U.S.C. § 853(e), the statute does not grant similar powers to the federal government with regard to substitute property") (collecting cases).

### B.   *Florida Lis Pendens Law*

"The purpose of a notice of lis pendens is to alert creditors, prospective purchasers and others to the fact that the title to a particular piece of real property is involved in litigation." *Sheehan v. Reinhardt ex rel. Est. of Warren*, 988 So. 2d 1289, 1290 (Fla. 2d DCA 2008) (quotes and citation omitted). The filing of a notice of lis pendens in Florida is governed by Florida Statutes § 48.23, which requires the proponent of the notice to show that the pending pleading "is founded on a duly recorded instrument or on a [valid] lien claim" over the property. Fla. Stat. § 48.23(3). This means that to support a notice of lis pendens on property, the pending lawsuit must reflect a "fair nexus between the apparent legal or equitable ownership of the

property and the dispute embodied in the lawsuit." *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993). This burden of proof is borne by the party seeking to record the notice of lis pendens. *Id*.

Conversely, "[a] complaint which will not support a claim against the specific property at issue cannot provide a basis for tying it up by a filing of notice of lis pendens." *Blue Star Palms, LLC v. LED Tr., LLC*, 128 So. 3d 36, 38 (Fla. 3d DCA 2012) (quotes and citation omitted). Indeed, "[u]nder Florida law, a lis pendens is proper only when the required relief might specifically affect the property in question. There is no other justification for burdening the alienability of property pending the outcome of a lawsuit." *Ross v. Breder*, 528 So. 2d 64, 65 (Fla. 3d DCA 1988) (quotes and citation omitted). Accordingly, "[w]hen the primary purpose of a lawsuit is to recover money damages and the action does not directly affect the title to or the right of possession of real property, the filing of a notice of lis pendens is not authorized." *DeGuzman v. Balsini*, 930 So. 2d 752, 755 (Fla. 5th DCA 2006). *See also Ness Racquet Club, LLC v. Renzi Holdings, Inc.*, 959 So. 2d 758, 761 (Fla. 3d DCA 2007) ("It is well settled that . . . when there is no 'direct claim cognizable under the law against or upon the . . . property burdened by the lis pendens,' 'no lis pendens may be asserted under any conditions against the realty[.]" (quoting *Sunrise Point, Inc. v. Foss*, 373 So. 2d 438, 439 (Fla. 3d DCA 1979)).

## III.   ANALYSIS

Defendants' motion argues that the notices of lis pendens that the Government recorded on their substitute assets (*i.e.*, property that the government

concedes is not traceable, or connected in any way, to the pending lawsuit) should be lifted.[3]  According to Defendants, the Government exceeded its authority because neither state nor federal law confers upon it a property interest over untainted assets to justify the imposition of lis pendens constrains prior to Defendants' trial.  [D.E. 54 at 2–3].  Specifically, Defendants contend that, under Florida law, a notice of lis pendens is authorized only when the recording party shows that it has "an actual interest in the subject property at the time the action [ ] is filed."  *Id*. at 5.  This interest, Defendants posit, must be substantial and tangible, going beyond a mere "potential and speculative future" claim over the property.  *Id*.  Indeed, Defendants rely on persuasive Florida state authority providing that, "[w]here the primary purpose of a lawsuit is to recover money damages and the action does not directly affect the title to or the right of possession of real property, the filing of a notice of lis pendens is not authorized."  *Id*. at 10–11 (citation omitted).

Defendants also assert that the federal statute invoked by the Government as the basis for the lis pendens on the innocent assets, 21 U.S.C § 853, does not grant it the authority to pursue such a course of action during the pretrial phase of the case. According to Defendants, the Government's argument is foreclosed by the Supreme Court's holding in *Luis v. United States*, 578 U.S. 5 (2016) (holding that the pretrial freezing of substitute assets under § 853(p) is unconstitutional when the assets are

---

[3] Defendants expressly limited their motion to two of the substitute assets on which lis pendens were recorded pursuant to Florida law, leaving the lis pendens recorded on the remaining substitute assets unchallenged.  Accordingly, the scope of this holding is limited solely to the two substitute properties to which the motion objects (*i.e.*, substitute properties (a) and (f)).  *See* [D.E. 54 at 2 n.1].

needed to retain defense counsel), as well as by applicable circuit and district court precedent holding that the plain language of section 853 does not authorize the filing of lis pendens or other pretrial restraint of § 853(p) substitute assets.  *Id*. at 12–14.

