UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO. 22-20552-CR-GAYLES/TORRES

     Plaintiff,

v.

DAVID RIVERA and ESTHER NUHFER,

     Defendants.

_____/

**JOINT RESPONSE TO GOVERNMENT'S OBJECTIONS TO,
OR IN THE ALTERNATIVE APPEAL OF,
CHIEF MAGISTRATE JUDGE TORRES'S ORDERS**

     Defendants David Rivera and Esther Nuhfer file this Response to the Government's Objections to, or in the Alternative Appeal of, Chief Magistrate Judge Torres's Orders.

**INTRODUCTION**

     The Government attempted to do something that both federal and Florida law prohibit— placing *lis pendens* on substitute assets (or what the law calls innocent assets). The Defendants, David Rivera and Esther Nuhfer, litigated this issue before Chief Magistrate Judge Torres, who wrote a 23-page order explaining that the Government's attempt to freeze these innocent assets was unlawful. The Government now files an appeal of that Order, regurgitating the very same arguments it raised before Judge Torres. The only twist is that the Government now tries to say that the Magistrate Judge's Order was simply a Report and Recommendation, subjecting it to a lesser standard of review.  That is wrong, but under either standard, the Government's repackaged arguments should be rejected again.

1

**BACKGROUND**

In November 2022, the Government filed an Indictment against David Rivera and Esther Nuhfer, which seeks criminal forfeiture, pursuant to 21 U.S.C. § 853, of a number of assets, including accounts and property the Government says are traceable to the alleged criminal activity, as well as "substitute" assets which are not traceable and have no direct connection to the alleged offenses. D.E. 3 at 32-33. The Government obtained an initial protective order against the so-called traceable assets (D.E. 8), which we are not challenging. However, in December 2022, the Government illegally filed *lis pendens* against the properties it identified as substitute assets in the Indictment. D.E. 55-1.

The Defendants filed a Joint Motion For Release Of *Lis Pendens* On Substitute Assets on March 13, 2023, and a Government Response, and Defendants' Reply followed. D.E. 54, 56, 68. On July 7, 2023, Chief Magistrate Judge Edwin Torres issued a 23-page order explaining that the Government's attempt to restrain these substitute properties was unlawful and ordered the *lis pendens* on the properties to be dissolved. D.E. 75, 77. In its lengthy and thoughtful Order, the Magistrate Court found that the *lis pendens* were not authorized by state law because there was no fair nexus between the assets and the offense: "The Government's lawsuit does not articulate a viable present claim or interest in Defendants' substitute property, the filing of *lis pendens* on these properties finds no basis under Florida law." D.E. 75 at 18. Not only did the *lis pendens* violate state law, Chief Judge Torres found the Government's argument regarding fair nexus to be "flawed" because "it distorts [*Luis'*] language and contradict [*Luis'*] underlying logic." *Id.* at 20.

In finding that the *lis pendens* violated federal law, the Chief Judge Torres reasoned: "[A]ll other circuit courts that have examined the viability of pretrial restraints on substitute property under section 853…have similarly concluded that the statute does not empower the Government

2

to impose such restraints on innocent property prior to trial or conviction…We find the reasoning underpinning this extensive line of precedent highly persuasive and follow it here." *Id.* at 10. The Magistrate Judge found that the Government's position "is not just inconsistent with the otherwise unanimous consensus among the circuit courts," but "is also at odds with the Supreme Court's ruling in *Luis*." *Id.* at 11. In rejecting the Government's argument that a *lis pendens* is not a restraint under federal law, the Magistrate Court explained that "the Government's logic [is] unpersuasive and its reliance on *Register* misplaced." *Id.* at 14.

After losing its argument that the substitute assets could be restrained pretrial, the Government filed objections to the Magistrate Court's Order (D.E. 83), as well as an *ex parte* application asking the Court to no longer consider three of the five the properties as substitute assets under § 853(p), but rather as directly connected to the charged offenses under § 853(a). D.E. 79. The Government failed to explain why it waited so long to change position and why it did so only after losing the argument that the properties should be restrained as substitute assets, merely stating it discovered the assets were directly traceable to the charged offenses "upon further investigation." D.E. 79:4. The Court granted the Government's application for a protective order *ex parte* and found there was probable cause that the three subject properties were tainted assets under § 853(a) and should be restrained. D.E. 82.

When the Defendants learned that the *ex parte* application was filed and the protective order granted, they immediately moved the Court to vacate the order and allow them a chance to dispute the probable cause determination. D.E. 85. The Court granted the Defendants' motion, vacated the protective order, and gave Defendants an opportunity to respond to the Government's application for protective order. D.E. 93. This issue is being litigated in a separate response in opposition to the Government's *ex parte* application for second post-indictment protective order.

**ARGUMENT**

I.    **THIS COURT SHOULD TREAT THE GOVERNMENT'S PLEADING AS AN APPEAL AND NOT AS OBJECTIONS BECAUSE THE MAGISTRATE JUDGE ISSUED AN ORDER AND NOT A REPORT AND RECOMMENDATION.**

The Government incorrectly argues that Chief Magistrate Judge Torres's "**Order** on Defendants' Joint Motion For Release of Lis Pendens On Substitute Assets" is not what it says it is, an order, but should be treated as a "Report and Recommendation" ("R&R"). D.E. 75 at 1 (emphasis added).  This Court did not refer the matter for a Report and Recommendation.  And the Magistrate Judge did not issue one.  Therefore, the Government's only recourse is to appeal the order.

