**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20552-DAMIAN/TORRES**

**UNITED STATES OF AMERICA**

**vs.**

**DAVID RIVERA,**

      **Defendant.**

_____/

**GOVERNMENT'S RESPONSE TO DAVID RIVERA'S MOTION FOR
PERMISSION TO TRAVEL TO SPAIN**

The United States of America, by and through the undersigned attorneys, submits this response to David Rivera's ("Rivera") motion for permission to travel to Spain (DE 247).   For the reasons set forth below, the government respectfully submits that Rivera's motion should be denied.

**Factual Background**

**A.     Summary of the Pending Charges**

On November 16, 2022, a grand jury sitting in this district returned an indictment charging Rivera and Esther Nuhfer ("Nuhfer") with conspiracy to violate the Foreign Agents Registration Act ("FARA"), in violation of 18 U.S.C. § 371, a substantive FARA count, in violation of 22 U.S.C. § 612(a) and 618(a)(1), money laundering conspiracy, in violation of 18 U.S.C. § 1956(h), and five substantive counts of money laundering, in violation of 18 U.S.C. § 1957.

On December 14, 2023, a separate grand jury sitting in this district returned a Superseding Indictment that added several counts of tax-related charges against Rivera concerning his filing of false personal and corporate tax returns for tax years 2017 and 2018, in violation of 26 U.S.C. §§

7201 & 7206(1).

The FARA charges in the Superseding Indictment allege that Rivera and Nuhfer failed to register with the Attorney General of the United States as foreign agents acting on behalf of the Venezuelan government in connection with their efforts in 2017 and 2018 to, in part, lobby United States government officials to normalize relations between the United States and Venezuela.

To compensate Rivera and Nuhfer for these efforts, PDV USA, a wholly owned U.S. subsidiary of Petroleos de Venezuela, S.A. ("PDVSA"), the state-owned oil company of Venezuela, entered into a consulting contract with Interamerican Consulting, Inc., a Florida corporation controlled by Rivera.  The signed consulting contract between Interamerican Consulting and PDV USA, dated March 21, 2017 (the "Interamerican Consulting contract"), provided for five installment payments of $5 million each and a final payment of $25 million to be made before June 15, 2017.

Rivera, through Interamerican Consulting, ultimately received a total of $15 million from PDV USA in the spring of 2017 and an additional $5 million in October 2017 from a PDVSA bank account at Gazprom Bank (a Russian entity) pursuant to the Interamerican Consulting contract. Over time, Rivera distributed these funds between himself and several other individuals involved in their lobbying efforts including, but not limited to, Nuhfer and Raul Gorrin ("Gorrin"), a wealthy Venezuelan businessman who was instrumental in securing the $50 million contract.  Gorrin is also a fugitive from U.S. justice having been indicted in August 2018 by a grand jury in the Southern District of Florida for money laundering and other violations for his role in a massive bribery scheme involving two former Treasurers of the Venezuelan government. See U.S. v. Raul

Gorrin Belisario, 18-80160-Cr-Dimitrouleas.[1]

## B.    Procedural Background

On December 5, 2022, Rivera had his initial appearance in the Northern District of Georgia following his arrest in the pending matter.   Rivera was released from custody the same day pursuant to an agreed-upon $200,000 personal surety bond co-signed by his wife and sister with various conditions imposed by the court (DE 24).

On December 20, 2022, Rivera made his initial appearance in the Southern District of Florida at which time Magistrate Judge Goodman authorized Rivera's continued release pursuant to an agreed-upon $200,000 personal surety bond similar to the initial bond entered in Georgia (DE 30).   The conditions of Rivera's bond included, in part, that both he and his wife surrender their passports, that Rivera continue to seek or actively seek employment, and that Rivera avoid all contact directly or indirectly with any witness in the investigation or prosecution of the pending matter (DE 30, p. 2).   In addition, the bond restricted Rivera's travel to the Northern District of Georgia (where Rivera resided), the Southern District of Florida (where the present criminal case is pending), the Middle District of Florida (where Rivera's counsel in a related civil case are located), the Southern District of New York (where the related civil case is pending) for court appearances and meetings with counsel, and to Washington DC "to obtain counsel or co-counsel and or meeting with counsel" (DE 30, p. 4).

