UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-20552-Cr-Damian/Torres

UNITED STATES OF AMERICA

vs.

DAVID RIVERA,

Defendant.

_____/

GOVERNMENT'S RESPONSE TO
DAVID RIVERA'S SECOND MOTION FOR ADDITIONAL DISCOVERY

Introduction

At the status conference held on January 15, 2025, this Court denied David Rivera's motion for additional discovery (DE 248, 258, & 261) in which he sought an order from this Court compelling the government to produce a wide range of documents relating, in part, to its communications with PDV USA, Inc. ("PDV USA") and its attorneys.  In so doing, the Court noted that Rivera's motion was unduly broad and lacked a sufficient factual basis to support the extensive discovery Rivera was requesting from the government.

The Court, however, denied the motion without prejudice in order to provide Rivera with the opportunity to cure the defects in his initial motion.  Rivera has failed to do so.  In his second motion for additional discovery (DE 266), for instance, Rivera has not even attempted to provide a more robust factual basis to support his conjecture that the government must have directed PDV USA, through its attorneys with the law firm Willkie, Farr & Gallagher, to pursue litigation in the Southern District of New York against Rivera's company, Interamerican Consulting, Inc. ("Interamerican"), see PDV USA, Inc. v. Interamerican Consulting, Inc., No. 20-cv-3699 (the

"SDNY Civil Action"), and then manipulated the conduct of those proceedings for its benefit. Rather, Rivera relies on the same factual basis rejected by this Court that he set forth in his initial motion; namely, (1) an excerpt from a 2020 PowerPoint presentation by PDVSA's Ad Hoc Supervisory Board containing a statement that PDV USA had "consult[ed] with" the Department of Justice ("DOJ") before filing the SDNY Civil Action and (2) an interrogatory response in the civil case in which PDV USA listed eight telephonic and in person meetings involving attorneys from Willkie, Farr & Gallagher (who were representing, in part, CITGO Petroleum) and various government attorneys concerning a number of matters (including, but not limited to, the subject matter of the SDNY Civil Action) that took place before PDV USA filed its lawsuit against Interamerican in May 2020.

That Rivera has not offered any other factual basis in support of his suspicion of collusion is not surprising as this same issue was extensively litigated in the SDNY Civil Action and refuted, according to the publicly available filings, by PDV USA. See Govt. Ex. 1 (letter from Willkie, Farr, & Gallagher to Interamerican's counsel stating that Interamerican's discovery requests appeared to be directed at Interamerican's "tin-foil-hat theory that 'Willkie attorneys instructed PDV USA to bring [its] lawsuit to help Citgo avoid scrutiny by the Department of Justice'"). Moreover, Interamerican's attorneys were allowed to question PDV USA's 30(b)(6) corporate witness regarding these matters who explained during her deposition "what the reference to 'prior consultation' with DOJ in the 2020 presentation meant: [redacted]."[1] See Govt. Ex. 2, p. 2. Further, "[w]hen asked generally whether discussions with DOJ influenced PDV USA's decisions

---

[1] Because PDV USA asserted confidentiality pursuant to the parties' protective order in the SDNY Civil Action as to the deposition of its 30(b)(6) witness, portions of the public record regarding these matters remain redacted but are obviously known to Rivera.

[sic] to file the lawsuit, she testified that [redacted]." She also provided additional testimony regarding "who communicated with DOJ and how often," "whether consultations with DOJ motivated the filing of [the] lawsuit," the "investigations referenced in the 2020 Ad Hoc presentation," "whether DOJ suggested to PDV USA that it should file a lawsuit," and "whether notes or memoranda exist pertaining to the meetings." Id.[2]

Indeed, in his Order denying Interamerican's motion to take a second deposition of PDV USA's 30(b)(6) witness (and an attorney representing PDV USA), Magistrate Judge Lehrburger, the magistrate judge overseeing discovery in the civil case, stated that during the first deposition of PDV USA's corporate witness "Interamerican already asked several questions about PDV's communications with DOJ, and received numerous answers, including about whether discussions with DOJ had any influence on the lawsuit (the answer being possibly as to timing but not as to the action itself)." See Govt. Ex. 3, pp. 1-2 (emphasis added). Rivera, however, failed to bring to this Court's attention in either his first or second motion for additional discovery that PDV USA had already provided sworn testimony through its 30(b)(6) witness that the government had not influenced its decision to file its lawsuit (presumably for the obvious reason that the specifics of that information would have undercut the basis for his motions to obtain discovery from the government) or to even acknowledge that extensive discovery of these matters had already taken place in the SDNY Civil Action. See Govt. Ex. 1, p. 2 (noting that PDV USA's corporate witness testified under oath that Interamerican's theory that DOJ had directed or urged PDV USA to file

