IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cr-20552-DAMIAN/Torres

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAVID RIVERA and ESTHER NUHFER,

    Defendants.
_____/

## DAVID RIVERA AND ESTHER NUHFER'S MOTION TO DISMISS COUNTS 1–8 OF THE SUPERSEDING INDICTMENT

Defendants David Rivera and Esther Nuhfer file this motion to dismiss Counts 1–8 of the Superseding Indictment [ECF No. 122] pursuant to FED. R. CRIM. P. 12(b)(3).[1] Specifically, they move to dismiss Count 1 (Conspiracy to Violate the Foreign Agent Registration Act) and Count 2 (Failure to Register as a Foreign Agent) because the Foreign Agent Registration Act, 22 U.S.C. § 611, *et seq.* ("FARA"), violates the First Amendment for two independent reasons: *First*, FARA is a content-based, prior restraint on speech that does not survive strict scrutiny. *Second*, FARA is unconstitutionally vague. And if Counts 1 and 2 are dismissed on either of these bases, so too must

---

[1] "A motion to dismiss an indictment targeted at the substance of the offense may . . . only be granted if there is a legal infirmity in the indictment." *See United States v. Ferguson*, 142 F. Supp. 2d 1350, 1353 (S.D. Fla. 2000) (citing *United States v. Belcher*, 927 F.2d 1182, 1185 (11th Cir. 1991)). Defendants assert that such an infirmity exists here, as a "motion to dismiss for failure to state an offense" is appropriate when that failure is evident from the "face of the indictment." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006); *see also United States v. Henriquez*, No. 22-cv-20161, 2023 U.S. Dist. LEXIS 98259, at *9 (S.D. Fla. Apr. 24, 2023) ("A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or *constitutional reasons*." (emphasis added)).

#104155278v1

be Count 3 (Conspiracy to Commit Money Laundering) and Counts 4–8 (Engaging in Transactions in Criminally Derived Property) because there would be no predicate criminal conduct to support them.

## BACKGROUND

On November 17, 2022, a federal grand jury sitting in the Southern District of Florida returned an indictment alleging that Defendants had violated FARA—as well as other federal statutes—related to alleged activities undertaken in connection with the country of Venezuela. Over a year later—on December 14, 2023—a federal grand jury returned the operative Superseding Indictment against Rivera and Nuhfer. *See generally* Superseding Indictment. Defendants maintain their innocence as to all Counts, and—for the reasons about to be explained—assert that FARA is both a content-based, prior restraint on speech that fails strict scrutiny, as well as an unconstitutionally vague regulation of speech (either of which would negate Counts 1 and 2, and—by extension—Counts 3–8).

## ARGUMENT

**I.  FARA is a content-based, prior restraint of political speech that fails strict scrutiny.**

*i.  Content-based prior restraints of speech are disfavored, especially such regulations that limit political speech.*

"The First Amendment prohibits laws 'abridging the freedom of speech,'" *Harbourside Place, LLC v. Town of Jupiter*, 958 F.3d 1308, 1316 (11th Cir. 2020) (quoting U.S. Const. amend. I), and "First Amendment standards . . . 'must give the benefit of any doubt to protecting rather than stifling speech,'" *Fed. Election Comm'n. v. Wis. Right to Life*, 551 U.S. 449, 469 (2007). "There can be absolutely no doubt that the First Amendment rights to assemble, petition the government for redress of grievances, and speak are among our most fundamental, deeply

cherished and clearly established constitutional freedoms." *Amnesty Int'l v. Battle*, 559 F.3d 1170, 1186 (11th Cir. 2009) (Marcus, J., concurring).

"[C]ontent-based laws which 'target speech based on its communicative content' are 'presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Wis. Right to Life*, 551 U.S. at 469 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 162 (2015)). "Government regulation of speech is content-based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* (quoting *Reed*, 576 U.S. at 163). "[I]t is well established that the First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *City of Austin v. Reagan Nat'l Advert. Of Austin, LLC*, 596 U.S. 61, 70 (2022).

