IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cr-20552-DAMIAN/Torres

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAVID RIVERA and ESTHER NUHFER,

    Defendants.
_____/

## DAVID RIVERA AND ESTHER NUHFER'S MOTION—*IN THE ALTERNATIVE*—TO DISMISS COUNTS 3–8 OF THE SUPERSEDING INDICTMENT

Defendants David Rivera and Esther Nuhfer file this motion to dismiss Counts 3–8 of the Superseding Indictment [ECF No. 122] pursuant to FED. R. CRIM. P. 12(b)(3). Rivera and Nuhfer move to dismiss Counts 3–8 because the alleged failure to register under the Foreign Agents Registration Act ("FARA") did not generate any "property"—"criminally derived" or otherwise—to support an 18 U.S.C. § 1957(a) prosecution.[1]

### INTRODUCTION

Counts 3 through 8 must be dismissed because Defendants' alleged failure to register under FARA did not generate criminal proceeds. Money laundering under 18 U.S.C. § 1957 requires that

---

[1] This motion need only be considered if Defendants' concurrently filed Motion to Dismiss Counts 1–8 of the Superseding Indictment [ECF No. 283] (the "First Amendment MTD") is denied. The First Amendment Motion explains that FARA violates the First Amendment for two independent reasons, either of which negates the FARA counts (Counts 1 and 2) and—by extension—the money laundering counts (Counts 3–8). After all, if there are no FARA charges against Rivera and Nuhfer, there can be no money laundering charges against them either.

the defendant engage in a monetary transaction involving property derived from specified unlawful activity. But the mere failure to register, as alleged here, did not produce any property at all.

Should this Court have found—in adjudicating Defendants' concurrently filed Motion to Dismiss Counts 1–8 of the Superseding Indictment (the "First Amendment MTD") [ECF No. 283]— that FARA does not regulate speech but simply requires a disclosure requirement, Defendants' alleged violation of FARA could not and did not give rise to "criminally derived property" within the meaning of § 1957. Rivera and Nuhfer, after all, were not allegedly paid *not to register*; they were allegedly paid to engage in advocacy on behalf of a foreign principal. That alleged conduct, while subject to disclosure under FARA, is not itself unlawful, and the government's attempt to convert a paperwork omission into a predicate for money laundering fails. Because the alleged FARA violation did not result in any unlawful proceeds, Counts 3–8 of the Superseding Indictment do not state a valid offense under § 1957 and must be dismissed.

## BACKGROUND

On November 17, 2022, a federal grand jury sitting in the Southern District of Florida returned an indictment alleging that Rivera and Nuhfer had violated FARA—as well as other federal statutes—in relation to activities undertaken in connection with the country of Venezuela. Over a year later—on December 14, 2023—a federal grand jury returned the operative Superseding Indictment against them. As relevant to this Motion, the government has charged Defendants with:

- Conspiracy to Commit Offense against the United States in violation of 18 U.S.C. § 371 (Count 1);

- Failure to Register as a Foreign Agent in violation of 22 U.S.C. §§ 612(a) and 618(a)(1) (Count 2);

- Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) (Count 3); and

2

- Engaging in Transactions in Criminally Derived Property in violation of 18 U.S.C. § 1957 (Counts 4–8).

*See generally* Superseding Indictment.[2] Defendants maintain their innocence as to all Counts, and—for the reasons about to be explained—assert that because FARA merely requires registration, Counts 3–8 fail. In other words, the alleged failure *to register* as a foreign agent generated no proceeds—legal or illegal. And without any proceeds, Rivera and Nuhfer cannot have engaged in money laundering.

[SPACE INTENTIONALLY LEFT BLANK]

---

[2] Specifically—as to FARA—the government alleges that Rivera and Nuhfer conspired to violate (Count 1) and violated (Count 2) FARA sections 612(a) and 618(a)(1). Section 612(a) states as follows:

> No person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement . . . or unless he is exempt from registration under the provisions of this subchapter. Except as hereinafter provided, every person who becomes an agent of a foreign principal shall, within ten days thereafter, file with the Attorney General, in duplicate, a registration statement, under oath on a form prescribed by the Attorney General. The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal.