In opposition, the Government theorizes that, because Defendants have not made a bona fide showing that they *need* to use the substitute assets in order to retain counsel, the Supreme Court's Sixth Amendment ruling in *Luis* should not apply here. [D.E. 56 at 5–8].  The Government adds that under the Eleventh Circuit's ruling in *United States v. Register*, 182 F.3d 820 (11th Cir. 1999), a notice of lis pendens does not amount to a pretrial restraint sufficient to trigger Sixth Amendment protections, and that *Luis* in no way disturbs this precedent.  *Id*. at 11–13.  The Government's response also asserts that, under the facts at hand, Florida's lis pendens requirements have been met, and that Defendant's "likelihood of success" challenge misses the mark.  *Id*. at 13–17.

In reply, Defendants point out that the Government's undue focus on the purported absence of a viable Sixth Amendment claim is a red herring that detracts attention from the crucial and relevant question: whether the Government was entitled to record the pretrial lis pendens on Defendants' innocent assets in the first place.   [D.E. 68 at 1–2].   Among other things, Defendants argue that the Government's reliance in *Register* is misplaced because that case was not about untainted assets, that the state cases relied upon by the Government actually undermine its nexus claim under Florida law, and that its lis pendens theory effectively conflates tainted and untainted property in disregard of the clear

8

distinction established by the Supreme Court, and in contravention to an extensive line of circuit court rulings across the country. *Id.* 4–9. The crux of the matter, Defendants posit, is that neither 21 U.S.C. § 853 nor Fla. Stat. § 48.23 authorized the Government to impose lis pendens constraints on substitute assets. So the lis pendens must be lifted. As we explain below, we agree with Defendants.

**A.** **21 U.S.C. § 853 Does Not Authorize the Filing of Lis Pendens on Substitute Property**

To begin with, we agree that the Government's suggested analytical sequence is misplaced. Instead of interpreting the plain text of section 853, and outlining how the statute authorizes the pretrial filing of a lis pendens on substitute assets, the Government's papers focus on the purported effects of a filed lis pendens. As a threshold matter, however, questions focusing on whether a notice of lis pendens is less restrictive than a protective order, or whether *Luis* requires a bona fide showing of financial necessity, are immaterial if the Government cannot show that either federal or state law authorizes the pretrial recording of lis pendens on substitute assets in the first place. And here, the Government cannot make that showing.

Although neither the Supreme Court nor the Eleventh Circuit have addressed directly whether section 853 authorizes the pretrial filing of a notice of lis pendens on substitute property, both the Sixth and Tenth Circuits have expressly held that the statute's plain text does not authorize the Government to carry out such action. *See United States v. Parrett*, 530 F.3d 422, 432 (6th Cir. 2008) (holding that a notice of lis pendens "may not be filed on substitute assets under 21 U.S.C. § 853 prior to the entry of the order of forfeiture"); *United States v. Jarvis*, 499 F.3d 1196 (10th Cir.

2007) ("[Section 853] [] imposes specific preconditions on the government's ability to claim title to the defendant's substitute property, preconditions which can only be satisfied once the defendant has been convicted").

Moreover, all other circuit courts that have examined the viability of pretrial restraints on substitute property under section 853, or analogous laws, have similarly concluded that the statute does not empower the Government to impose such restraints on innocent property prior to trial or conviction. *See United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017) ("The plain language of [Section 853] provides no authority to restrain substitute assets prior to trial."); *United States v. Floyd*, 992 F.2d 498, 501 (5th Cir. 1993) ("The question is whether the government may restrain substitute assets before conviction under § 853(e) notwithstanding that provision's explicit reference to the property described in § 853(a). We hold that it cannot."); *United States v. Ripinsky*, 20 F.3d 359 (9th Cir. 1994) (same); *United States v. Gotti*, 155 F.3d 144, 149 (2d Cir. 1998) (same as to analogous RICO provision); *United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996) ("[T]he statute does not authorize preconviction restraints on substitute assets."); *In re Assets of Martin*, 1 F.3d 1351, 1359 (3d Cir. 1993) ("we [] agree with the holding in *Floyd* that[] substitute assets simply may not be subject to pre-conviction or pre-indictment restraints.").