The Magistrate Court authored an order because that is what this Court directed him to do. The Paperless Order referring the *lis pendens* motion to Chief Magistrate Judge Torres stated only that the matter was referred and did not state, as is practice, that it was referred for an R&R:

> PAPERLESS ORDER REFERRING [54] Motion for release of lis pendens on substitute assets filed by Esther Nuhfer, David Rivera, [58] Unopposed MOTION for Extension of Time to File Reply to **Motion for release of lis pendens on substitute assets Motions referred to Judge Edwin G. Torres**. Signed by Judge Darrin P. Gayles on 4/10/2023. (ra)

D.E. 59 (emphasis added). By contrast, when this Court has directed a magistrate judge to issue an R & R, it has specifically directed that an R & R be issued. *See, e.g., Unisource Discovery, Inc. v. Unisource Discovery, LLC*, 20-cv-23276 (D.E. 375) ("PAPERLESS ORDER REFERRING MOTIONS to Magistrate Judge Alicia M. Otazo-Reyes **for a report and recommendation** on Defendant's 371 Motion for Bill of Costs and 372 Verified Motion for Attorney's Fees and Non-Taxable Costs.") (emphasis added). Here, the Government did not raise any objections or concerns when this Court directed the Magistrate Court to issue an order (not an R&R) on the *lis pendens* motion. Upon the Magistrate Court's issuance of the Order (D.E. 75), the Government did not

4

request that the Magistrate Judge amend the filing to be reconstituted as an R&R. The Government complains about this for the first time to this Court are too late and without merit.

The truth is that the Government's attempt to change the nature of the Magistrate Court's order is a pretty transparent attempt to shift the standard of review from "clearly erroneous and contrary to law," the standard of review of a §636(b)(1)(A) appeal of a magistrate order—to "de novo," the standard of review on a report and recommendation. Cf. L. Mag. R. 4(a)(1) and 4(b).

In an attempt to get under this standard, the Government argues that if our motion is treated as one for injunctive relief, then the Magistrate Judge should have issued an R&R.  But even the Government recognizes that our motion was not one for injunctive relief: "That does not mean a *lis pendens* is an injunction. *See United States v. James Daniel Good Real Prop*., 510 U.S. 43, 58 (1993) (distinguishing between a 'seizure' an 'ex parte restraining order' and *lis pendens*). *Compare* Fla. Stat. § 48.23 (*lis pendens*) *with* Fla. Stat. Ch. 60 (injunctions)." D.E. 83 at 9, n. 8.

After first contending that *lis pendens* motions should be treated as a motion for injunctive relief, the Government then dedicates an entire section of its objections to arguing that *lis pendens* are *not* injunctions and are not restraints on assets. *See* D.E. 83 at 14-18 (criticizing the Magistrate Judge's order for citing cases that "involved *actual* restraints… [like] injunctions"); *see also* D.E. 56 at 12 ("[E]ven where a *lis pendens* is filed, a defendant may still seek to sell that property. This may be contrasted with an injunction, or when the Government obtains a protective order under 21 U.S.C. § 853(e) that prohibits alienation of the property."). The Government argues that a *lis pendens* is an injunction for purposes of the review of Chief Judge Torres's Order but, on the other hand, it contends that a *lis pendens* is not a restraint on assets, hence not an injunction. The Government cannot have it both ways.

The cited statute and case law do not require that a *lis pendens* be treated as an injunction. The statute does not specifically name "*lis pendens*" or "restraint" or "lien" or "protective order" as being excepted, and the Government, therefore, relies on case law to make this leap, citing to *Beefy King Int'l, Inc. v. Veigle*,464 F.2d 1102, 1104 (5th Cir. 1972). While the Government states that *Beefy King* stands for the proposition that "the review of a discharge of *lis pendens* is 'treated in the same manner as a denial, dissolution, or modification of an injunction,'" that is not what the case says. D.E. 83 at 1. The issue in that case was "whether the district court's order is appealable[.]" *Id.* at 1103. The court found that, "[a]s to appealability, we think that the case should be treated in the same manner as a denial, dissolution, or modification of an injunction, all of which are appealable." *Id.* at 1104; *see also Tribble v. Tew*, 760 F. App'x 718, 720 (11th Cir. 2019) (explaining that the holding in *Beefy King* was for appeal purposes only: "[D]etermining how a district court's order should be treated for purposes of federal appellate jurisdiction is a matter controlled by federal law").

*Beefy King* did not deal with the distinct issue the Government has raised here: whether a referral from the District Judge to the Magistrate Judge on a motion to cancel a *lis pendens* must or should be treated as one for injunctive relief under 28 U.S.C. § 636. The Government ignores the distinction between review by a district judge of a magistrate judge's order and review by the Court of Appeals of an order on injunctive relief. They cite no case as to the former.

There simply is no authority for reconstituting the Magistrate Judge's Order into an R&R. Therefore, the standard of review in this case should be for clear error.

II.   **UNDER EITHER STANDARD OF REVIEW, THE MAGISTRATE JUDGE CORRECTLY FOUND THAT THE GOVERNMENT'S ATTEMPT TO PLACE *LIS PENDENS* ON SUBSTITUTE PROPERTY VIOLATED BOTH FEDERAL AND STATE LAW.**

The Magistrate Judge correctly held that the forfeiture statute, 21 U.S.C. § 853, does not authorize the federal government to file *lis pendens* on substitute assets prior to entry of a forfeiture order. The Government may only use that vehicle if authorized under generally applicable state law. D.E. 75 at 18. *(citing United States v. Parrett*, 530 F.3d 422 (6th Cir. 2008). In addition, the Magistrate Judge correctly found that Florida State law precludes what the Government has done in this case. *Id.* ("Because the Government's lawsuit does not articulate a viable present claim or interest in Defendants' substitute property, the filing of lis pendens on these properties finds no basis under Florida law.").