The bond imposed by Judge Goodman has been modified several times with the

---

[1] In October 2024, Gorrin was charged in second indictment filed in the Southern District of Florida for his involvement in a separate conspiracy to launder the proceeds of a corrupt foreign (Venezuelan) loan and bribery scheme through a series of shell companies and overseas financial accounts to disguise the location, source, and ownership and control of the illicit proceeds. U.S. v. Raul Gorrin Belisario, 24-CR-20468-Altman (SDFL).

government's consent.   These modifications include the removal of a curfew initially imposed on Rivera (DE 90) and the return of Rivera's spouse's U.S. passport that she initially had been required to surrender to pre-trial services (DE 159).   The government has also agreed to several motions filed by Rivera for court authorization to allow him and/or his wife to travel in certain instances.   These include travel to Wisconsin in July 2024 to attend the Republican National Convention (DE 186), a family vacation to Boston earlier this year (DE 134), and several international trips by Rivera's spouse prior to the permanent release of her passport (DE 100 & 128).

### Argument

In his motion, Rivera seeks the return of his passport so that he can travel to Spain to purportedly "conduct in-person consultations with members of the Venezuelan opposition."   He asserts that since the July 28, 2024 Venezuelan election (in which the United States recognized Edmundo Gonzalez Urrutia as the winner of the election for President of Venezuela), he has been advising certain "leaders of the Venezuelan opposition" with respect to their efforts "to broaden support for their objectives in the United States and other Latin American countries." Although Rivera does not attempt to seriously argue that there is any chance that Nicolas Maduro will concede that he lost the July 2024 Venezuelan election and that Urrutia will be instead sworn in as President of Venezuela, Rivera asserts that it is necessary for him to travel to Madrid at this time to meet with opposition leaders as the Venezuelan constitution requires that the President of Venezuela be sworn-into office on January 10, 2025.   Rivera's motion should be denied.[2]

---

[2] As this Court is aware, this is not the first motion Rivera has filed seeking the return of his passport so that he can engage in international travel. Just in the last six months, both this Court [DE 208] and Chief Magistrate Judge Torres [DE 196] denied Rivera's prior motions requesting

As the government has previously asserted, this case, by its very nature, involves risks relating to nonappearance should Rivera be allowed to engage in international travel. Rivera is charged after all with being an agent of a foreign government – Venezuela – that is on poor terms with the United States and is generally regarded as being run by a corrupt regime.   The *de facto* President of Venezuela, Nicolas Maduro (who is not recognized by the United States as the legitimate president of Venezuela), is himself a defendant in an indictment pending in the Southern District of New York and the subject (along with other members of his regime) of sanctions first imposed against him in 2018 by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"). Gorrin, in turn, is an international fugitive who is also subject to sanctions imposed by OFAC, and has substantial financial and other ties to Rivera, as demonstrated, in part, by his involvement in the activities described in the Superseding Indictment, including his receipt of several million dollars from the PDV USA consulting contract that Gorrin used, in part, for the maintenance of his luxury yachts in Miami, Florida.

Moreover, in the last week, a grand jury sitting in the District of Columbia returned an indictment charging Rivera with a second FARA violation and several counts of money laundering in relation to his providing consulting and lobbying services to Gorrin from June 2019 through April 2020 in an effort to have Gorrin removed from the OFAC sanctions list. See U.S. v. David Rivera, Case No. 24-Cr-00570-EGS (DDC).   Indeed, those efforts further included, as described in the indictment for which the grand jury found probable cause, that Rivera had received

---

permission to engage in international travel to Mexico (for purported business purposes) and Venezuela (to assist allegedly the Venezuelan opposition in monitoring the July 2024 election). Indeed, the present motion raises practically nothing new to his previously-denied motion seeking permission to travel to Venezuela.

approximately $5.5 million from or on behalf of Gorrin in 2019 that was wired to Interamerican Consulting's U.S. bank accounts through three Hong Kong-based companies. The indictment further alleges that Rivera then laundered the $5.5 million in funds Interamerican Consulting received through a bank account in the name of a Delaware company that Rivera incorporated using the name of a law firm with offices in Washington D.C. and New York City without the law firm's knowledge or consent.

In addition, as the government previously noted in its response to Rivera's June 2024 motion to travel to Venezuela to purportedly meet with an unidentified Venezuelan opposition candidate before the July 2024 Venezuelan election [DE 190], Rivera initially attempted to open an offshore bank account in the Isle of Dominica using fake personal and corporate tax returns in order to receive the $5.5 million payment for his efforts to have Gorrin removed from the OFAC sanctions list. Moreover, Rivera has on more than one occasion represented in financial disclosure forms filed with Florida Division of Elections under penalty of perjury that he maintains significant foreign assets in Mexico, Taiwan, and Haiti, as well as significant annual income from a Mexican corporate entity named Xemma Holdings, S.A. de C.V. (copies of the disclosure forms are included as exhibits to the government's response to Rivera's motions to travel to Mexico and Venezuela filed earlier this year [DE 184 & 190]).