_____

2 In his motion, Rivera describes his Exhibit A as "a certified translation of a slide from a presentation made by an unknown PDV USA employee to the PDVSA Ad Hoc Board in 2022." In contrast, PDV USA's attorneys have stated in the SDNY Civil Action that the slide was part of 2020 public presentation by PDVSA's Ad Hoc Board. See Govt. Ex. 2, p. 1. Accordingly, it is not clear to the government who prepared the slide and for what purpose, and Rivera provides no information shedding any light on the matter.

suit, or that PDV USA filed suit solely based on a desire to avoid scrutiny by DOJ, was incorrect). Instead, Rivera chose to present this matter to the Court as if it was proceeding on a blank slate when in fact the discovery already engaged in in the SDNY Civil Action directly contradicted his assertions in this forum.

Nor is there any great mystery regarding Rivera's Exhibit A, reflecting eight telephonic and in person meetings involving PDV USA's attorneys and a number of government attorneys that took place between May 23, 2019, and PDV USA's filing of the SDNY Civil Action in May 2020.  It is in fact a matter of public record that DOJ served CITGO Petroleum with a subpoena in 2019 for materials relating to a multi-year investigation into corrupt practices at PDVSA and its affiliates that was being conducted by DOJ FCPA prosecutors and prosecutors from the U.S. Attorney's Office for the Southern District of Texas.  See Govt. Ex. 2, p. 1.  That various prosecutors from those offices as well as members of the prosecution team in the present matter met occasionally with attorneys for CITGO Petroleum and PDV USA, which were cooperating in the government's investigations, is nothing unusual and to be expected by anyone familiar with federal criminal investigations.  Ultimately, as a result of that investigation, at least six criminal cases were filed in the Southern District of Texas between 2018 and 2020 against multiple defendants for FCPA and related violations, presumably none of which is news to Rivera's present counsel, who represented a defendant in one of those criminal actions.  See United States v. Jose Manuel Gonzalez Testino, 19-Cr-341 (S.D. Tex.) (charging the defendant, who was represented by Edward Shohat, with FCPA and related violations for a bribery scheme involving PDVSA and its affiliates).

Finally, in his second motion for additional discovery, Rivera also attempts to rectify his initial motion's failure to provide any examples of how he was misled by either the government

or PDV USA's attorneys in engaging in discovery in the SDNY Civil Action or any examples of any tangible harm that he suffered as a result of any purported misconduct that he would seek to rectify in the criminal action through a motion to suppress or other means.   To that end, Rivera now vaguely asserts that "because his lack of knowledge about the Government's role as 'second chair' [in the SDNY Civil Action] has impacted his defense in that case," his strategic decisions in that matter might have been different as "to his deposition and the various interrogatories that he answered" and he therefore "may have been less extensive in his responses and more inclined— at times—to assert his Fifth Amendment privilege."   Mot. at p. 8.

Rivera, however, made his own decision to testify under oath during the course of those proceedings knowing full well that he was a target of the government's criminal investigation (as described below and in the government's response to his first motion for discovery) and after Rivera had already engaged in litigation in the SDNY Civil Action to obtain additional information regarding PDV USA's communications with the government.   For example, on June 29, 2022, one month before Rivera sat for his deposition, Interamerican filed a motion seeking, in part, to compel PDV USA to provide additional discovery regarding its communications with DOJ (specifically, answering the interrogatory included as Rivera's Exhibit A) so that Interamerican could develop evidence of "the involvement of the Department of Justice in bringing this lawsuit" (SDNY Civil Action DE 91, p. 2). As a basis for its motion, Interamerican attached as an exhibit a copy of the PowerPoint slide from PDVSA's Ad Hoc Board stating that it decided to sue Interamerican for breach of contract after "consultation with" the DOJ once the new Board of Directors took control of PDV Holding, Inc. (SDNY Civil Action DE 91-1).

Rivera's suggestion in his present motion that he might have provided different answers in his deposition or even asserted his Fifth Amendment rights if he had been aware of a basis to

believe that the government had somehow been inappropriately involved in the filing of the SDNY Civil Action is simply not consistent with the record in the civil proceedings as Interamerican was already actively litigating the matter, and had the PowerPoint presentation in its possession, when Rivera chose to testify under oath.