Particularly disfavored are prior restraints. "A prior restraint is simply a regulatory mechanism that can be used to deny a speaker permission to speak before the speech occurs." *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1226 n.11 (11th Cir. 2017). A prior restraint can also be a regulation that requires a speaker to register with a government entity before being allowed to speak. *See, e.g.*, *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 335 (2010) ("[G]iven the complexity of [particular] regulations and the deference courts show to administrative determinations, a speaker who wants to avoid threats of criminal liability and the heavy costs of defending against [government] enforcement must ask a governmental agency for prior permission to speak. . . . These onerous restrictions thus function as the equivalent of prior restraint by giving the [government] power analogous to licensing laws implemented in 16th- and 17th-century England, laws and governmental practices that are of the sort that the First Amendment was drawn to prohibit."); *Thomas v. Collins*, 323 U.S. 516, 540 (1945) ("We think a

3

requirement that one must register before he undertakes to make a public speech to enlist support for a lawful movement is quite incompatible with the requirements of the First Amendment."); *Connor v. Palm Beach Cnty., Fla.*, No. 95-cv-08628, 1996 WL 438779, at *11 (S.D. Fla. May 29, 1996) ("The requirement of giving advance notice to the government of one's intent to speak inherently inhibits free speech."); *Broward Coalition of Condos., Homeowners Ass'ns, & Cmty. Orgs., Inc. v. Browning*, No. 08-cv-00445, 2008 U.S. Dist. LEXIS 91591, at *14 (N.D. Fla. Oct. 29, 2008) (finding that a regulation requiring electioneering communication organizations to "register with the state before they may legally mention the name of a candidate or ballot measure in their public communications" constituted a "content-based prior restraint"). Indeed, "[p]rior restraints on speech and publication are the *most* serious and the *least* tolerable infringement on First Amendment rights." *Tory v. Cochran*, 544 U.S. 734, 738 (2005) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976) (emphasis added)).

Of the various categories of speech protected by the First Amendment, perhaps none are more closely guarded than political speech. As the Supreme Court has noted, "[w]hatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966); *see also Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) ("Speech on matters of public concern is at the heart of the First Amendment's protection." (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–59 (1985) (opinion of Powell, J.))). Restrictions on political speech are properly considered "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). To that end, "[t]he freedom of speech . . . guaranteed by the Constitution

4

embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment." *Wis. Right to Life*, 551 U.S. at 469 (quoting *First Nat'l Bank of Boston v. Belloti*, 435 U.S. 765, 776 (1978)). "The First Amendment," therefore, "does not permit laws that force speakers to retain a[n] . . . attorney . . . or seek declaratory rulings before discussing the most salient political issues of our day." *Citizens United*, 558 U.S. at 324.

      ii.      *FARA is a content-based, prior restraint on political speech.*

FARA is a content-based "regulation of speech" because it "draws distinctions based on the message a speaker conveys." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 618 (2020) (quoting *Reed*, 576 U.S. at 163). In other words, FARA "singles out specific subject matter for differential treatment." *Id.* at 619 (quoting *Reed*, 576 U.S. at 169). Specifically, the FARA provision that the government accuses Rivera and Nuhfer of violating—22 U.S.C. § 612(a)—imposes reporting requirements on some—but not all—individuals who "act as an agent of a foreign principal." 22 U.S.C. § 612(a). Engaging within the United States in political lobbying triggers the registration requirement but engaging "in private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal" or "activities in furtherance of bona fide religious, scholastic, academic, or scientific pursuits or the fine arts"—for example—do not. 22 U.S.C. § 613(d)–(e). That engaging in any political speech—regardless of viewpoint—triggers FARA's reporting requirement does not mean that FARA is content-neutral; after all, "a law banning the use of sound trucks for political speech—and only political speech—would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Am. Ass'n of Political Consultants*, 591 U.S. at 619 (quoting *Reed*, 576 U.S. at 169). Accordingly, "'[a]s a general matter,' a content-based regulation [like

5

FARA] is 'presumptively unconstitutional and may be justified only if the government proves that it is narrowly tailored to serve compelling state interests.'" *Vidal v. Elster*, 602 U.S. 286, 293 (2024) (quoting *Nat'l Inst. of Fam. and Life Advoc. v. Becerra*, 585 U.S. 755, 766 (2018)).