22 U.S.C. § 612(a). And § 618(a)(1) provides the enforcement mechanisms to be employed against "any person who willfully violates any provision of this subchapter or any regulation thereunder." 22 U.S.C. § 618(a)(1).

3

**ARGUMENT**

I. **Some courts have found that FARA does not regulate speech *at all* but instead simply requires registration.**

Some courts that have previously confronted First Amendment challenges to FARA (like the one raised in Rivera's First Amendment MTD) have avoided delving into a strict scrutiny analysis by concluding that FARA does not regulate speech at all but instead simply requires registration. The Supreme Court in *Meese v. Keene*, for example, found that FARA "itself neither prohibits nor censors the dissemination of advocacy materials by agents of foreign principals," as "Congress did not prohibit, edit, or restrain the distribution of advocacy materials[.]" 481 U.S. 465, 478, 480 (1987). Likewise in *United States v. Peace Information Center*, the district court concluded that FARA "does not regulate expression of ideas. Nor does it preclude the making of any utterances. It merely requires persons carrying on certain activities to identify themselves by filing a registration statement." 97 F. Supp. 255, 262 (D.D.C. 1951); *see also United States v. McGoff*, 831 F.2d 1071, 1075 (D.C. Cir. 1987) ("[FARA] criminalizes the willful *failure to comply with the information production requirements*." (emphasis added)); *Att'y Gen. of U.S. v. Irish People, Inc.*, 684 F.2d 928, 931 (D.C. Cir. 1982) ("[FARA] requires that, with certain exceptions, anyone acting as an agent of a foreign principal *register with and make certain disclosures to* the Attorney General." (emphasis added)). "Strictly speaking," noted a district court more recently, FARA "do[es] not penalize *speech*, but rather the lack of registration[.]" *United States v. Michel*, No. 19-cr-00148, 2022 U.S. Dist. LEXIS 165191, at *14 (D.D.C. Sept. 13, 2022) (emphasis in original). "[T]he *actus reus*," therefore, "is failure to notify the Attorney General before undertaking" a lobbying campaign." *Id.* Under these interpretations, FARA merely requires registration and does not outlaw agency.

#104096155v1

## II. Counts 3–8 must be dismissed because Defendants' alleged failure to register did not generate any property that could have been used to commit money laundering.

Counts 3–8 of the Superseding Indictment are grounded in alleged violations of 18 U.S.C. § 1957, which prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). "The essential elements of a § 1957 violation," then, "are that (1) the defendant engage or attempt to engage (2) in a monetary transaction (3) in *criminally derived property* that is of a value greater than $10,000 (4) knowing that the property is derived from unlawful activity, and (5) the property is, in fact, derived from 'specified unlawful activity.'" *United States v. Johnson*, 971 F.2d 562, 567 n.3 (10th Cir. 1992) (quoting *United States v. Lovett*, 964 F.2d 1029 (10th Cir. 1992) (emphasis added)). Criminally derived property is "any property constituting, or derived from, proceeds obtained from a criminal offense." 18 U.S.C. § 1957(f)(2). The problem for the government is that Defendants' alleged FARA violations—namely, failing to register—did not generate "proceeds" and thus did not generate "criminally derived property."

According to the government in Count 3, Rivera and Nuhfer

> did knowingly and voluntarily combine, conspire, confederate, and agree with each other, to knowingly engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in *criminally derived property* of a value greater than $10,000, *such property having been derived from a specified unlawful activity*, and knowing that the property involved in the financial transaction represented the *proceeds of some form of unlawful activity*, in violation of Title 18, United States Code, Section 1957.