We find the reasoning underpinning this extensive line of precedent highly persuasive and follow it here, as our circuit precedent requires absent a compelling showing otherwise. *See Sokol Bros. Furniture Co. v. Comm'r*, 185 F.2d 222, 224 (5th Cir. 1951) ("the decision of another Court of Appeals upon an issue and principle the

same is properly entitled to great weight, and itself affords persuasive argument in the determination of the present case.").

Indeed, the Government's argument, that it has the power to record lis pendens on substitute assets prior to trial, is not just inconsistent with the otherwise unanimous consensus among the circuit courts.  The Government's position is also at odds with the Supreme Court's ruling in *Luis*. There the court emphatically underscored the crucial distinction between tainted and untainted property when evaluating the Government's pretrial interests in a defendant's substitute assets:

> The relevant difference consists of the fact that the property here is untainted; *i.e.*, it belongs to the defendant, pure and simple. In this respect it differs from a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime. The Government may well be able to freeze, perhaps to seize, assets of the latter, "tainted" kind before trial. As a matter of property law the defendant's ownership interest is imperfect. . . . The property at issue here, however, is not loot, contraband, or otherwise "tainted." It belongs to the defendant.

*Luis*, 578 U.S. 5 at 12–13.[4]  As the Court emphasized, this distinction between forfeitable and substitute assets is "an important one, not a technicality. It is the difference between what is yours and what is mine."  *Id*. at 16.  Moreover, the *Luis* ruling explained that the federal forfeiture scheme enacted by Congress embodies the principles that govern property law and, thus, whether property is "forfeitable" or subject to pretrial restraints "is a nuanced inquiry that very much depends on who

---

[4] We acknowledge that *Luis* may not be exactly on point here.  However, the Supreme Court's analysis of the property law theories that are embodied in the federal forfeiture scheme, along with its discussion of § 853(c), provides valuable insight into the scope of the Government's statutory power, if any, to impose pretrial lis pendens constrains on substitute assets.

has the superior interest in the property at issue." *Id*. at 15.  In this regard, the court described the Government's pretrial interest over tainted, or forfeitable, property under section 853(c) as analogous to that of a secured creditor in a bankruptcy proceeding.[5]  That is, with a secured lien on the subject property that is superior to that of almost any other party.  *Id*. at 17.  However, when it comes to the Government's purported interest in a defendant's untainted assets at the pretrial stages, the court expressly disavowed the existence of any equivalent competing governmental interest in this innocent property:

> Again, if this were a bankruptcy case, the Government would be at most an unsecured creditor. Although such creditors someday might collect from a debtor's general assets, they cannot be said to have any present claim to, or interest in, the debtor's property. . . . At least regarding her untainted assets, [defendant] can at this [pretrial] point reasonably claim that the property is still "mine," free and clear.

*Id*.

Consistent with the property law principles articulated in *Luis*, the Fourth Circuit recently departed from its previous position as the solitary circuit court endorsing the "anomalous rule permitting the pretrial restraint of a defendant's innocent property pursuant to [ ] § 853." *Chamberlain*, 868 F.3d 291.  In reversing course on its earlier interpretation of section 853, the Fourth Circuit noted that, after

---

[5] As noted earlier, Section 853(c) codified the common law "tainted theory", under which title to property *involved in the criminality* vest in the Government upon the commission of the criminal act. *See United States v. McCorkle*, No. 6:98-CR-52-ORL-19C, 2000 WL 133759, at *3 (M.D. Fla. Jan. 14, 2000) (noting that Section 853(c) embodies the "relation-back doctrine" or "tainted theory").