Further, the Magistrate Judge correctly held that the Government's use of *lis pendens* notices to restrain the assets in question is also unconstitutional under federal law. *Id.; see also Luis v. United States*, 578 U.S. 5 (2016). In *Luis*, the Supreme Court held that the pretrial restraint of substitute assets violated both the Fifth and Sixth Amendment rights of the accused: "We have found no decision of this Court authorizing unfettered, pretrial forfeiture of the defendant's own 'innocent' property—property with no connection to the charged crime." *Id.* at 21. Similarly, the Sixth Circuit has explained that "the plain language of 21 U.S.C. § 853 conveys Congress's intent to authorize the restraint of tainted assets prior to trial, but not the restraint of substitute assets." *Parrett*, 530 F.3d at 431. Because the properties identified in this case are "substitute assets," *Parrett* commands that the Government's *lis pendens* are unconstitutional.[1]

---

[1] The overwhelming majority of circuits have agreed with the Sixth Circuit that § 853(e)'s plain language does not authorize the pretrial restraint of § 853(p) substitute assets. *Parrett*, 530 F.3d at 431; *see also United States v. Gotti*, 155 F.3d 144, 149-50 (2d Cir. 1998); *In re Assets of Martin*,

The Government's Response makes the very same arguments to this Court as it did with the Magistrate Judge—it attempts to justify its use of *lis pendens* on innocent property by asserting that there is a fair nexus under Florida law between the property and the Indictment, and also by citing to *dicta* in *United States v. Register*, 182 F.3d 820, 835-36 (11th Cir. 1999), stating that a *lis pendens* is not a "seizure" or "restraint." (D.E. 83 at 10-11; 15). The Government also makes the unsupported argument that without a showing of need for the substitute assets, *Luis* does not apply. Here, the Magistrate Judge's Order aptly found:

> The Government's position is [] at odds with the Supreme Court's ruling in *Luis*. There the court emphatically underscored the crucial distinction between tainted and untainted property when evaluating the Government's pretrial interests in a defendant's substitute assets: 'The relevant difference consists of the fact that the property here is untainted; *i.e.*, it belongs to the defendant, pure and simple….' As the Court emphasized, this distinction between forfeitable and substitute assets is 'an important one, not a technicality. It is the difference between what is yours and what is mine.'

D.E. 75 at 11 (internal quotations and citations omitted). As we explain below, the Government is wrong on all three arguments peddled in its Response and here again on apppeal, and the Court should affirm that, "[i]n accordance with this extensive line of persuasive and applicable authority, we hold that section 853 does not authorize the Government to file a notice of lis pendens on a defendant's substitute property (*i.e.*, innocent assets) prior to his trial." D.E. 75 at 18.

    **A. The Magistrate Judge did not err in finding that the pretrial restraint of substitute assets using *lis pendens* is illegal under Florida law because there is no nexus between the properties and the criminal case.**

---

1 F.3d 1351, 1359 (3d Cir. 1993); *United States v. Floyd*, 992 F.2d 498, 501-02 (5th Cir. 1993); *United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996); *United States v. Ripinsky*, 20 F.3d 359, 362 (9th Cir. 1994); *Jarvis*, 499 F.3d at 1204; *United States v. Field*, 62 F.3d 246, 248–49 (8th Cir.1995); *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017).

The Government attempts to distract from the fatal flaw in its position by filling its Response with arguments about whether a *lis pendens* is a restraint and whether a showing of need is required under *Luis*. As Chief Judge Torres correctly recognized, those arguments are irrelevant since the Government cannot show that the *lis pendens* was legal under Florida state law:

> Instead of interpreting the plain text of section 853, and outlining how the statute authorizes the pretrial filing of a lis pendens on substitute assets, the Government's papers focus on the purported effects of a filed lis pendens. As a threshold matter, however, questions focusing on whether a notice of lis pendens is less restrictive than a protective order, or whether *Luis* requires a bona fide showing of financial necessity, are immaterial if the Government cannot show that either federal or state law authorizes the pretrial recording of lis pendens on substitute assets in the first place. And here, the Government cannot make that showing.

D.E. 75 at 9; *see also United States v. Kramer,* 1:06CR200-ENV-CLP, 2006 WL 3545026, at *10 (E.D.N.Y. Dec. 8, 2006) (explaining that the inquiry ends on the question of whether the notice of *lis pendens* is permitted under state law, not on whether the *lis pendens* constitutes a restraint on the assets). Here, the Court correctly found that the Government's filing *lis pendens* on substitute property did not comply with Florida law because no fair nexus existed between the properties and the offense. D.E. 75 at 18-22. The pretrial restraint of substitute assets using a *lis pendens* is illegal under Florida state law where, as here, the assets have no connection to any offense or pending suit. The Government's *lis pendens* action is not based on a duly recorded instrument, and the Government cannot establish a good faith, viable claim that the assets are involved in the pending federal case.

Here, when *lis pendens* were filed, the properties in question were specifically listed as substitute assets in the Indictment. The substitute assets are not, by the Government's own admission, traceable to the funds involved in the alleged criminal activity. They are not, therefore, in issue in this case except insofar as they may, someday, if the Government prevails at trial, become subject to forfeiture under 21 U.S.C. § 853(p). Consequently, the United States had no

9

interest in the title to or a claim upon the assets at the time of the Indictment or the recording of the *lis pendens* on the properties. The Government's interest in the assets, if any, is only a potential and speculative future interest. As federal courts have routinely held, because that interest cannot mature into an actual interest until after conviction and does not relate back to a pre-conviction date, it cannot satisfy the prerequisites for the recording of a *lis pendens*. As the Government has no interest in the substitute assets, it is improperly using the notice of *lis pendens* as a means of attempting to attach assets for the purpose of securing the monetary judgment that it seeks. The Government's filing of *lis pendens* notices on the assets in question were, therefore, improper under Florida law and should be lifted.