Accordingly, it is the government's belief that Rivera has substantial foreign ties and a degree of financial sophistication (and association with others) that create a significant risk of nonappearance should Rivera be allowed to engage in international travel outside the United

States.[3]

In contrast, Rivera provides no information in his motion substantiating his alleged need to travel to Spain at this time. Instead, he summarily asserts that he would like to travel to Spain for three days to include "a full day of pre-arranged in-person consultations with members of the anti-Maduro Venezuelan opposition" and that he is "willing to provide the court" *ex parte* with "any details regarding who within the Venezuelan opposition he will be meeting with while in Madrid." Obviously, the government is skeptical of his assertions in this regard in light of his refusal to identify on the public record and to the government who he is purportedly meeting with. Indeed, this is particularly true as Rivera has filed false tax returns (as alleged in the Superseding Indictment) with the Internal Revenue Service, provided false documents to open an offshore bank account, and set up Delaware corporations in the name of a law firm without its knowledge or consent, among other things.

Finally, as with his prior motions to travel to Venezuela and Mexico, Rivera makes no showing as to why he needs to be physically present in Spain to meet with opposition leaders. To the government's knowledge (and Rivera makes no assertions to the contrary), there is nothing preventing members of the Venezuelan opposition from travelling from Spain or Venezuela to the U.S. to meet with Rivera if a one-day meeting in person is so crucial to Rivera's purported efforts on their behalf. Moreover, as Chief Magistrate Judge Torres previously noted in his prior Order

---

[3] Rivera in fact had initially filed a motion to travel to Venezuela in July 2023 on the grounds that he wished to consult with Gorrin who he described in his motion as his long-time attorney who was also providing him with legal advice concerning the pending indictment in the SDFL [DE 71]. Rivera eventually withdrew that motion after the government submitted its response detailing the full scope of their relationship, including Gorrin's legal issues in the United States and his involvement in the events described in the pending Superseding Indictment [DE 81 & 84].

denying Rivera's motions to travel internationally, "modern technology allows him to engage in such opportunities without usurping his customary bond conditions" [DE 196, p. 5], and Rivera offers no explanation as to why Zoom or other video technology is insufficient under the present circumstances. See United States v. Tavlin, 2022 WL 4017505 at *1 (D. Minn. 2022) (denying defendant's motion for limited international travel where defendant offered no compelling reason why he could not continue to use Zoom to negotiate a business transaction in the Netherlands or meet in Minnesota with his counterparts "if an in-person meeting" was essential); United States v. Ellard, 2021 WL 1790554 at * 1 (M.D. Fla. 2021) (denying motion to travel internationally where defendant failed to explain "why travelling internationally [was] crucial to his business" and social media and the internet provided an alternative means to "conduct his business without travelling"). Indeed, Urrutia himself gave an interview by Zoom to the Miami Herald and CNN to get his message out in the United States regarding Maduro's efforts to undermine the then-pending July 2024 election, see Andres Oppenheimer, Biden should listen to Venezuelan opposition leader's warning about Maduro's tricks, Miami Herald, July 9, 2024, and there is no reason to believe that Rivera cannot avail himself of the same technology to communicate with any Venezuelan opposition leaders who might wish to confer with him.

At bottom, the travel restrictions included in Rivera's bond are standard conditions in this district and quite reasonable under the circumstances of this case, including allowing unrestricted travel within the Southern and Middle Districts of Florida and the Northern District of Georgia, and travel to the Southern District of New York and Washington D.C. on a more limited basis. That Rivera should be required to surrender his passport to pretrial services to limit his ability to engage in international travel seems an extremely reasonable condition under the present

circumstances. Accordingly, for the reasons discussed in this response, Rivera presents too great

a risk of nonappearance should he be allowed to travel to Spain or elsewhere outside the United

States.

### Conclusion

For the reasons described above, Rivera's motion to travel to Spain should be denied.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY


By:      /s/ Harold E. Schimkat
              Harold E. Schimkat
              Daniel Bernstein
              Assistant United States Attorneys
              Court ID No. A5500567
              Fla. Bar No. 0017973
              99 N.E. 4th Street, 4th Floor
              Miami, Florida 33128
              Office: (305) 961-9298
              Cell: (786) 378-4344
              Harold.schimkat@usdoj.gov

9

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on December 20, 2024, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

<u>/s/                                </u>
Harold E. Schimkat
Assistant United States Attorney