For these and the other reasons set forth below, Rivera's second motion for additional discovery should be denied.[3]

## Background

### A.    *SDNY Civil Action*

In 2019, following Venezuela's disputed presidential election, U.S.-incorporated affiliates of the Venezuelan state oil company Petroleos de Venezuela, S.A. ("PDVSA") underwent changes to their boards of directors in connection with the Venezuelan political opposition's claim (later recognized by the United States government) that it, not the regime of Nicolás Maduro Moros (Maduro), constituted the legitimate government of Venezuela.   See Jiménez v. Palacios, 250 A.3d 814, 819–26 (Del. Ch. 2019) (summarizing those developments).   PDV USA was one such affiliate and, in May 2020, it sued Rivera's company in the SDNY based on claims relating to the $50 million, three-month-term agreement Interamerican entered into with PDV USA in March 2017, when it was still under the control of directors appointed by the Maduro regime.   Among other relief, PDV USA sought to recover in full the $15 million it had paid Interamerican under the agreement, which underlies in part the FARA criminal violations alleged against him and co-defendant Esther Nuhfer (Nuhfer) in the pending matter.

---

3 Rivera's second motion for additional discovery substantially tracks his initial filing but for the matters already addressed by the government in the introduction section. Accordingly, the remaining portion of the government's response is fairly redundant of its response to Rivera's previous motion.

In August 2021, after the denial of its motion to dismiss, Interamerican, an entity solely owned and controlled by Rivera, filed its answer to PDV USA's complaint and counterclaimed for $30 million, alleging that PDV USA owed it the balance of the $50 million under the parties' agreement (*see* SDNY DE 50, Counterclaim ¶¶ 2–4). [4]   Well before the August 2021 counterclaim, however, PDV USA had reason to expect litigation with Interamerican over the agreement.   For example, based on evidence obtained by the government during its investigation, Rivera continued to send emails to PDV USA demanding payment of the $30 million through late 2018 (see Overt Act 91 of the Superseding Indictment) and into early 2019.

In July 2022, during the course of the discovery proceedings in the SDNY Civil Action, Rivera sat for a two-day deposition as Interamerican's designated Rule 30(b)(6) witness at which Rivera was represented by Interamerican's counsel in the SDNY Civil Action.   The deposition was conducted in Miami by attorneys from Willkie, Farr & Gallagher, PDV USA's attorneys in the civil case.   The government had no involvement in arranging Rivera's deposition, designating Rivera as Interamerican's corporate witness, choosing the location of the deposition, or any other aspect of the conduct of the proceeding.   Indeed, Rivera does not allege or even suggest that the taking of his testimony was anything other than a normal deposition that would be expected to take place during the course of a multi-million dollar lawsuit where a one-person corporate entity (Interamerican) is named as the defendant.

Moreover, although the parties to the SDNY Civil Action had in place a protective order governing discovery in that matter (SDNY DE #55), Interamerican's attorneys did not designate

---

[4]  Interamerican received an additional $5 million from a PDVSA bank account in October 2017. Presumably, that is why Interamerican's counterclaim against PDV USA is for $30 million instead of $35 million.

Rivera's deposition testimony as "confidential" pursuant to the parties stipulated protective order and, to the government's knowledge, Interamerican's attorneys have not to date asserted in the SDNY Civil Action that PDV USA violated the parties' protective order in providing copies of Rivera's deposition testimony to the government.

Subsequently, in November 2022, a grand jury returned the initial Indictment in this matter (a Superseding Indictment was returned in December 2023) naming Rivera and Nuhfer as defendants.   Since then, PDV USA and Interamerican have engaged in extensive litigation concerning Interamerican's failure to produce in discovery emails and text messages relevant to the SDNY Civil Action (referred to in the civil litigation as the "Missing Documents") after learning of their existence from the initial Indictment returned in the criminal case.   Those efforts have taken place before the court overseeing the SDNY Civil Action and through subpoena enforcement actions filed in the Southern District of Florida.   Ultimately, in May 2024 both Magistrate Judge Lehrburger in the SDNY Civil Action (DE #166 & 193 in Case No. 20-Civ-3699-JGK), and Magistrate Judge Louis in the SDFL subpoena enforcement action (DE #38 in Case No. 24-Civ-20456-Damian/Louis) ordered Interamerican and Rivera to produce copies of the relevant portions of the criminal discovery to PDV USA's attorneys.