Adding to FARA's disfavored status as a content-based speech regulation is the fact that it is also a prior restraint. *See CBS v. Davis*, 510 U.S. 1315, 1317 (1994) ("[A]ny prior restraint on expression comes to this Court with a heavy presumption against its constitutional validity." (quoting *Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971)). FARA is a prior restraint because it only allows an individual to "engage[ ] within the United States in political activities for or in the interests of [a] foreign principal," 22 U.S.C. § 611(c)(1)(i), *after* that individual has "filed with the Attorney General a true and complete registration statement," 22 U.S.C. § 612(a). *See McGlone v. Bell*, 681 F.3d 718, 733–34 (6th Cir. 2012) ("The simple knowledge that one must inform the government of his desire to speak and must fill out appropriate forms and comply with the applicable regulations discourages citizens from speaking freely." (quoting *NAACP v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984))); *Am. Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000) (finding that a law that barred a professional solicitation consultant from assisting with a solicitation before complying with registration requirements "definitionally qualifies as a prior restraint"). Accordingly, FARA—as "[a] prior restraint of speech and publication"—"is 'the most serious and least tolerable [kind of] infringement on First Amendment rights' and is 'one of the most extraordinary [kinds of] remedies know[n] to our jurisprudence." *SEC v. Lauer*, No. 03-cv-80612, 2004 U.S. Dist. LEXIS 25538, at *4 n.1 (S.D. Fla. Nov. 18, 2004) (quoting *Neb. Press*, 427 U.S. at 560–63).

Lastly, FARA restricts "political speech," which is "central to the meaning and purpose of the First Amendment." *Citizens United*, 558 U.S. at 329; *see also Carter v. City of Melbourne*, 731

6

F.3d 1161, 1169 (11th Cir. 2013) ("[P]olitical speech 'is the essence of self-government,' 'occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection.'" (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983))). Courts have found that lobbying constitutes political speech. *See, e.g.*, *id.* at 1169 (finding "lobbying of City Council members" to be "political speech"); *Mobile Republican Assembly v. United States*, 353 F.3d 1357, 1361 (11th Cir. 2003) (equating "lobbying" and "political speech"); *Miller v. Ziegler*, 109 F.4th 1045, 1049 (8th Cir. 2024) (finding that a "lobbying ban burden[ed] political speech"). "[P]olitical speech" like the lobbying that is regulated by FARA, then, "must prevail against laws that would suppress it[.]" *Citizens United*, 558 U.S. at 340.

Some courts, however, have managed to duck First Amendment challenges to FARA by concluding that FARA does not regulate speech at all but instead simply requires registration. *See Meese v. Keene*, 481 U.S. 465, 478, 480 (1987) (finding that—with respect to the phrase "political propaganda"—FARA "itself neither prohibits nor censors the dissemination of advocacy materials by agents of foreign principals," as "Congress did not prohibit, edit, or restrain the distribution of advocacy materials")[2]; *United States v. Peace Info. Ctr.*, 97 F. Supp. 255, 262 (D.D.C. 1951) ("[FARA] does not regulate expression of ideas. Nor does it preclude the making of any utterances. It merely requires persons carrying on certain activities to identify themselves by filing a registration statement."); *United States v. McGoff*, 831 F.2d 1071, 1075 (D.C. Cir. 1987) ("[FARA] criminalizes the willful failure to comply with the information production requirements."); *Att'y*

---

[2] To the extent that *Meese* would seem to conflict with *Reed, supra.* at 3, Defendants contend that the latter controls inasmuch as the Supreme Court in *Meese* specifically noted that *Meese* did *not* involve a challenge to FARA's pre-speech registration requirement but instead only concerned a single phrase in the statute. *See Meese*, 481 U.S. at 467. *Reed*, on the other hand, held that "content-based laws"—which, according to the cases Defendants have cited herein, include pre-speech registration requirements—"are presumptively unconstitutional." *Reed*, 576 U.S. at 163.