Superseding Indictment at 28–29 (emphases added). That "specified unlawful activity was [allegedly] willfully acting and causing others to act in the United States as an agent of a foreign

5

principal, to wit, the Government of Venezuela, without registering with the Attorney General as required by [FARA]." *Id.* at 29. And in Counts 4–8, the government alleges that Defendants

> did knowingly engage in, and attempt to engage in, monetary transactions in and affecting interstate and foreign commerce, by, through, and to a financial institution, in *criminally derived property* of a value greater than $10,000, *such property having been derived from a specified unlawful activity*, and knowing that the property involved in the financial transaction represented the *proceeds of some form of unlawful activity*[.]

*Id.* at 29–30 (emphases added). And again, that "specified activity was [allegedly] willfully acting and causing others to act in the United States as an agent of a foreign principal, to wit, the Government of Venezuela, without registering with the Attorney General as required by [FARA]." *Id.* at 30–31.

It is axiomatic, then, that for Rivera and Nuhfer to have "engag[ed] in monetary transactions in property derived from specified unlawful activity," 18 U.S.C. § 1957, they needed to have actually illegally obtained property. *See Johnson*, 971 F.2d at 569–70 (reversing a defendant's § 1957 conviction because the "transfers alleged . . . were not transactions in criminally derived property"). But Defendants' alleged violations of FARA did not generate property because they were not allegedly paid *to not register*, they were allegedly paid *to lobby*. *See generally* Superseding Indictment.

The defendant in *United States v. Manafort*—case number 17-cr-00201-01 in the District of the District of Columbia—made this same argument; namely, that FARA could not serve as a predicate to money laundering violations because it only requires registration. *See* Paul J. Manafort, Jr.'s Motion to Dismiss Count Two and to Strike the Forfeiture Allegation [ECF No. 237 from that case]; *see also* Paul J. Manafort, Jr.'s Reply to the Government's Response to His Motion to Dismiss Count Two and the Forfeiture Allegation [ECF No. 269 from that case]. And

6

in doing so, Manafort cited to some of the First Amendment/FARA caselaw that Defendants have discussed above for the proposition that FARA only requires registration. *See supra* at 4. But because Manafort—unlike Rivera and Nuhfer—did not actually bring his own First Amendment challenge as well, the District Court denied his motion to dismiss the money laundering counts by *simply ignoring* that First Amendment/FARA caselaw and finding that FARA did prohibit the underlying lobbying (and thus prohibit speech). *See generally* Memorandum Opinion and Order [ECF No. 333 in that case]. Defendants, then, respectfully asks that this Court engage in a more comprehensive analysis than the court did in *Manafort*. And Defendants submit that such a comprehensive analysis can only result in one conclusion: their alleged failure to register did not generate the proceeds necessary for money laundering.

* * *

WHEREFORE, David Rivera and Esther Nuhfer respectfully move this Honorable Court to dismiss Counts 3–8 of the Superseding Indictment [ECF No. 122] on the grounds that if FARA simply requires registration, their alleged violations of FARA did not generate the proceeds necessary to engage in money laundering.

Dated: July 24, 2025

    Miami, Florida

Respectfully submitted,

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (305) 679-5700
By:   */s/ Edward R. Shohat*
      **Edward R. Shohat**
      Florida Bar No. 52634
      eshohat@joneswalker.com
      **David S. Weinstein**
      Florida Bar No. 749214

7

>dweinstein@joneswalker.com
>**Thomas P. Bardenwerper**
>Florida Bar No. 1044458
>tbardenwerper@joneswalker.com
>
>**MARKUS/MOSS PLLC**
>40 NW Third Street, PH #1
>Miami, FL 33128
>Tel: (305) 379-6667
>By:    */s/ David Oscar Markus*
>           **David Oscar Markus**
>           Florida Bar No. 119318
>           dmarkus@markuslaw.com
>           **A. Margot Moss**
>           Florida Bar No. 91870
>           mmoss@markuslaw.com