*Luis*, the "bases for permitting the pretrial restraint of substitute assets under these statutory provisions appear far less certain" because:

> [T]he *Luis* plurality explained that, unlike tainted assets—the defendant's ownership of which is necessarily "imperfect"—untainted assets "belong to the defendant, pure and simple." *Luis*, 136 S. Ct. at 1090. With this in mind, the plurality emphasized that the contention that "property—whether tainted or untainted—is subject to pretrial restraint, so long as the property might someday be subject to forfeiture ... asks too much of [the Court's] precedents."

*Id*. at 295.  Driven by the important distinction between the Government's authority to restrain tainted and untainted assets stressed by the Supreme Court, the Fourth Circuit reasoned that "when Congress intends to permit the government to restrain both tainted and untainted assets before trial, it has clearly provided for such authority." *Id*. at 297.  And after comparing section 853 with other forfeiture statutes and noting the absence of provision of pretrial authority, the court concluded that "Section 853(e) does not by its terms permit pretrial restraint of substitute assets." *Id*.  In doing so, the court expressly overruled its prior holdings in *In re Billman*, 915 F.2d 916 (4th Cir. 1990) and *United States v. Bollin*, 264 F.3d 391 (4th Cir. 2001), and joined the circuit court consensus holding that section 853 does *not* authorize the filing of pretrial restraints on substitute assets.  *Id*. at 295.  *See also Chamberlain*, 868 F.3d at 294 ("after *Billman*, at least seven circuits have expressly rejected the reasoning underlying our interpretation of Section 853(e) as permitting the pretrial restraint of substitute property.").[6]

---

[6] The Government accuses Defendants of misunderstanding the "state of the law" in this respect, but it is the Government that stubbornly fails to comprehend the pretrial applicability of section 853(e) to substitute assets by relying on outdated Fourth

Despite this substantial backdrop of persuasive Supreme Court and Circuit court authority, the Government urges this Court to ignore this widespread consensus setting clear limits to Governmental authority to restrain substitute assets under section 853 prior to a defendant's trial.  In this respect, the Government's opposition relies heavily on the Eleventh Circuit's holding in *United States v. Register*, 182 F.3d 820 (11th Cir. 1999), where the court held that the filing of a lis pendens on property allegedly connected to defendant's criminality did not amount to a violation of defendant's due process or counsel of choice rights.  From this pre-*Luis* constitutional holding, the Government extrapolates the proposition that a lis pendens then cannot be sufficiently constraining to constitute a pretrial restrain for the purposes of substitute assets under Section 853.  We find the Government's logic unpersuasive and its reliance on *Register* misplaced.

To begin with, the ruling in *Register* did not focus on the legality of a pretrial lis pendens *on substitute property*, but rather on the general impact of such notices on a defendant's constitutional rights to due process and counsel under the Sixth Amendment.  *Register*, 182 F.3d at 826.[7]  More importantly, and unlike our case, in

---

Circuit cases.  This is also evidenced by its citation of other district court precedent that did not address the relevant question at all.  [D.E. 56 at 18 n.11].

[7] As noted previously, we need not resolve questions about the effects of the pretrial notice of lis pendens on Defendants' due process or Sixth Amendment rights because, as a threshold matter, the Government cannot establish that it had the statutory authority to file the pretrial notices of lis pendens on substitute property in the first place.  *See United States v. Kavalchuk*, 2010 U.S. Dist. LEXIS 16343 *13 (D.N.H. Feb. 3, 2010) ("Because the government has not shown that either federal or state law authorizes a notice of lis pendens on [substitute property], whether a notice of lis pendens is less restrictive than a restraining order is immaterial").

*Register* the court proceeded under the premise that the two properties on which the lis pendens were filed were indeed forfeitable property under Sections 853(a) and (c), as opposed to substitute assets under Section 853(p). *Register*, 182 F.3d at 834 (highlighting that "[a]ssets subject to forfeiture are no different from the stolen bank money; they are not rightfully the defendant's"). Thus, the crucial distinction between forfeitable and substitute assets highlighted by the Supreme Court in *Luis*— an issue central to this dispute—was simply immaterial and unaddressed in *Register*.