In arguing that there is some sort of speculative nexus between the properties and the offense, the Government makes the far-reaching argument that, "Just because assets at first are identified as substitute does not mean they were uninvolved or unconnected to criminality. The Government may simply be unaware of the tainted connection at the time of the Indictment." D.E. 83 at 14. Under the Government's reading of "fair nexus" law, all that would be required to maintain a *lis pendens* in a criminal indictment is mere mention of an asset, no matter whether it is actually connected to the dispute in any way or not. But that's not the law. In Florida, there are strict procedures to be followed by a trial court where a *lis pendens* is not founded on a recorded instrument or a construction lien and instead is being sought based on a "nexus" to the property (as the Government contends here). In this circumstance, Fla. Stat. § 48.23(3), dictates that a court must treat a *lis pendens* as it would grant or dissolve injunctions, and that it has two options, either discharge the *lis pendens* or require a bond. "A court must dissolve a *lis pendens* that is based on an unrecorded document unless the proponent establish[es] a fair nexus between the apparent legal or equitable ownership of the property and the dispute embodied in the lawsuit." *Conseco Servs.,*

*LLC v. Cuneo*, 904 So. 2d 438, 439 (Fla. 2d DCA 2005) (*citing Chiusolo* v. *Kennedy*, 614 So. 2d 491, 492 (Fla. 1993)).

The Government argues that the Magistrate Judge "misstated [the Government's] interest in the substitute property" (D.E. 83 at 10) and incorrectly found that, "it cannot be said that the Government's lawsuit embodies an apparent legal or equitable interest in Defendants innocent assets at this stage of the proceedings." D.E. 75 at 19 (internal quotations omitted). The Government's basis for recording a *lis pendens* was a far-removed hope that it wins a jury trial, obtains a forfeiture judgment, that the traceable assets are not sufficient at the time of collection to satisfy the amount of the judgment obtained and even then, that substitute assets meet the federal statutory requirements for forfeiture. D.E. 83 at 11. However, a *lis pendens* may not be recorded to secure a future potential money judgment. Such a hope based *lis pendens* is not supported by Florida law. As Judge Torres recognized in its Order in this case:

> Because the Government's lawsuit does not articulate a viable present claim or interest in Defendants' substitute property, the filing of lis pendens on these properties finds no basis under Florida law. Here, it is undisputed that the substitute assets at issue were not involved or connected in any way with the criminality alleged in the indictment. Indeed, by its very definition the substitute assets at hand are linked to the Government's prosecution only by virtue of being a potential source of funds from which the Government could possibly make up for any future unsatisfied judgment. *See* 21 U.S.C. § 853(p). Thus, it cannot be said that the Government's lawsuit embodies an "apparent legal or equitable" interest in Defendants innocent assets at this stage of the proceedings.

D.E. 75 at 19.

The Government nevertheless claims, again, that based on *Luis*, the Indictment satisfies Fla. Stats. § 48.23's fair nexus requirement because the *Luis C*ourt recognized "important" governmental interests in substitute property. D.E. 83 at 19. In emphasizing that the Government's "interest is simply non-existent here," the Court flatly rejected the Government's "ironic" argument: "[The Government's] reading of *Luis* is flawed…because it distorts its language and

contradicts its underlying logic. Indeed, nowhere in *Luis* does the court indicate that, as a general matter, the Government has an 'important interest' in substitute assets." D.E. 75 at 20.

The Court's decision in this case is in line with the relevant case law in finding that the Government could not have a present interest in substitute assets prior to the defendants' conviction. Federal courts routinely order the federal government to remove *lis pendens* where they violate state laws in cases where, like here, the Government is improperly trying to tie up substitute assets. *See e.g., United States v. Jarvis*, 499 F.3d 1196, 1204-05 (10th Cir. 2007) (holding that state law did not authorize the pre-conviction filing of a *lis pendens* on the defendant's substitute assets because the Government did not have a present interest in § 853(p) substitute assets until: (1) the defendant was convicted, and (2) the defendant's § 853(a) tainted assets were unavailable for forfeiture); *United States v. Coffman*, 5:09-CR-181-KKC, 2010 WL 3984886, at *4 (E.D. Ky. Oct. 7, 2010) (ordering the Government to remove the *lis pendens* notices from the properties after holding that the Government had "only a potential and speculative future interest" in the defendants' § 853(p) substitute assets); *Kramer,* 2006 WL 3545026, at *11 (finding that "under no circumstances" is *lis pendens* available to the Government with regard to a defendant's untainted real property because "unlike specifically forfeitable property," the defendant's "substitute properties are not the subject matter of the pending indictment, nor are these proceedings about a colorable interest in the property that the Government claims it now has and is now litigating to vindicate").

The Government cannot meet its burden under Florida law to show a fair nexus in this case because it does not have a present interest in substitute assets.  Unlike the Government's interest in traceable assets which vest at the time of the commission of the alleged acts pursuant to 21 U.S.C. § 853(c), *substitute assets* are omitted from statutory mention and by case law. Title to such

assets only vests in the government upon order by the district court after conviction and the failure of other assets to satisfy a forfeiture money judgment. *See United States v. Marshall*, 872 F.3d 213, 220 (4th Cir. 2017) ("In general, if the defendant owns the property, he is entitled to use it for his defense; if he does not own the property, he may not. Title in property connected to the crime of conviction vests in the Government when the crime is committed. 21 U.S.C. § 853(c)…Conversely, title to substitute property vests in the Government upon order by the district court after conviction, at the latest."); *see also Luis*, 136 S.Ct. at 1101 (Thomas, J., concurring in the judgment) ("A criminal defendant's untainted assets are protected from Government interference before trial and judgment.").