While this litigation concerning the Missing Documents was pending, PDV USA issued a subpoena in February 2024 to the United States Attorney's Office ("USAO") for copies of certain documents that the government had provided to the defendants in discovery in the criminal proceedings after it apparently became clear to PDV USA that Interamerican and Rivera would resist PDV USA's efforts to compel production of the Missing Documents.   Ultimately, this Court granted the government' application for court authorization to comply with the PDV USA subpoena (DE #162 & 168) and the government subsequently produced the responsive documents

to PDV USA.   In May 2024, the government received a second subpoena from PDV USA in the SDNY Civil Action, which it then complied with without objection from the defendants.

PDV USA is continuing to pursue the civil litigation against Interamerican in the SDNY Civil Action, with another deposition of Rivera to be scheduled (DE 231 & 249 in Case No. 20-Civ-3699-JGK).   In addition, there is a scheduling order in place governing those proceedings with deadlines for summary judgment motions and potentially trial based on the motion deadlines set by the Court (SDNY DE 231).   Accordingly, there is nothing in the record of those proceedings to suggest that PDV USA is pursuing the civil case for any reason other than it is seeking to recoup the $15 million that it paid to Interamerican at the direction of the Maduro regime in Venezuela in the spring of 2017.

**B.**      ***SDFL Criminal Case***

As noted, the initial Indictment in this case was returned in November 2022 and a Superseding Indictment was returned in December 2023.   These indictments were the result of a multi-year investigation that resulted in the government obtaining a large amount of electronic and other evidence in support of the criminal charges both before and after PDV USA filed its civil complaint in May 2020 in the SDNY Civil Action.   This evidence includes, but is not limited to, the following:

--October 2017 search warrants to the service providers for an email account belonging to Rivera and an email account belonging to Raul Gorrin (Gorrin) in relation to various Venezuelan matters including the $15 million Interamerican received from PDV USA;

--October 2017 seizure and search of Rivera's iPhone;

--January 2020 search warrants to the service providers for several email accounts belonging to Rivera and for the email accounts of other fact witnesses;

-- 2021 search warrants to the service providers for Rivera's and another individual's email accounts in respect to a separate but somewhat related matter.

The evidence gathered by the above-described means is extensive in itself and resulted in the government making a discovery production to Rivera in October 2024 of approximately 250 GB of data.   In addition to the above, the government obtained a significant amount of financial records and other documents from a variety of sources from 2017 through the return of the Superseding Indictment in support of its investigation.   Those document productions were included in an approximately 40 GB government discovery production provided to the defendants at their arraignments on August 29, 2024 (which included two folders – named "Citgo productions" and "PDV USA v. Interamerican civil lawsuit"—that contained documents produced to the government by PDV USA), as well as in several subsequent productions to the defendants in October and November 2024.[5]

As a result, it is at a minimum fair to say that the government engaged in an extensive investigation of this matter through which it obtained a substantial amount of evidence independent of any materials it obtained from PDV USA and its attorneys during the normal course of its investigation.   Indeed, Rivera does not assert otherwise and cannot do so as a practical matter as his attorneys have now had the government's discovery production for several months and are therefore aware of or at least on notice of the government's significant efforts in conducting its own independent investigation of the defendants' conduct.

---

[5] The folder marked "Citgo productions" consists of several sub-folders organized by date – including the November 25, 2019, meeting between DOJ personnel and PDV USA's attorneys that is referenced in Rivera's motion – of certain documents (such as emails and memoranda) that for the most part relate to the underlying events charged in the indictments.   The second folder marked "PDV USA v. Interamerican civil lawsuit" contains copies (transcripts and videos) of three depositions taken in the SDNY Civil Action including the two-day deposition of Rivera.

To the extent Rivera's motion is primarily concerned with the disclosure of his July 2022 deposition testimony to the government, it is notable that Rivera was on notice that he was under criminal investigation far in advance of his decision to testify under oath in the SDNY Civil Action. For example, in September 2021, the government notified both Rivera and Nuhfer through their respective attorneys that they were targets of the government's investigation, a fact not in dispute and in fact conceded in some of the ongoing civil litigation in the Southern District of Florida, and also initiated grand jury proceedings against Rivera with respect to the Cozen legal memorandum that is the subject of ongoing civil litigation before this Court.[6]

In addition, Rivera was also served by the government in September 2021 with a grand jury subpoena requiring Interamerican to produce documents relating to the matters under investigation.   As a result, Rivera made several subpoena productions to the government on behalf of Interamerican in the fall of 2021, including one production in October 2021 in which he provided the government with what appears to be a detailed summary (prepared presumably by Rivera) of a sentencing proceeding involving a cooperating defendant (a former CITGO employee) that described the defendant's cooperation as having included providing information to the government in its criminal investigation of Rivera's and Gorrin's involvement in the $50 million PDV USA contract.