#104155278v1

*Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 931 (D.C. Cir. 1982) ("[FARA] requires that, with certain exceptions, anyone acting as an agent of a foreign principal register with and make certain disclosures to the Attorney General." (emphasis added)); *United States v. Michel*, No. 19-cr-00148, 2022 U.S. Dist. LEXIS 165191, at *14 (D.D.C. Sept. 13, 2022) ("[S]trictly speaking, FARA . . . do[es] not penalize *speech*, but rather the lack of registration . . . . [T]he *actus reus* here is failure to notify the Attorney General[.]"). For the reasons already articulated, however, Defendants assert that these courts simply reached incorrect, overly technical interpretations of FARA. It appears that these courts were motivated less by a fidelity to the statutory text and more by a desire to avoid tackling the bigger and more troubling First Amendment questions. The decisions of these courts, after all, simply do not square with the many cases previously cited in this Motion holding that registration requirements are a precondition to speech, and that a precondition to speech is a prior restraint.

To the extent, however, that this Court is convinced by those cases that found that FARA simply requires registration and does not regulate speech, Defendants have also filed a Motion— *in the Alternative*—to Dismiss Counts 3–8 of the Superseding Indictment [ECF No. 284]. The thesis of that alternative motion is that if this Court finds that FARA simply requires registration but does not actually regulate speech, Defendants cannot be charged with money laundering because their alleged failure to register did not generate any proceeds.

      *iii.*    *FARA fails strict scrutiny.*

FARA is subject to a strict-scrutiny analysis for two independent reasons: *First*, it is a content-based speech restriction. *See Reed*, 576 U.S. at 165 ("A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained.'" (quoting *Cincinnati v. Discovery*

8

*Network, Inc.*, 507 U.S. 410, 429 (1993))). *Second*, it is a prior restraint. *See Harbourside Place*, 958 F.3d at 1322 ("Prior restraints are presumably unconstitutional and face strict scrutiny." (quoting *Burk*, 365 F.3d at 1251)). To survive strict scrutiny, the government must "prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171 (quoting *Ariz. Free Enter. Club's Freedom PAC v. Bennett*, 564 U.S. 721, 734 (2011)). This is a "demanding inquiry." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 441 (2015). To be narrowly tailored, a regulation must be the "least restrictive means" to "further a compelling [government] interest." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 566 (2022). And a "compelling government interest is one that advances 'interests of the highest order.'" *Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 83 F.4th 922, 931 (11th Cir. 2023) (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)). FARA fails to even come close to clearing the second of these two hurdles.

FARA fails strict scrutiny because forcing individuals to disclose that they are lobbying on behalf of foreign principals does not further a compelling government interest. This interest is ostensibly the government's interest in "the conduct of its foreign affairs," *Att'y Gen. of U.S. v. Irish People, Inc.*, 595 F. Supp. 114, 121 (D.C. Cir. 1984), or—more specifically—"preventing foreign influence over the U.S. government," *Bluman v. Fed. Election Comm'n*, 800 F. Supp. 2d 281, 290 (D.D.C. 2011), *summary aff'd*, 565 U.S. 1104 (2012). The connection between that purported interest and FARA, however, is tenuous at best, especially in today's globally integrated and technologically advanced society. Given the constant interactions and communications on political matters between U.S. government stakeholders and broadly defined foreign principals— with middlemen and women like Rivera and Nuhfer acting as go-betweens—requiring those middlemen and women to file reports with the Attorney General is an archaic measure of negligible