As the *Register* ruling expressly acknowledged, the court's holding there was driven, in part, by the Eleventh Circuit's interpretation of the Supreme Court's prior ruling in *United States v. Monsanto*, 491 U.S. 600 (1989). In *Monsanto*, the court held that neither the Fifth nor the Sixth Amendment exempt assets from forfeiture when the accused intends to use those assets to pay for counsel. *Id.* at 611. Unlike the facts in our case, the governmental restraints involved in *Monsanto* were aimed at the defendant's forfeitable property (*i.e.*, tainted property), not his substitute assets. *Id.* at 607. Therefore, *Monsanto*'s reasoning was simply inapposite to situations involving the government's ability to restrain *substitute property*. In fact, the Supreme Court ultimately confirmed as much in *Luis*, where it unequivocally disavowed the extrapolation of holdings such as *Monsanto*'s in the context of substitute, or otherwise innocent property. *See Luis*, 578 U.S. at 16; *see also Chamberlain*, 868 F.3d at 295 (noting that the Circuit's extension of *Monsanto* to the sphere of substitute assets was an error because "the Supreme Court all but rejected such an expansive reading of its earlier holdings.").

15

This certainly undermines the purported controlling weight that the Government attributes to *Register* and renders it irrelevant to the substitute assets context. While the Eleventh Circuit may have held that a lis pendens does not affect property interests to the extent necessary to trigger the due process clause, nothing in this case purports to define the government's pretrial authority to restrain *innocent assets* under section 853. Indeed, nothing in the *Register* ruling provides support for the Government's assumption that the meaning of a "restraint" in the Fifth Amendment context can be—and must be—conflated to the meaning of a "restraint" in the section 853 context.

As stated earlier, the *Register* case was not focused on whether the government had an interest on defendant's property sufficient to justify the imposition of pretrial lis pendens constraints. Instead, the focus in *Register* was whether a notice of lis pendens amounted to something analogous to a "seizure" or a "taking" of property sufficient to trigger due process. *See Register*, 182 F.3d at 836–37. These are two very different questions, and we are hard pressed to agree with the necessary implications of the Government's position: namely, that nothing short of a seizure, taking, or deprivation of property can amount to a restraint for the purposes of section 853(p) substitute assets. This view is simply inconsistent with the holdings of multiple federal Circuit Courts, including the Eleventh Circuit, as well as binding Florida state case law. *See Beefy King Int'l, Inc. v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972) ("[t]he effect of a lis pendens on the owner of property . . . is constraining" as "it would be virtually impossible to sell or mortgage the property"); *Tetrault v.*

*Calkins*, 79 So. 3d 213, 215 (Fla. 2d DCA 2012) ("because lis pendens operates as a cloud on the title and prevents an owner from selling or dealing with it, it is a harsh and oppressive remedy") (quotes and citation omitted); *DeGuzman*, 930 So. 2d at 754 ("A lis pendens places a cloud on the title that did not previously exist, if not based on a recorded instrument").

Accordingly, we refuse to extrapolate form *Register* a legal rule that would place the Eleventh Circuit at odds with at least eight other circuit courts, the Supreme Court's logic in *Luis*, and a plethora of federal cases holding that Section 853 does not authorize the government to place lis pendens or other pretrial restraints on innocent assets. *See*, *e.g.*, *Parrett*, 530 F.3d at 431 ("we have concluded that § 853 does not itself authorize an order of lis pendens over substitute assets prior to the entry of a forfeiture order"); *United States v. Boyer*, 58 F. Supp. 3d 173, 175 (D. Mass. 2014) ("This Court, following the majority approach, concludes that the government is not authorized to restrain [via lis pendens] the [substitute] Property pursuant to § 853(e)"); *Kramer*, 2006 WL 3545026 at *1 (E.D.N.Y. Dec. 8, 2006) ("The second issue [] is whether the Government has any authority to file notices of lis pendens on substitute assets at this stage in the proceedings. The Court concludes that the notices of lis pendens are not now proper"); *United States v. Coffman*, No. 5:09-CR-181-KKC, 2010 WL 3984886, at *1 (E.D. Ky. Oct. 7, 2010) ("The issue in this case is whether § 853(e) grants the Government the authority to place a pretrial lis pendens notice [] on substitute assets. The Court finds that it does not").