Here, where the Government has specifically defined properties on which it has filed the notice of *lis pendens* as "substitute assets," the Government's interest is "only a potential and speculative future interest" in § 853(p) substitute assets at the pre-conviction stage. *Jarvis*, 499 F.3d 1196, 1205-06. As the Court recognized in its Order, under the present facts the Government does not have a colorable interest in the substitute assets "until it obtains a conviction, and even then, substitute assets only come into play when needed to satisfy a shortfall." D.E. 75 at 21 (quoting *Kramer*, 2006 WL 3545026, at *1). Thus, as far as substitute assets are concerned, the only nexus alleged in the pending lawsuit relates to the possible future need to satisfy an unpaid money judgment. This Court correctly found that "[a]s a result, the Government's case reaches a final and fatal impasse because when the primary purpose of a lawsuit is to recover money damages and the action does not directly affect the title to or the right of possession of real property, the filing of a notice of lis pendens is not authorized." *Id.* (internal quotations omitted).

Despite the clarity and force of the binding precedents cited by the Court in its Order, the Government takes a "see what sticks" approach to its effort to overcome the force of the relevant

Florida and federal law regarding a fair nexus. However, the cases it cites actually support the defense's and Court's position that under Florida law, a *lis pendens* on substitute assets whose title is not the subject of the underlying case is simply improper. For example, the Government cites to *Nu-Vision, LLC v. Corporate Convenience, Inc.,* 965 So. 2d 232 (Fla. 5th DCA 2007), for the proposition that only a minimal showing is required to show a fair nexus. D.E. 83 at 8. In *Nu-Vision*, the plaintiff was *not* able to make the required showing even though the facts there were much stronger for the plaintiff as the property was directly at issue in the lawsuit. That case involved a claim for specific performance of an alleged option to purchase the property. The trial court *dissolved* a *lis pendens* on the property, which was *affirmed* even though the property in question was directly related to the lawsuit. In reaching their decision, the appellate court held that "establishing a 'fair nexus' between a claim in litigation and the property's title requires a little more than simply pleading a theoretical nexus." 965 So. 2d at 234. The Court went on to hold, "[t]o establish a fair nexus requires the showing of a 'good faith, viable claim.'…In this case, Nu-Vision cannot make that showing because the December 16, 2004 letter cannot support an action for specific performance as a matter of law*." Id.* (internal citations omitted). Unlike *Nu-Vision,* the substitute assets here have *no* connection to the underlying criminal action—and none were even pled. The *Nu-Vision* case actually supports the defense's position. *Nu-Vision* also clarifies that while the proponent of the *lis pendens* may not need to show "substantial" likelihood of success on the merits, the burden is still on the proponent to show the viability of the claim and its connection to the property. *Id.* at 235-36.

Similarly misplaced, the Government repeats its citation to an unreported decision in the Middle District, *Saadi v. Maroun*, No. 07-cv-1976, 2020 WL 1894351 (M.D. Fla. Jan 3, 2020). D.E. 83 at 8. That case involved a lawsuit to enforce a $90,000 judgment in which the plaintiff

recorded a *lis pendens*, post-judgment, on a condominium he alleged was the result of a fraudulent transfer. Unlike the "guilty" property there, the property here is not tainted. There, the issue wasn't even whether to dissolve an initial *lis pendens*, but rather, the extension of an existing *lis pendens*. The District Court's decision, which also covered other issues, merely upholds the magistrate judge's decision, *without any discussion of the issues*, after noting that the interplead corporate owner defendant did *not* object to the extension. In addition, footnote 16 on page 13 of the Government's pleading is beyond misleading in its claim that the judgment enforcement proceeding involved in the *Saadi* case is "a process most similar to that contained within the federal forfeiture scheme." *Id.* at 13. In *Saadi* there was already a money judgment and a colorable claim to fraudulent transfers used to purchase the condo *at issue in that case*. *Saadi* does not advance the Government's position. The Government also cites to outdated cases such as *United States v. Woods*, 436 F. Supp. 2d 753, 755 (E.D.N.C. 2006) to support its position that *lis pendens* filed on substitute property was proper under state law. D.E. 83 at 10. But these cases are not convincing as they are pre-*Luis* and based on law that has since been overturned.

Further, the Government's attempt to distinguish out-of-circuit cases cited by the Court in its Order by saying that they are applying other state law is not persuasive because the main takeaway is that there was no "need" showing required when the *lis pendens* itself on substitute property was not permissible and the various state *lis pendens* laws are essentially indistinguishable from Florida's on the relevant issue. D.E. 83 at 12, n. 13; *see, e.g., Jarvis*, 499 F.3d at 1204-05 (*lis pendens* on substitute assets impermissible); *Coffman*, 2010 WL 3984886 at *4 (ordering discharge of *lis pendens* on substitute property); *Kramer*, 2006 WL 3545026 at *10 ("Under no circumstances … is a *lis pendens* available to the Government with regard to [defendant's] untainted real property" because "unlike specifically forfeitable property,

[defendant's] substitute properties are not the subject matter of the pending indictment, nor are these proceedings about a colorable interest in the property that the Government claims it now has and is now litigating to vindicate").

Finally, the Government's argument citing *United States v. Knowles*, 819 F. App'x 781, 783 (11th Cir. 2020) for the proposition that a court "must" forfeit substitute assets under Rule 32.2(e) when the statutory requirements are met obviously begs the crucial questions of the completely contingent nature of any prospect of a claim to such assets and the *fact* that, as of now, these innocent assets belong to the accused "pure and simple." D.E. 83 at 11. *No* statutory requirements have been met in this case. Likewise, the argument that any doubts about the outcome does not affect the *lis pendens* is made entirely by citing cases in which the properties were directly involved in the litigation—or for which collection proceedings have begun post-judgment—which is *the* crucial distinguishing feature of this case.

In this case, the Government cannot meet the heavy burden required under Florida law to tie up someone's property because the substitute assets subject to the *lis pendens* are not traceable to the pending federal case and have no direct connection to the alleged offenses. The Government concedes that the assets subject to the *lis pendens* were not connected to the pending federal case at the time the *lis pendens* were filed and are being restricted only as a potential source from which to fulfill theoretical restitution and forfeiture orders that have not been ordered and may never be imposed. Florida law mandates the dissolution of the *lis pendens* in this circumstance.