---

[6] On October 4, 2024, Rivera (as an intervenor) filed a pleading with this Court in the PDV USA subpoena enforcement action against Nuhfer relating to the litigation concerning the Cozen legal memorandum that remains pending before this Court.   See PDV USA v. Esther Nuhfer, et al., 22-Civ-21372-Damian/Louis.   In that filing, Rivera acknowledged that he was informed through counsel (Jeff Feldman, Esq.) on September 9, 2021, of his status as a target of the government's criminal investigation concerning the PDV USA agreement and that on September 23, 2021, the FBI also personally served him by email with a copy of the government's motion filed in the grand jury proceedings involving the Cozen memorandum (DE 117 at p.8, n.7 in Civil Case No. 22-Civ-21372).

Moreover, in some of the civil litigation currently pending before this Court, Rivera has further indicated his concern of being under criminal investigation going as far back as the fall of 2017 and the seizure of his iPhone, which he asserts caused him to retain the services of the Cozen law firm to provide an "analysis of criminal legal exposures underlying the criminal investigation" (DE 117 at 3 in Case No. 22-cv-21372-MD).   In addition, various news articles, published around the time that PDV USA filed the SDNY Civil Action in May 2020, reported that Rivera was under criminal investigation, such that it was essentially public knowledge two years before Rivera was deposed.   See, e.g., Miami Herald, "Rivera Didn't Register as Foreign Agent in $50 Million Contract with Venezuela Oil Firm" (May 15, 2020) (describing Rivera's apparent violations of FARA and noting that the PDV USA-Interamerican agreement had "caught the interest of federal prosecutors and the FBI").[7]

Accordingly, it is no surprise that Rivera fails to allege in his motion that he was somehow misled by the government into believing that he was not under criminal investigation at the time he testified under oath in the SDNY Civil Action.

## <u>Argument</u>

In his motion, Rivera argues that this Court should require the government to produce certain broad categories of communications with PDV USA relating to the SDNY Civil Action based on his suspicion that the government manipulated the proceedings in the SDNY Civil Action to obtain evidence to the detriment of Rivera's interests in the criminal case.   Rivera's motion,

---

[7] Interestingly, the article further states that, in text messages to the Miami Herald, Rivera indicated that the $50 million contract was used to fund Maduro foes with proceeds from the contract (quoting Rivera as stating "All those funds went to the opposition for anti-Maduro protests in the summer of 2017.   I never saw a penny of it.   That's all I know.").   That assertion is patently false and a claim that Rivera has apparently since abandoned as a defense to his conduct.

however, is at the end of the day based on nothing more than his mere speculation that the government must have engaged in some undescribed inappropriate conduct for the purpose of using PDV USA as a stalking horse to surreptitiously gather evidence for use in the criminal case. Because Rivera fails to provide any remotely compelling evidence to support his suspicion of misconduct (and the public filings in the SDNY Civil Action refute his assertions), his motion should be denied.

> **A.      Rivera's Substantive Claim is Insufficient to Justify the Extensive Discovery He is Seeking from the Government**

In support of his motion, Rivera cites a number of cases involving the conduct of parallel criminal and civil proceedings that have been addressed by various courts.   In general, these cases have acknowledged that there is nothing inappropriate per se in the government conducting parallel civil and criminal investigations, and the Supreme Court itself has recognized that the use of parallel proceedings is often necessary to protect the public interest.   See United States v. Kordel, 90 S. Ct. 763, 769 (1970) (holding that the government did not violate the defendants' due process rights by using evidence in its criminal case that it obtained from an FDA civil investigation); United States v. Stringer, 535 F.3d 929, 936 (9th Cir. 2008) (stating that the government may "conduct parallel civil and criminal investigations without violating the due process clause, so long as it does not act in bad faith"); United States v. Avery, 2016 WL 8671970 at *4-5 (N.D. Ga. 2016) (summarizing the state of the law concerning the conduct of parallel investigations).