9

value. Indeed, the government itself conceded as much in Attorney General Bondi's February 5, 2025, memorandum entitled "General Policy Regarding Charging, Plea Negotiations, and Sentencing," in which she wrote: "*Recourse to criminal charges under [FARA] and 18 U.S.C. § 951 shall be limited to instances of alleged conduct similar to more traditional espionage by foreign government actors.*" Bondi Memo. at 4. This is a crucial admission by the government that establishes that FARA registration cannot and does not meet the "strict scrutiny" standard because—absent espionage, which is not alleged here—FARA registration serves no government interest, let alone a compelling one.

The only purpose FARA seems to serve anymore is as a tool (or some might say as a weapon) for the political establishment in power at any given moment to target political enemies. After all, it is an open secret that countless people involved in the upper echelons of government, policy, and business serve (formally or informally and knowingly or unknowingly) as "agent[s] of a foreign principal," 22 U.S.C. § 611(c), without registering under FARA. Accordingly, FARA has become a broken-taillight law; it is constantly violated but rarely enforced. And when it is enforced, it tends to be because the government is using it as a pretext to target individuals who have—for whatever reason—fallen into disfavor with the political establishment *du jour*.[3] While using criminal laws for pretextual purposes may be defensible in some contexts, this is not one of them. The government, after all, cannot play with a defendant's First Amendment rights simply

---

[3] In this case, as the Superseding Indictment states, Rivera is a former Republican Congressman who, at material times, "established a Political Action Committee," was "a candidate for State Representative," and was "treasurer for his campaign." Superseding Indictment ¶¶ 2–6. Nuhfer "was a professional lobbyist and public relations and advertising consultant" for conservative clients. *Id.* ¶ 6. They were first indicted by Democratic President Biden's Department of Justice in December of 2022 after a prominent Democratic senator, Robert Menendez, had—in 2020 and again in 2022—publicly urged their investigation and prosecution. The politics of this case, then, are not lost on Defendants.

10

because it would like to settle a political score. Therefore, because FARA is a content-based, prior restraint of speech, and because the government has admitted that FARA does not serve a compelling government interest, Counts 1 and 2 (and Counts 3–8 by extension) should be dismissed.

## II. FARA is also unconstitutionally vague.

### i. The Void-for-Vagueness Doctrine Generally

Criminal prohibitions must be reasonably precise, but FARA is not. Specifically, the language used in the FARA "Private and Nonpolitical Activities" exemption (22 U.S.C. § 613(d)) and its implementing regulations (28 C.F.R. § 5.304) is unconstitutionally vague. As the U.S. Supreme Court stated in *Grayned v. City of Rockford*,

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "steer far wider of the unlawful zone . . . than if the boundaries of the forbidden areas were clearly marked."

408 U.S. 104, 108–09 (1972) (first quoting *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964), then quoting *Cramp v. Bd. of Pub. Instruction*, 368 U.S. 278, 287 (1961), then quoting *Baggett*, 377 U.S. at 372); *see also Hill v. Colorado*, 530 U.S. 703, 732 (2000) ("A law "can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary

11

intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."). In other words, "[b]ecause we so highly value liberty, restrictions on our liberty must be spelled out with sufficient clarity to put citizens on notice of what conduct is prohibited and with enough definiteness to limit arbitrary law enforcement." *United States v. Acheson*, 195 F.3d 645, 652 (11th Cir. 1999) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983))). "Void for vagueness 'means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed.'" *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32–33 (1963)).

The void-for-vagueness doctrine implicates a defendant's right to due process under the Fifth Amendment. A "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Fed. Commc'n Comm'n v. Fox Television Station*, 567 U.S. 239, 253 (2012) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)); *see also Dunn v. United States*, 442 U.S. 100, 112 (1979) ("[F]undamental principles of due process . . . mandate that no individual be forced to speculate, at risk of indictment, whether his conduct is prohibited.").