In accordance with this extensive line of persuasive and applicable authority, we hold that section 853 does not authorize the Government to file a notice of lis pendens on a defendant's substitute property (*i.e.*, innocent assets) prior to his trial.

**B.    *Florida Law Does Not Support the Government's Lis Pendens***

While the Government may not file a lis pendens on substitute property under section 853 before trial, "the federal government is free to argue that applicable state law authorizes the filing of a notice of lis pendens against substitute property." *Parrett*, 530 F.3d at 432.  Here, however, the Government's case does not fare any better under Florida law.

The filing of a notice of lis pendens in Florida is purely a statutory act.  Florida Statutes § 48.23 requires the proponent of a lis pendens to show that the pending lawsuit serving as predicate for the lis pendens is either "founded on a duly recorded instrument," or reflects a "a fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit."  *Chiusolo v. Kennedy*, 614 So. 2d 491, 492 (Fla. 1993).  In other words, the allegations in the predicate lawsuit must support a direct claim against the specific property subject to lis pendens.  *See Sheehan*, 988 So. at 1291 ("complaint . . . which does not contain a legal description of the subject property, does not support a direct claim against the property").

Because the Government's lawsuit does not articulate a viable present claim or interest in Defendants' substitute property, the filing of lis pendens on these properties finds no basis under Florida law.  *See Lennar Florida Holdings, Inc. v.*

*First Family Bank*, 660 So. 2d 1122, 1124 (Fla. 5th DCA 1995) ("If there exists no connection between the claim and the property, the notice of lis pendens cannot stand"); *Lake Placid Holding Co. v. Paparone*, 414 So. 2d 564, 566 (Fla. 2d DCA 1982) ("A complaint which will not support a claim against the specific property at issue cannot provide a basis for tying it up by a filing of notice of lis pendens.").

Here, it is undisputed that the substitute assets at issue were not involved or connected in any way with the criminality alleged in the indictment.  Indeed, by its very definition the substitute assets at hand are linked to the Government's prosecution only by virtue of being a potential source of funds from which the Government could possibly make up for any future unsatisfied judgment.  *See* 21 U.S.C. § 853(p).  Thus, it cannot be said that the Government's lawsuit embodies an "apparent legal or equitable" interest in Defendants innocent assets at this stage of the proceedings.  *See Jarvis*, 499 F.3d at 1204 ("the United States does not have a ripened interest in § 853(p) substitute property until (1) after the defendant's conviction and (2) the court determines the defendant's § 853(a) forfeitable property is out of the government's reach for a reason enumerated in § 853(p)(1)(A)-(E)").

The Government nevertheless claims that, ironically based on the Supreme Court's holding in *Luis*, this indictment satisfies Fla. Stats. § 48.23's fair nexus requirement.  This is so, the Government contends, because in *Luis* the court "recognized that the Government has as 'important' interest in substitute assets, so *Jarvis* therefore no longer is persuasive in its analysis."  [D.E. 56 at 17–18].  This

reading of *Luis* is flawed, however, because it distorts its language and contradicts its underlying logic.

Indeed, nowhere in *Luis* does the court indicate that, as a general matter, the Government has an "important interest" in substitute assets.  Rather, the passage from which the Government extrapolates this purported rule is particular to the facts presented in *Luis*.  Unlike here, the Government in *Luis* did not rely solely on section 853, but it also cited to a federal provision that expressly authorized the restraining *of substitute property* in certain healthcare and banking fraud cases.  *See Luis*, 578 U.S. at 18; *see also* 18 U.S.C. § 1345(a)(2)(B)(i) (providing that, "[i]f a person is alienating or disposing of property . . . obtained as a result of [such an offense]," the government may restrain or "prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or *property of equivalent value*" (emphasis added)).  Thus, the court in *Luis* stated that, under the applicable healthcare related fraud facts, the government had pled an important interest in defendant's substitute assets pursuant to § 1345(a)(2)(B)(i).