### B. The Magistrate Court did not err in finding that under Florida and federal law, a *lis pendens* is a restraint on property.

By placing *lis pendens* on the substitute assets in this case, the Government has made it impossible for Rivera and Nuhfer to use those properties to secure legal counsel which they have a right to do because the Government has no present interest in those properties. The restraint of

substitute assets is effectively a pretrial limit on the amount of his or her own untainted money a defendant can spend on his or her defense. There is no countervailing tool available to the defendants to limit the Government's expenditures in prosecuting them. The substitute assets in the Indictment are not involved in this case and cannot be tied up unless and until the Government secures a monetary judgment following a conviction which it is unable to satisfy from forfeitable assets.

As *Luis* unequivocally explains, 21 U.S.C. § 853 does not authorize the pretrial restraint of substitute assets. Similarly, the Sixth Circuit has explained that "the plain language of 21 U.S.C. § 853 conveys Congress's intent to authorize the restraint of tainted assets prior to trial, but not the restraint of substitute assets." *Parrett,* 530 F.3d at 431. Because the properties identified in this case are "substitute assets," federal law commands that the Government's *lis pendens* are unconstitutional. The Government attempts to get around the illegality of the *lis pendens* in this case by arguing that that the *lis pendens* is appropriate here because it is not a restraint on Rivera or Nuhfer's property. D.E. 83 at 15. The Government's attempted end-run around *Luis* should be rejected. Not only is Florida law clear that a *lis pendens* is a restraint of assets, but it is also inconsistent with the express language of *Parrett*, in which the Sixth Circuit said, "we have concluded that § 853 does not itself authorize an order of *lis pendens* over substitute assets prior to the entry of a forfeiture order." *Parrett*, 530 F.3d at 431. It is worth mentioning that the Government would not have gone to the trouble of recording *lis pendens* in both Florida and Georgia if doing so would not have restrained the sale or mortgaging of the properties. But now it argues that the Court should conclude that no restraint is involved.

Frankly, as Chief Judge Torres has already recognized, the issue of the impact of a *lis pendens* is a red herring, which the Court need not decide as the *lis pendens* themselves are illegal

and should be declared so. D.E. 75 at 14, n. 7 ("As noted previously, we need not resolve questions about the effects of the pretrial notice of lis pendens on Defendants' due process or Sixth Amendment rights because, as a threshold matter, the Government cannot establish that it had the statutory authority to file the pretrial notices of lis pendens on substitute property in the first place."); *see also United States v. Kavalchuk*, 2010 U.S. Dist. LEXIS 16343 *13 (D.N.H. Feb. 3, 2010) ("Because the government has not shown that either federal or state law authorizes a notice of lis pendens on [substitute property], whether a notice of lis pendens is less restrictive than a restraining order is immaterial"); *Kramer,* 2006 WL 3545026, at *10 (explaining that the inquiry ends on the question of whether the notice of *lis pendens* is permitted under state law, not on whether the *lis pendens* constitutes a restraint on the assets).  As discussed below, any contrary view in old pre-*Luis* federal cases is simply wrong in light of this authority from the courts that actually handle *lis pendens* actions.

The pretrial restraint of innocent property is not permitted by 21 U.S.C. § 853 and the *lis pendens* in this case are illegal under state law and under *Luis.* To try and get around this dispositive problem, the Government relies on dicta from an old pre-*Luis* case, *United States v. Register*, 182 F.3d 820, 835-36 (11th Cir. 1999), stating that a *lis pendens* is not a "seizure" or "restraint." The Court squarely rejected the Government's argument, finding "the Government's logic unpersuasive and its reliance on *Register* misplaced." D.E. 75 at 14. The Court reasoned that "[w]hile the Eleventh Circuit may have held that a lis pendens does not affect property interests to the extent necessary to trigger the due process clause, nothing in this case purports to define the government's pretrial authority to restrain *innocent assets* under section 853. Indeed, nothing in the *Register* ruling provides support for the Government's assumption that the meaning of a

'restraint' in the Fifth Amendment context can be—and must be—conflated to the meaning of a 'restraint' in the section 853 context." *Id.* at 16.

      As the Magistrate Court's Order discussed at length, the Government's reliance on *Register* is misplaced because that case had nothing to do with legality of a pretrial *lis pendens* on innocent, substitute property. The case dealt with traceable, tainted, forfeitable assets. *Register*, 182 F.3d at 834 (highlighting that "[a]ssets subject to forfeiture are no different from the stolen bank money; they are not rightfully the defendant's"). In *Register*, unlike here, the Eleventh Circuit found that the *lis pendens* filed by the Government was "pursuant to Florida law," given that the Government was "seeking forfeiture of those parcels as property used *in connection with the criminal activity* alleged in the indictment." *Id.* at 836; 834 (emphasis added). This "connection" created the requisite nexus required for a valid *lis pendens* under Florida law. But here, no such connection exists between the substitute assets subject to the *lis pendens* and the federal case (as even the Government must concede). Additionally, even if the Eleventh Circuit had found that the *lis pendens* in *Register* should be released, the retraction of the notice would not have had any effect on the defendant's ability to retain counsel because the property in question was subject to forfeiture. *Id.* at 837. This is not the case here, where the substitute, untainted assets that the Government is attempting to tie up can lawfully be used to retain counsel. Thus, the crucial distinction between forfeitable and substitute assets highlighted by the Supreme Court in *Luis*— an issue central to this dispute—was simply immaterial and unaddressed in *Register*. As the Court's Order in this case recognized, "This certainly undermines the purported controlling weight that the Government attributes to *Register* and renders it irrelevant to the substitute assets context." D.E. 75 at 16.

The Magistrate Judge properly distinguished *Register* by recognizing that, "the *Register* case was not focused on whether the government had an interest on defendant's property sufficient to justify the imposition of pretrial lis pendens constraints. Instead, the focus in *Register* was whether a notice of lis pendens amounted to something analogous to a 'seizure' or a 'taking' of property sufficient to trigger due process." D.E. 75 at 16 (quoting *Register*, 182 F.3d at 836–37). The Court emphasized that, "[t]hese are two very different questions" and explained that it was "hard pressed to agree with the necessary implications of the Government's position: namely, that nothing short of a seizure, taking, or deprivation of property can amount to a restraint for the purposes of section 853(p) substitute assets." *Id.* The Court reasoned that adopting the Government's position would be "simply inconsistent with the holdings of multiple federal Circuit Courts, including the Eleventh Circuit, as well as binding Florida state case law." *Id.*

Further, while *Register* mentioned in dicta what kinds of restraints a *lis pendens* does and does not place on a property owner, the Court recognized that the *lis pendens* makes it "virtually impossible to sell or mortgage the property." *Id.* at 836 (quoting *Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1323 (3d Cir.1982)). Although the Government repeatedly attempts to downplay the effects of the *lis pendens*, *lis pendens* notices are a function of state law and Florida law makes clear that a *lis pendens* notice has constraining effects on the property-holder defendant. As the state cases explain, the notice provided by the *lis pendens* to perspective buyers or lenders renders both the assets and the defendants radioactive insofar as using innocent properties to raise funds for their defense. The notice "will often prevent the property holder from selling or mortgaging the property." *Med. Facilities Dev., Inc.,* 675 So. 2d at 917 (recognizing that since the wrongful filing of a notice of *lis pendens* can be damaging, courts have interpreted FS § 48.23(3) to mean that a bond may be required); *see also Beefy King Int'l*, 464 F.2d at 1104 (affirming district court's

dissolving a *lis pendens* under Florida law and explaining that "[f]or all practical purposes, it would be virtually impossible to sell or mortgage the property" that is subject to a *lis pendens,* which the court called "constraining"); *Tetrault v. Calkins*, 79 So. 3d 213, 215 (Fla. 2d DCA 2012) ("because lis pendens operates as a cloud on the title and prevents an owner from selling or dealing with it, it is a harsh and oppressive remedy") (quotes and citation omitted); *Suarez v. KMD Constr., Ins.*, 965 So. 2d 184, at 187-188 (Fla. 5th DCA 2007) (noting that a *lis pendens* functions as "a harsh and oppressive remedy" that operates as a cloud on the title and prevents an owner from selling or dealing with it); *Deguzman v. Balsini*, 930 So. 2d 752, 754 (Fla. 5th DCA 2006) ("A *lis pendens* places a cloud on the title that did not previously exist, if not based on a recorded instrument."); *Chiusolo*, 614 So. 2d at 492 (a *lis pendens* "is a cloud on the title that creates a priority for the party that filed the *lis pendens* if that party prevails in the pending litigation"). It is well-established that Florida courts, which govern *lis pendens* actions, consider *lis pendens* notices to be a significant restraint on the property-holder. Any contrary dicta in pre-*Luis* cases do not control.

Despite the substantial backdrop of Supreme Court and Circuit court authority, the Government is once again "urg[ing] this Court to ignore this widespread consensus setting clear limits to Governmental authority to restrain substitute assets under section 853 prior to a defendant's trial." D.E. 75 at 14. The Court properly "refuse[d] to extrapolate from *Register* a legal rule that would place the Eleventh Circuit at odds with at least eight other circuit courts, the Supreme Court's logic in *Luis*, and a plethora of federal cases holding that Section 853 does not authorize the government to place lis pendens or other pretrial restraints on innocent assets." D.E. 75 at 17.  The whole point of *Luis* is that substitute assets are untainted and belong to the defendant. If the Government is permitted to use a *lis pendens* on the substitute property as a work-around to tie it up, *Luis* will be rendered meaningless (as will Florida state law and a host of federal cases).

*Register* is inapplicable to the case at hand. Therefore, *Luis*' holding—that the Government cannot restrain substitute assets—controls, which courts in this Circuit have repeatedly recognized. *See, e.g.*, *United States v. Hernandez-Gonzales*, 2017 WL 2954676, *4 (S.D. Fla. June 26, 2017) (Torres, Chief Magistrate Judge) ("Untainted assets, [as] the Supreme Court made clear … belong to the defendant, pure and simple.").

### C. As the Magistrate Judge correctly found, there is no requirement that a defendant show a need for the substitute assets before a *lis pendens* should be lifted.

The pretrial restraint of substitute assets is unconstitutional under federal law pursuant to *Luis v. United States*, 578 U.S. 5 (2016). In another attempt to end-run the clear directive in *Luis*, the Government makes the unsupported and improper argument that "without a showing of need, *Luis*'s holding does not apply." D.E. 83 at 18. But there was no showing-of-need requirement litigated in *Luis*; there does not appear to have been a dispute in the case as to the defendant's need for the funds to retain counsel. The only reference to the subject in the opinion is when the Court states, "The Government and Luis agree that this court order will prevent Luis from using her own untainted funds, *i.e.,* funds not connected with the crime, to hire counsel to defend her in her criminal case." *Luis*, 578 U.S. at 9. This passage does not say that the defendant needed to use the untainted assets to hire counsel, only that the order "prevented her from doing so."

The issue in *Luis* was not whether the defendants had to make a showing of need; the parties there assumed that Luis needed the funds and the question was whether a pretrial restraint of substitute assets was permissible. The Supreme Court said it was not permissible, because the "property that is untainted by the crime…belongs fully to the defendant." *Id*. at 8-9. Both the Supreme Court and this Court underscored this point saying that the difference between tainted assets and "substitute property" is that the substitute asset is "untainted; i.e. it belongs to the

defendant pure and simple." *Id.* at 12; D.E. 75 at 11. *Luis* does not require a defendant to make a showing of need to obtain access to substitute assets because it makes clear that those assets should not have been restrained in the first place as does a consistent line of federal cases. Therefore, based on the text of *Luis* itself, the Government is misconstruing the language referring to "need."

The Government's position completely disregards the line of cases we discuss in our pleadings, which detail how federal courts have said that the forfeiture statute simply does not allow for the restraint of substitute assets: "[T]he plain language of 21 U.S.C. § 853 conveys Congress's intent to authorize the restraint of tainted assets prior to trial, but not the restraint of substitute assets." *Parrett*, 530 F.3d at 431. One of the cases that we cite (and the Government does not fully address) is *United States v. Chamberlain*, 868 F.3d 290 (4th Cir. 2017), which specifically rejects the Government's expansive reading of the forfeiture statute.

> In *Luis,* however, the Supreme Court all but rejected such an expansive reading of its earlier holdings [referring to *Caplin & Drysdale* and *Monsanto*.] Specifically, the *Luis* plurality explained that, unlike tainted assets—the defendant's ownership of which is necessarily imperfect—untainted assets belong to the defendant pure and simple. With this in mind, the plurality emphasized that the contention that property—whether tainted or untainted—is subject to pretrial restraint so long as the property might someday be subject to forfeiture…asks too much of [the Court's] precedents.

*Id.* at 295-96 (internal quotations and citations omitted). This line of cases really puts a stake in the heart of the Government's argument that Nuhfer and Rivera must make a showing of need. These cases explain that the *lis pendens* was improper in the first place under *Luis* and the forfeiture statute. Therefore, they should be lifted. *See, e.g., United States v. Miller*, 295 F. Supp. 3d 690, 697 n. 8 (E.D. Va., 2018) ("Because *Chamberlain* specified that the government is not permitted to seize substitute assets prior to trial, **regardless whether those assets are needed to retain and pay for counsel and a defense**, defendant here is not required to prove that he needs the seized assets to pay for counsel to be entitled to release of the funds.") (emphasis added).

Federal courts routinely order the federal government to remove *lis pendens* where they violate state laws in cases that look a lot like this one (where the Government is improperly trying to tie up substitute assets). In **<u>none</u>** of these cases, did the courts impose a "showing of need" requirement as a precondition to ordering the Government to remove *lis pendens* found to violate state law. *Jarvis*, 499 F.3d 1204-05; *Coffman*, 2010 WL 3984886, at *4; *Kramer,* 2006 WL 3545026, at *11; *see also Kavalchuk*, 2010 WL 703105 (finding that the Government made no showing of support under Massachusetts law for filing notice of *lis pendens*); *United States v. Jewell*, 556 F. Supp.2d 962, 967-968 (E.D. Ark. 2008) (holding that Arkansas law did not provide a basis for filing a notice of *lis pendens* on substitute assets). These Courts do not discuss any such requirement that an accused must make a showing of need in order to force the lifting of an improper *lis pendens* on substitute assets because the Government has no right to impose the *lis pendens* on substitute assets in the first place under state law and after *Luis*.

The Government's interpretation of the "needed to retain counsel" language in *Luis*, which was apparently a stipulated fact, not a litigated issue, in that case, as requiring a defendant to make a detailed showing of need, would require that defendants reveal to the Government all of their assets at the very outset of the case as well as the legal fees being charged. And, as we have shown herein, federal courts have routinely ordered the release of *lis pendens* found to violate state law with no showing of need. A detailed showing of need by an indicted person needing to retain counsel, particularly at the very outset of a case with counsel who have only appeared "temporarily" and are not thoroughly familiar with all of the issues and nuances which inherently surround such a detailed showing of finances to the prosecution, should not be an engrafted, substitute excuse permitting the Government to restrain substitute assets it cannot otherwise legally do.

The Government simply has no right or ability to tie up in any way an asset that is untainted and does not belong to it. It cannot force a defendant to show "need" to have access to innocent assets that "belong to [him] pure and simple." No matter how deeply the Government has managed to contort its argument, there is simply no provision in any federal statute or case for such a brazen power grab. That is why lower courts have continued to differentiate between traceable assets and innocent substitute assets. *See, e.g., Hernandez-Gonzales*, 2017 WL 2954676, *4 (Torres, Chief Magistrate Judge) ("Untainted assets, [as] the Supreme Court made clear … belong to the defendant, pure and simple."). Ultimately, under the Government's analysis, there would be no difference between traceable and substitute assets—a defendant could obtain access to those assets only with a showing of need. That cannot be the law where the *lis pendens* is illegal under state law, omitted from reference in 21 U.S.C. § 853(c), or after *Luis*, which explains in detail why the pretrial restraint of innocent property is not permitted by 21 U.S.C. § 853. As the Court recognized in its Order, "[The Government's] lis pendens theory effectively conflates tainted and untainted property in disregard of the clear distinction established by the Supreme Court, and in contravention to an extensive line of circuit court rulings across the country." D.E. 75 at 8.

Respectfully submitted,

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Telephone: (305) 679-5700
Facsimile: (305) 679-5710

By:     */s/ Edward R. Shohat*
        Edward R. Shohat
        Florida Bar No. 152634
        eshohat@joneswalker.com
        *for Defendant Rivera*

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH 1
Miami, FL 33128
Telephone: (305)379-6667
Facsimile: (305) 379-6668

By:     */s/ David Oscar Markus*
        David Oscar Markus
        Florida Bar No. 119318
        dmarkus@markuslaw.com
        *for Defendant Nuhfer*