These cases have generally held that the "determining principle" in deciding whether a defendant's due process rights have been violated is whether the defendant can demonstrate that the use of evidence acquired from a civil case in a criminal proceeding "would violate [the defendant's] constitutional rights or depart from the proper administration of criminal justice."

United States v. Scrushy, 366 F. Supp. 2d 1134, 1138 (N.D. Ala. 2005) (internal quotations and citation omitted).   To make this necessary showing of a departure from the proper administration of justice, a defendant must demonstrate that either "the government made affirmative misrepresentations" during the course of the parallel case or the government "conducted [its] civil investigation solely for the purposes of advancing [the] criminal case."   Stringer, 535 F.3d at 937; Avery, 2016 WL 8671970 at *5 (same).   Although this case differs from the typical context in which these issues sometimes arise in that the civil case here was instituted by a private party rather than a governmental entity with civil enforcement authority, the general principles developed through the relevant case law are assumed to apply here and Rivera indeed relies on those same cases in support of his motion.

Under these standards, Rivera cannot make a viable claim of government misconduct and more significantly for purposes of the present motion he fails to allege in his motion any facts that would be sufficient to satisfy the determining principles as enunciated by the various authorities he cites, even assuming he could obtain the discovery he seeks based on the purported manipulation of a "parallel" proceeding instituted by a private plaintiff.   Rather, he simply asserts that he suspects that the government somehow used PDV USA as a stalking horse to improperly gather evidence against him without identifying any such evidence, or any affirmative misrepresentations made by the government (or even PDV USA's counsel) that caused Rivera to sit for a deposition or produce evidence in the civil case that could be used against him in the criminal case.   Indeed, he fails to do so despite the fact that the government had produced to him on August 29, 2024 as part of the criminal discovery copies of the deposition testimony from the SDNY Civil Action that was produced to the government by PDV USA and the various document productions of predominantly emails, memoranda and other corporate records of CITGO and PDV

USA from the 2017 through 2018 time period relevant to the instant proceedings.

Similarly, Rivera also fails to assert that PDV USA instituted or pursued the SDNY Civil Action solely for the purpose of gathering evidence to provide to the government for use in the criminal case, and he fails to do so for good reason.   It simply would be absurd to make that claim given the extensive record of the proceedings in that case reflecting PDV USA's vigorous efforts to recoup the $15 million it paid to Interamerican in 2017, and to now defend itself against Interamerican's $30 million counterclaim.   Indeed, if anything, the record before this Court wholly refutes the notion that the government has been using PDV USA as a stalking horse to gather evidence through the civil proceedings for its use in the criminal action.   The record in fact shows that the government has been placed in the undesirable position of having to respond to subpoenas issued by PDV USA for copies of portions of the criminal discovery it provided to the defendants on account of Interamerican's/Rivera's continuous efforts to avoid having to produce in the civil proceedings relevant materials that are in their possession as a result of the criminal proceedings.

In the few criminal cases recognizing similar challenges, including those Rivera cites, the courts addressed (or more frequently, contemplated) the government manipulating a parallel civil proceeding—usually involving a civil or administrative proceeding brought by the SEC or another regulator—to obtain deposition testimony or other evidence in furtherance of a prosecution where, at the time that evidence was provided, the defendant was unaware (if not affirmatively misled) as to the risk of criminal prosecution, thereby "depart[ing] from the proper administration of criminal justice."   See Scrushy, 366 F. Supp. at 1137–38 ("Failing to advise Mr. Scrushy or his attorneys about the criminal investigation of which he was a target, and that the deposition had been moved to accommodate the need of the U.S. Attorney's office . . . *and* the change of the deposition's

location for venue purposes" was improper); see also Kordel, 397 U.S. at 12 (noting in dicta, in prosecution that proceeded in parallel with FDA civil enforcement action, certain circumstances in which the government might "depart[] from proper standards in the administration of justice," including "where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution").

Indeed, Rivera cites multiple cases undermining the type of parallel-proceeding challenge he suggests may be warranted (*i.e.*, challenges where the defendant is aware of the risk of prosecution).  See Teyibo, 877 F. Supp. 846, 856 (S.D.N.Y. 1995) (noting that the defendant "received sufficient notice from the SEC that any information [he provided] could be used against him in a subsequent criminal proceeding"); see also Prousalis v. United States, 2007 LEXIS 63025, *42–43 (S.D.N.Y. Aug. 24, 2007) (Mot. at 4 & n.4) (rejecting defendant's claim and distinguishing it from cases "where the U.S. Attorney's Office actively collaborated with SEC investigators regarding the conduct of discovery and hid its involvement to keep the defendant unaware of the parallel criminal investigation").

Accordingly, this Court should deny Rivera's motion to obtain discovery based on nothing more than his suspicion and conclusory allegations that the government may have engaged in misconduct by manipulating the proceedings in the SDNY Civil Action.  Indeed, courts in the Eleventh Circuit and elsewhere have found that similar claims based on unsupported, vague allegations of prosecutorial misconduct as with Rivera's motion are inadequate to obtain discovery or an evidentiary hearing in the hope of buttressing their otherwise unsubstantiated claims.  See Avery, 2016 WL 8671970 at *4-6 (denying request for an evidentiary hearing where the defendant failed to allege "sufficient facts to place in issue the legitimacy of the SEC civil investigation or

that the disclosure of information obtained during that investigation to the USAO violated" the defendants due process rights); <u>United States v. Melvin</u>, 2015 WL 7116737, at *18 (N.D. Ga. May 27, 2015) (denying the defendant's motion to suppress and indicating an evidentiary hearing was unwarranted where the defendant "offered only conclusory allegations, but no evidence, that the SEC investigation and proceeding was a ruse, agreed upon by the SEC and DOJ in collusion to obtain incriminating evidence for use in a subsequent criminal proceeding"); <u>United States v. Johnston</u>, 2015 WL 1809206 at *2-3 (D. Utah 2015) (denying the defendant's request for discovery concerning communications between the prosecution and the FTC civil investigative authorities where the court found too "speculative and conclusory in nature" the defendant's assertions that the civil discovery procedures "appear[ed] designed" to assist in the criminal case and did not relate to the defendant's defense to the government's case in chief as required by Rule 16); <u>United States v. Kowalewski</u>, 2014 WL 6667127 at *17-21 (N.D. Ga. 2014) (denying the defendant's motion for discovery of all communications between the SEC and the U.S. Attorney's Office where the court found the defendant's "conclusory assertions" of improper entanglement between the criminal and civil investigations fell far short of the type of showing of "deceit or an affirmative misrepresentation" that would "warrant the wholesale disclosure of all [such] communications"); <u>United States v. Moses</u>, 219 Fed. App'x 847, 849-50 (11th Cir. 2007) (holding that the district court did not abuse its discretion in denying the request for an evidentiary hearing where the defendant's allegations did not establish a prima facie case of government misconduct concerning the defendant's SEC deposition).

Indeed, this is particularly true where, as here, Rivera has failed to (and cannot) allege any specific facts reflecting that the government and PDV USA somehow misled Rivera regarding the existence of and his status as a target of the criminal investigation or that PDV USA is engaging

in litigation against Interamerican solely for the purpose of generating evidence to be used against Rivera in the criminal proceedings.   Moreover, given the procedural developments in the SDNY Civil Action summarized above (pp. 2-3), it is notable that Rivera (through his company Interamerican) has had an opportunity to take sworn testimony from the party that he alleges was "manipulat[ed]" to pursue what he claims was an improper parallel proceeding; that that party apparently provided fulsome responses to Interamerican's inquiries, which were found by the SDNY Court to show that discussions between PDV USA and DOJ did **not** influence PDV USA's decision to file that action; and that **none of this** was mentioned in either of Rivera's recent motions for discovery before this Court.

### B.   Rule 16(a)(1)(E) Does Not Support the Relief Rivera Seeks

To the extent Rivera's discovery motion demands production of certain categories of documents based on his contention that they are "material to preparing the defense" under Rule 16(a)(1)(E), his claim is without merit.

As the Eleventh Circuit explained in <u>Jordan</u>, disclosure under Rule 16(a)(1)(E) is not required "unless *the defendant* demonstrates that [an item] is material to the preparation of his defense."   316 F.3d at 1250 (emphasis added).   A "conclusory" assertion of materiality is insufficient: rather, "the defendant must show more than that the item bears some abstract logical relationship to the issues in the case.   There must be some indication that the pretrial disclosure of the item would enable the defendant significantly to alter the quantum of proof in his favor." <u>Id.</u> at 1251.

Moreover, "the Supreme Court has explained that the provision now codified in Rule 16(a)(1)(E) only relates to items that could be used as a 'shield' in response to the Government's case in chief, not a 'sword' to challenge the prosecution's conduct in the case."   <u>United States v.</u>

<u>Collins</u>, 2023 WL 5013053, at *2 (N.D. Fla. 2023) (quoting <u>United States v. Armstrong</u>, 517 U.S. 456, 462 (1996)); <u>see also</u> <u>Armstrong</u>, 517 U.S. at 462 (precursor to Rule 16(a)(1)(E) could not be used to compel evidence related to selective prosecution claim because "in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief, [not] challeng[es] [to] the prosecutions' conduct of the case").

Rivera's reliance on Rule 16(a)(1)(E) fails at the onset because the requested discovery concededly does not seek evidence to respond to the government's case in chief, but is instead intended to challenge the prosecution's conduct in connection with a "parallel civil proceeding" (Mot. at 5) in violation of his Fifth Amendment rights—*i.e.*, its purported "impermissibl[e] manage[ment]" (Mot. at 2) of the SDNY Civil Action.   <u>See</u> <u>Armstrong</u>, 517 U.S. at 462.

Even to the extent Rivera seeks the discovery at issue solely for the purpose of moving under the Fifth Amendment to suppress any evidence the government "secured from [the SDNY Civil Action] from being used in *this case*" (Mot. at 2), courts applying <u>Armstrong</u> have rejected discovery demands in analogous contexts.   <u>See, e.g.</u>, <u>United States v. Williams</u>, 2023 WL 2061164, at *3 (M.D. Ga. 2023) ("The Motion to Suppress, for which Defendant seeks to compel the discovery, is a 'sword' defense outside the scope of Rule 16") (citing <u>Armstrong</u>, 517 U.S. at 462); <u>United States v. Hermiz</u>, 2014 WL 3440323, at *4 (E.D. Mich. 2014) (citing <u>Armstrong</u> and agreeing with the government's argument that "[r]ather than explaining how such evidence would show him to be innocent of the charges, the defendant instead focuses on how the evidence would assist him in a pre-trial hearing on a motion to suppress—precisely the type of litigation that is not a 'response to the Government's case in chief,' and therefore outside the purview of Rule 16"); <u>United States v. Hunt</u>, 2013 WL 5279075, at *1–2 (E.D. Cal. Sept. 18, 2023) ("Defendant here seeks the [discovery] to bolster his motion to suppress, which is the kind of 'sword' that does not

entitle him to the discovery he seeks.").

Rivera's discovery motion independently fails for another reason, namely because he cannot satisfy his burden of showing that the requested pretrial disclosures would "enable [him] significantly to alter the quantum of proof in his favor," Jordan, 316 F.3d at 1251, even assuming he can invoke Rule 16 for the purpose of obtaining information he might use to seek dismissal of the indictment or suppression of evidence based on purported violations of his Fifth Amendment rights.   Indeed, Rivera's motion states only that he "has reason to believe" (or "suspects") impropriety by the government relating to the SDNY Civil Action.   That is precisely the sort of "conclusory" assertion that is inadequate to compel production of discovery under Rule 16.   See Jordan, 316 F.3d at 1251.[8]

---

[8] Rivera also argues that the requested information must be produced because it "would be critical to Rivera's ability to expose PDV USA's pro-Government bias" and thereby "call into question the credibility of PDV USA, the executives of which are almost certainly going to testify in this criminal case." Mot. at 2, 6.   This argument is meritless.   Rivera identifies no authority suggesting that bias harbored by a *corporation* may be imputed to employees testifying in an *individual* capacity for the purpose of impeaching their testimony under *Giglio.*   In any event, the government is aware of its obligation to produce *Giglio* material and will produce such information at the appropriate time.   Rivera's request to compel production of *Giglio* material now, before the government has even identified specific PDV USA-affiliated witnesses it may call in its case-in-chief, is premature at best.

## <u>Conclusion</u>

For the foregoing reasons, this Court should deny Rivera's second motion for additional

discovery.

Respectfully submitted,

HAYDEN O'BYRNE
UNITED STATES ATTORNEY


By:      /s/ Harold E. Schimkat
Harold E. Schimkat
Daniel Bernstein
Assistant United States Attorneys
Court ID No. A5500567
Fla. Bar No. 0017973
99 N.E. 4th Street, 4th Floor
Miami, Florida 33128
Office: (305) 961-9298
Cell: (786) 378-4344
Harold.schimkat@usdoj.gov

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on February 10, 2025, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

<u> /s/                                    </u>
Harold E. Schimkat
Assistant United States Attorney