And criminal statutes that also encroach on First Amendment rights must be particularly explicit. According to the U.S. Supreme Court,

> [S]tandards of permissible statutory vagueness are strict in the area of free expression. . . . The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application . . . . The threat of sanctions may deter

12

> their exercise almost as potently as the actual application of sanctions.

*Nat'l Ass'n for the Advancement of Colored People v. Button*, 371 U.S. 415, 432–33 (1963); s*ee also Acheson*, 195 F.3d at 652 ("Where the challenged provision 'abut[s] upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of [those] freedoms' and understandably generates cause for concern." ((quoting *Grayned*, 408 U.S. at 109)). "The First Amendment," after all, "does not permit laws that force speakers to retain a[n] . . . attorney. . . or seek declaratory rulings before discussing the most salient political issues of our day." *Citizens United*, 558 U.S. at 324. Accordingly, the First Amendment context is the only context in which a defendant may assert *both* as-applied *and* facial void-for-vagueness challenges. *See United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) ("If a vagueness challenge to a statute does not involve the First Amendment, the analysis must be applied to the facts of the case."); *Gray TV, Inc. v. FCC*, 130 F.4th 1201, 1217 (11th Cir. 2025) ("[N]onspeech vagueness challenges are only cognizable as applied." (quoting *United States v. Esquenazi*, 752 F.3d 912, 929 (11th Cir. 2014))).

"To succeed [on a facial vagueness challenge] the complainant must demonstrate that the law is impermissibly vague in all of its applications." *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337, 1350 (11th Cir. 2024) (quoting *Vill. of Hoffman Estates, Inc. v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)). In other words, a party "who engages in some conduct that is clearly proscribed cannot complain"—when asserting a facial challenge—"of the vagueness of the law as applied to the conduct of others." *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010)). An as-applied void-for-vagueness challenge, on the other hand, is an assertion that a statute is impermissibly vague "as applied to the facts of the case." *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010). Here, Rivera and Nuhfer bring a facial challenge on the basis that the language used in FARA's "Private

and Nonpolitical Activities" exemption—and its implementing regulation—are facially vague in violation of the Constitution. They assert such a challenge because—at trial—a fair reading of this amorphous exemption should encompass the activities they took related to the country of Venezuela.

> ii. *The FARA "Private and Nonpolitical Activities" exemption and its implementing regulation are impermissibly facially vague.*

Under the "Private and Nonpolitical Activities" exemption to FARA, the FARA registration requirements in 22 U.S.C. § 612(a) "shall not apply" to "[a]ny person engaging or agreeing to engage only (1) in private and nonpolitical activities in furtherance of the bona fide trade or commerce of such foreign principal; or (2) in other activities not serving **predominantly** a foreign interest[.]" 22 U.S.C. § 613(d).  And under the corresponding implementing regulations, "activities of an agent of a foreign principal . . . in furtherance of the bona fide trade or commerce of such foreign principal, shall be considered 'private,' even though the foreign principal is owned or controlled by a foreign government, so long as the activities do not **directly** promote the **public or political interests** of the foreign government." 28 C.F.R. § 5.304(b) (emphases added). This bolded, underlined language is impermissibly vague.

Ballentine's Law Dictionary defines "predominant" as "[g]reater or superior in power and influence." *Predominant*, Ballentine's Law Dictionary (3d ed. 1969). Accordingly, "a predominant motive, when several motives may have operated, is one of greater force and effect, in producing the given result, than any other motive." *Id.* "Predominant," then, is a relative term used to describe one particular item out of several that has the greatest comparative value. Trying to identify, separate, and quantify the myriad "interests" that could be motivating someone engaging in "activities" that are at least tangentially related to a "foreign principal" is fool's errand. How is an individual (or future factfinder) possibly able to know all the "interests" underlying his activities

14

that the government may one day allege violated FARA? And of those myriad and amorphous "interests," how is that same individual able to know which one is "predominant?" Subpart (2) of 22 U.S.C. § 613(d) is therefore a quintessentially vague statute.

And as for "directly," Ballentine's Law Dictionary defines the term as "[i]n a direct manner; in a straight line or course; without curving, swerving, or deviation." *Directly*, Ballentine's Law Dictionary. And it defines the adjective "direct" as "[i]mmediate or proximate as distinguished from remote." *Direct*, Ballentine's Law Dictionary. "Directly," then, is—at best—another relative term and—at worst—an egregiously imprecise one. *Compare Edwards v. McElliots Trucking, LLC*, 268 F. Supp. 867, 875 (S.D. W.Va. 2017) (noting that whether an employee's "act" is a "natural, *direct*, or logical result of [his employment]" is a "relative term"), *with Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002) (noting that "the adjective 'direct' is imprecise") and *Crable v. Premier Baths, Inc.*, No. 16-cv-01825, 2017 U.S. Dist. LEXIS 223682, at *3 (M.D. Fla. Feb. 1, 2017) (finding that a definition of "employer" as "any person acting *directly* or indirectly in the interest of an employer in relation to an employee" is "imprecise").

Most confusing, however, is the phrase "*public or political interests* of the foreign government." 28 C.F.R. § 5.304(b) (emphasis added). What exactly does this mean? After all, it does not seem that a "foreign government" could have "interests" that were *not* "public or political." And any foreign commercial transaction of a certain magnitude will always have some impact on the relevant foreign government's "public or political interests."

A growing number of legal scholars have recently made the case that FARA is impermissibly vague. *See, e.g.*, Robert Kelner, *et al.*, *The Foreign Agents Registration Act ("FARA"): A Guide for the Perplexed*, THE NAT'L LAW REV. (Jan. 11, 2018) (referring to FARA as "famously vague"); David Keating, *Comments to the Department of Justice on Clarification*

15

*and Modernization of Foreign Agents Registration Act Regulations*, THE INSTITUTE FOR FREE SPEECH (Feb. 11, 2022) ("By its plain terms, FARA is an exceptionally broad and vague law that chills free speech and free association by American citizens and sets snares for the unwary[.]"); David Keating, *Comments to the Department of Justice on FARA Regulations*, THE INSTITUTE FOR FREE SPEECH (Mar. 4, 2025) ("[T]he current proposed [DOJ] rulemaking admits that FARA employs broad terms and language that require clarification."); Gabe Rottman, *The Foreign Agents Registration Act's lurking threat to a free press*, REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS (Mar. 24, 2025) ("[FARA] is a poster child of expansive and vague legislative drafting."). Indeed—just in the context of FARA's commercial exemption—there are over *fifty* Advisory Opinions on the DOJ website that try to make sense of 22 U.S.C. § 613(d)(1) and 28 C.F.R. § 5.304. *See* U.S. Department of Justice – Foreign Agents Registration Act Home – Advisory Opinions, https://www.justice.gov/nsd-fara/advisory-opinions. Such an expansive library of interpretations would not be necessary if FARA spoke for itself.

Despite the abundance of academic literature lamenting the vagueness of FARA, Defendants are only aware of only two vagueness challenges brought by actual criminal defendants, which is unsurprising given the paucity of FARA prosecutions. In *Peace Information Center*, the District of the District of Columbia—nearly 75 years ago—rejected the argument that FARA "is violative of the due process clause of the Fifth Amendment, in that it is too indefinite and does not formulate an ascertainable standard of guilt." 97 F. Supp. at 261. According to that court, FARA was "sufficiently precise. It requires the filing of a registration statement. Obviously this provision is definite. The persons who are required to register are agents of foreign principals. A foreign principal is defined. An agent of a foreign principal is likewise defined. True, there may be borderline cases in which a person may have some doubt whether he is within the terms of the

Act. This circumstance is not sufficient, however, to vitiate the law." *Id.* at 263–64. Accordingly, the court concluded that "the statute is valid and not subject to any constitutional infirmity." *Id.* at 264. *Peace Information Center*, however, has no bearing on the present Motion because Defendants are challenging the vagueness of the "Private and Nonpolitical Activities" exemption language in 22 U.S.C. § 613(d) and the corresponding implementing regulations in 28 C.F.R. § 5.304(b), which were not at issue in that decision.

More recently, a defendant brought a similar challenge, and—as a threshold matter—the court noted that "it appears no defendant has ever challenged FARA's registration requirement on vagueness grounds." *Michel*, 2022 U.S. Dist. LEXIS 165191, at *15. While the defendant in *Michel* was unsuccessful, the court's decision has little bearing here. *First*, an unpublished District of the District of Columbia decision has no precedential effect on this Court. *Second*, the court in *Michel* was "at a loss in determining exactly what provision of FARA Defendant thinks vague" because "Defendant's briefing does not actually identify any particular statutory text[.]" *Id.* In short, then, there is no caselaw (binding or otherwise) that has analyzed the exact issue raised herein; namely, that the FARA "Private and Nonpolitical Activities" exemption and its implementing regulation are unconstitutionally vague.

      iii.    *At the very least, this Honorable Court should find FARA sufficiently ambiguous such that the rule of lenity applies.*

Even if this Court were to find that the FARA "Private and Nonpolitical Activities" exemption and its implementing regulation are not so vague as to violate the Fifth Amendment Due Process Clause or the First Amendment, the Court must still find that those provisions are sufficiently ambiguous such that the rule of lenity applies. And if the rule of lenity applies, such ambiguity must be resolved in Defendants' favor in that the "Private and Nonpolitical Activities" exception must apply to their alleged activities. *See United States v. Dawson*, 64 F.4th 1227, 1239

17

(11th Cir. 2023) (noting that the rule of lenity "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." (quoting *United States v. Santos*, 553 U.S. 507, 514, (2008))); *United States v. Garcon*, 54 F.4th 1274, 1285 (11th Cir. 2022) ("The rule of lenity is a canon of statutory construction that requires courts to construe ambiguous criminal statutes narrowly in favor of the accused." (quoting *United States v. Wright*, 607 F.3d 708, 716 (11th Cir. 2010) (Pryor, J., concurring))).

* * *

In conclusion, Counts 1 and 2 must be dismissed for two independent reasons: *First*, FARA is a content-based prior restraint of political speech that fails strict scrutiny because—as the Attorney General recently stated—it serves no government interest, let alone a compelling one. *Second*, FARA is as an unconstitutionally vague regulation of speech that runs afoul of both the Fifth Amendment Due Process Clause and the First Amendment. And because Counts 1 and 2 must be dismissed, so too must Counts 3–8 since those money laundering allegations would no longer be supported by any independent criminal charges. Accordingly, Rivera and Nuhfer respectfully ask that Counts 1–8 of the Superseding Indictment [ECF No. 122] be dismissed pursuant to FED. R. CRIM. P. 12(b)(3).

Dated: July 24, 2025

    Miami, Florida

    Respectfully submitted,

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (305) 679-5700
By:   */s/ Edward R. Shohat*
     **Edward R. Shohat**
     Florida Bar No. 52634
     eshohat@joneswalker.com

        **David S. Weinstein**
        Florida Bar No. 749214
        dweinstein@joneswalker.com
        **Thomas P. Bardenwerper**
        Florida Bar No. 1044458
        tbardenwerper@joneswalker.com

**MARKUS/MOSS PLLC**
40 NW Third Street, PH #1
Miami, FL 33128
Tel: (305) 379-6667
By:   */s/ David Oscar Markus*
        **David Oscar Markus**
        Florida Bar No. 119318
        dmarkus@markuslaw.com
        **A. Margot Moss**
        Florida Bar No. 91870
        mmoss@markuslaw.com