That interest is simply non-existent here where the Government's sole claim over Defendants' substitute assets arises form Section 853(p).  Our reading of *Luis* is consistent with the Supreme Court's logic that, when it comes to substitute property, the Government interests in these assets are analogous to those of an unsecured creditor who "someday might collect from a debtor's general assets, [but] cannot be said to have any present claim to, or interest in, the debtor's property."  *Luis*, 578 U.S. at 17.  Therefore, unlike the prosecution in *Luis*, here the Government is seeking

to restrain "untainted property without any showing of any equivalent governmental interest in that property." *Id.*

Given this background, we agree that under the present facts the Government does not have a colorable interest in the substitute assets "until it obtains a conviction, and even then, substitute assets only come into play when needed to satisfy a shortfall." *Kramer*, 2006 WL 3545026, at *1. Thus, as far as substitute assets is concerned, the only nexus alleged in the pending lawsuit relates to the possible future need to satisfy an unpaid money judgment. As a result, the Government's case reaches a final and fatal impasse because "[w]hen the primary purpose of a lawsuit is to recover money damages and the action does not directly affect the title to or the right of possession of real property, the filing of a notice of lis pendens is not authorized." *Sheehan*, 988 So. 2d at 1290 (quotes and citation omitted); *DeGuzman*, 930 So. 2d at 755 ("A notice of lis pendens is properly filed when a person seeks to enforce any lien upon designated real estate, but a lien which may result after a judgment provides no basis for the filing of a lis pendens notice"); *see also Conseco Servs., LLC v. Cuneo*, 904 So. 2d 438, 440 (Fla. 3d DCA 2005) (dissolving lis pendens because "[Plaintff] has not shown a good faith viable equitable lien claim that would call into question the legal or equitable ownership of the homestead property"); *Tetrault v. Calkins*, 79 So. 3d 213, 215 (Fla. 3d DCA 2012) ("Because [plaintiffs] have no interest in Tetrault's parcels and their action does not affect the title to those parcels, a lis pendens on parcel GH was not authorized"); *cf. Rodriguez v. Banco Indus. de Venezuela, C.A.*, 576 So. 2d 870, 873 (Fla. 3d DCA 1991) ("lis

pendens is appropriate" when "a lawsuit place the right to transfer property in question"); *Regents Park Invs., LLC v. Bankers Lending Servs., Inc.*, 197 So. 3d 617, 622 (Fla. 3d DCA 2016) ("[plaintiff's] showing that its claims arose out of a written contract for sale of the subject properties established a 'fair nexus.'").

Consistent with Supreme Court logic, widespread circuit court authority, and governing Florida case law, we hold that in this case neither federal nor state law authorized the Government's filing of lis pendens on Defendants' substitute assents and, as such, the lis pendens on the two substitute properties challenged by Defendants' motion must be lifted.  As illustrated above, this holding is consistent with an extensive line of relevant and persuasive precedent and finds ample support in decisions applying lis pendens statutes that are virtually identical to Florida's.  *See also United States v. Boyer*, 58 F. Supp. 3d 173 (D. Mass. 2014) (even if property is likely to be forfeited as a substitute asset, it is not the "subject matter" of a criminal forfeiture case, which state lis pendens statute requires); *United States v. Queri*, 679 F. Supp. 2d 295, 297 (N.D.N.Y. 2010) (lis pendens not allowed where government merely speculates it will "likely" be able to satisfy § 853(p)'s requirements after defendant is convicted); *United States v. Jewell*, 556 F. Supp. 2d 962 (E.D. Ark. 2008) (ordering government to remove lis pendens from defendant's residence; Arkansas law does not permit lis pendens in a civil suit for a money judgment to which court analogizes substitute asset forfeiture); *United States v. Poulsen*, 2007 U.S. Dist. LEXIS 14500 (S.D. Ohio Feb. 28, 2007) (government cannot place lis pendens notice on substitute property).

### III.  CONCLUSION

For the foregoing reasons, Defendants' motion to lift the Government's notices of lis pendens on substitute property **(a)**, located at 3663 S. Atlantic Ave, Unit 20C, New Smyrna Beach, Florida 32169, and substitute property **(f)**, located at 549 Bethesda Court, Oviedo, Florida 32765, is **GRANTED.**  The notices are VOID, without prejudice to final adjudication of the pending indictment.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of July, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge