IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cr-20552-DAMIAN/Torres

UNITED STATES OF AMERICA,

vs.

DAVID RIVERA and ESTHER
NUHFER,

    Defendants.
_____/

## DAVID RIVERA'S MOTION TO SEVER TAX COUNTS

Defendant David Rivera respectfully moves this Honorable Court, pursuant to FED. R. CRIM. P. 8(a) and 14(a), to sever Counts 9–11 (the "Tax Counts") from the Superseding Indictment [ECF No. 122] and in support thereof state as follows:

### INTRODUCTION

The government has shoehorned two unrelated prosecutions into a single Superseding Indictment. Even a cursory review of the Superseding Indictment reveals that there is <u>one case</u> against *Rivera and Nuhfer* grounded in alleged violations of the Foreign Agents Registration Act ("FARA") (Counts 1–2, or the "FARA Counts") and related alleged money laundering violations (Counts 3–8, or the "Money Laundering Counts"). And then there is <u>a wholly unrelated and separate case</u> against *just Rivera* that involves alleged tax violations (Counts 9–11, again, the "Tax Counts").[1] Trying the FARA/Money Laundering Counts at the same time as the unrelated Tax

---

[1] None of the three Tax Counts involve allegations that income from the 2017 PDV USA/Interamerican Consulting contract—which underlies the FARA/Money Laundering case in Counts 1–8—was falsely reported. *See* Superseding Indictment at 31–38. In fact, paragraph 2(g) of Count 9 specifically alleges that the income was fully reported. *See id.* at 32–33. These allegations are, therefore, entirely unrelated to the FARA/Money Laundering charges.

Counts presents a significant risk of undue prejudice to Rivera for three reasons: *First*, without a severance, Rivera will be precluded from possibly presenting a full defense and/or from testifying in his own defense as to one set of charges but not as to the other (unrelated) set of charges. *Second*, the jury could wrongfully convict Rivera of the FARA/Money Laundering Counts based on improper propensity inferences from the Tax-Count evidence (and vice versa). And *third*, adding several days of tedious, complicated tax testimony to the several weeks of complex FARA/money laundering testimony would almost certainly confuse the jury. Accordingly, the Tax Counts should be severed from the Superseding Indictment pursuant to FED. R. CRIM. P. 8(a) and 14(a).

## THE LAW

"Under Federal Rule of Criminal Procedure 8(a), '[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.'" *United States v. Little*, 864 F.3d 1283, 1289 (11th Cir. 2017) (quoting FED. R. CRIM. P. 8(a)). "Two crimes are 'connected' together if the proof of one crime constitutes a substantial portion of the proof of the other." *United States v. Montes-Cardenas*, 746 F.2d 771, 776 (11th Cir. 1984). "Joint trials in these circumstances obviate the need for the government to make duplicate offers of proof, and allow the accused to avoid the inconvenience of two separate trials." *Id.*[2] Courts "construe this requirement broadly, in favor of *initial* joinder." *United States v. Barsoum*, 763 F.3d 1321, 1336 (11th Cir. 2014) (emphasis added).

---

[2] Obviously this second justification for joinder of the Tax Counts is irrelevant here, as only Rivera would have to face a second trial, and he is the one moving for severance.

But "[e]ven where joinder is proper under Rule 8(a) [which is not the case here[3]], Rule 14 of the Federal Rules of Criminal Procedure permits severance if a single trial on all counts would be unduly prejudicial." *United States v. Smirnoff*, 382 F. Supp. 3d 1278, 1281 (M.D. Ala. 2019); *see also United States v. Hassoun*, 477 F. Supp. 2d 1210, 1229 (S.D. Fla. 2007) ("Rule 14(a) provides that [i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant . . . , the court may order separate trials of counts . . . or provide any other relief that justice requires.'" (quoting FED. R. CRIM. P. 14(a))). This means that a court "need not consider the more circumscribed Rule 8 consideration because [a motion to sever] can be adequately determined upon a consideration of the more expansive Rule 14 inquiry." *Id.* at 1228. In adjudicating a Rule 14(a) motion, the "trial court balances 'the prejudice to the defendant against the interests of judicial economy,'" *Smirnoff*, 382 F. Supp. 3d at 1282 (quoting *United States v. Benz*, 740 F.2d 903, 911 (11th Cir. 1984)), and "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Hassoun*, 477 F. Supp. 2d at 1215 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). "[T]he first scenario for mandatory severance . . . exists only where a joint trial leads to the denial of a *constitutional* right." *Id.* at 1216 (quoting *United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004) (emphasis in original)). But as to the "second circumstance," the Eleventh Circuit has found that "there [i]s no exhaustive list indicating in what instances this prong is met." *Id.* (citing *Blankenship*, 382 F.3d at 1123)).

---

[3] To be clear, Rivera *does* contest the propriety of the joinder of the Tax Counts with the FARA/Money Laundering Counts under Rule 8(a). However, he focuses much of his argument in this Motion on Rule 14, as Rule 14 presents a lower bar to the relief sought—*i.e.*, severance of the Tax Counts.

"Courts have recognized several types of prejudice that may result from joined counts, including that: '(1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.'" *Smirnoff*, 382 F. Supp. 3d at 1282 (quoting *United States v. Scivola*, 766 F.2d 37, 41–42 (1st Cir. 1985)). Furthermore, the risk of jury "confusion" may also constitute sufficient "prejudice" to justify the granting of a Rule 14 motion. *United States v. Hernandez*, 921 F.2d 1569, 1580 (11th Cir. 1991).

**ARGUMENT**

**I.    The Tax Counts are completely unrelated to the FARA/Money Laundering Counts.**

There is no connection between the FARA/Money Laundering Counts on the one hand and the Tax Counts on the other. Because this Court is already well-versed with the FARA/Money Laundering Counts, suffice it to say that each of those counts relate in some way to an alleged contractually generated agency relationship between Rivera and Nuhfer on the one hand and the Maduro dictatorship in Venezuela on the other.[4] But the Tax Counts are wholly unrelated, having been added to this case more than a year after the return of the original Indictment via the Superseding Indictment. More specifically, the Tax Counts were the product of an investigation entirely separate from the FARA/Money Laundering investigation, and discovery provided by the

---

[4] Defendants vehemently deny these accusations.

4

government following the addition of the Tax Counts fully confirms the unrelated nature of the two cases. *See supra* at 1 n.1.

In terms of the allegations themselves, Count 9—"Making and Subscribing a False Tax Return"—accuses Rivera of "willfully mak[ing] and subscrib[ing], and caus[ing] to be made and subscribed, and fil[ing] and caus[ing] to be filed with the Internal Revenue Service ('IRS'), a false *corporate* tax return on Form 1120S for Interamerican Consulting for calendar year 2017, which was verified by a written declaration that it was made under the penalties of perjury, and which Rivera did not believe to be true and correct as to every material matter[.]" Superseding Indictment at 31 (emphasis added). Rivera allegedly did this by falsely claiming certain expenses, failing to provide his tax preparer copies of certain checks, and misrepresenting business expenses. *See id.* at 31–34.

Count 10—also entitled "Making and Subscribing a False Tax Return"—incorporates these same allegations to accuse Rivera of filing a "false *personal* tax return on Form 1040 for him and his wife for calendar year 2017." *Id.* at 35 (emphasis added). The gravamen of this charge appears to be that the alleged false inflation of Interamerican Consulting's business expenses illegally reduced the amount of passthrough income from Interamerican Consulting reported on Schedule E.

Finally, Count 11—"Attempting to Evade or Defeat Tax"—alleges that Rivera engaged in various improprieties involving transfers, disbursements, and filings related to a bank account belonging to his electoral campaign. *See id.* at 35–38. These alleged maneuverings resulted in a considerably smaller tax liability than the government thinks was appropriate. *See id.*

Conspicuously missing from any of the three Tax Counts, then, are any references to Nuhfer, Venezuela, Maduro, PDVSA, PDV USA, Citgo, *etc.*, or to any overt acts or actions

allegedly undertaken in connection with the FARA/Money Laundering Counts. Indeed, there are no allegations that the misconduct underlying the Tax Counts was in in any way related to any of the financial transactions alleged in relation to the FARA/Money Laundering Counts, as is normally a *necessary*—but not always *sufficient*—condition for such joinder. *Compare United States v. Campbell*, No. 04-cr-00424, 2005 U.S. Dist. LEXIS 47050, at *5 (N.D. Ga. June 7, 2005) ("Two crimes are 'connected' together [for Rule 8(a) purposes] if the proof of one crime constitutes a substantial portion of the proof of the other. . . . The government alleges that income omitted from the subject tax returns include the corrupt payments alleged to have been made to Defendant in [the non-tax counts]. Under these circumstances, there would appear to be an evidentiary overlap and a logical relationship between the tax counts and the corruption counts." (internal citations omitted)); *United States v. Maughon*, No. 11-cr-00028, 2011 U.S. Dist. LEXIS 69585, at *6 (N.D. Ga. May 17, 2011) (noting that a "logical relationship" exists to support the joinder of claims under Rule 8(a) where "the proof of non-tax offenses also constituted a substantial portion of the proof of the tax evasion"); *and United States v. Cory*, No. 20-cr-00099, 2022 U.S. Dist. LEXIS 107820, at *9 (M.D. Fla. June 16, 2022) (finding that joinder was proper where the government "intend[ed] to prove the tax offenses by demonstrating that [the defendant] received income from his alleged fraud") *with United States v. Wasserman*, No. 20-cr-00207, 2024 U.S. Dist. LEXIS 3325, at *3 (M.D. Fla. Jan. 8, 2024) (noting—approvingly—that the court had previously "acknowledged that there was overlap between the allegations in [the tax and non-tax] charges, but *nevertheless opted to use its substantial discretion to sever the tax counts to avoid the chance of [defendant] suffering prejudice*" (emphasis added)).[5]

---

[5] Further proof of the disconnect inheres in the fact that none of the "General Allegation" paragraphs incorporated at the beginning of each Tax Count alleges anything to do with a FARA

Here, the only commonality between the FARA/Money Laundering Counts and the Tax Counts is the presence of Rivera and Interamerican Consulting. But this alone is not enough to justify joinder of the two sets of counts, as it would render meaningless Rules 8(a) and 14(a). Under such an approach, there would never be a basis for severing "counts" (as opposed to severing "defendants"). In short, because the Tax Counts on the one hand and the FARA/Money Laundering Counts on the other are *not* "of the same or similar character," are *not* "based on the same act or transaction," and are *not* "connected with" and do *not* "constitute parts of a common scheme or plan," FED. R. CRIM. P. 8(a), they have not been properly joined. *See United States v. Diaz-Munoz*, 632 F.2d 1330, 1336 (5th Cir. 1980) ("The tax counts, however, are not based upon similar acts and are not connected to the other two schemes. . . . We expect . . . that upon retrial these counts will be severed from the fraud and embezzlement counts.").[6] Accordingly, the Tax Counts must be severed.

## II. Trying both the FARA/Money Laundering Counts *and* the unrelated Tax Counts simultaneously will inhibit Rivera's ability to present a complete defense and create a "spillover" risk.

There is substantial—yet unnecessary—risk of undue prejudice to Rivera should the FARA/Money Laundering Counts and the unrelated Tax Counts be tried as part of a single trial. *First*, such joinder will infringe on Rivera's right to present a complete defense, as Rivera would face a serious and unfair Hobson's choice: whether to testify in his own defense against both sets of counts or not at all. *Second*, such joinder could create improper "spillover" such that the jury

---

or Money Laundering crime. In fact, all those "General Allegations" are excluded from the Tax Counts.

[6] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent upon the Eleventh Circuit all published decisions of the Fifth Circuit that pre-dated September 30, 1981).

interprets the FARA/Money Laundering allegations against Rivera and Nuhfer as evidence of Rivera's propensity to have committed the tax violations, and vice versa. Both scenarios would unfairly taint the case. To avoid the distinct possibility of a mistrial, then, this Court should proactively sever the Tax Counts.

The present case is analogous to *United States v Hassoun*, 477 F. Supp. 2d 1210 (S.D. Fla. 2007). There, five men were jointly charged with "three counts relating to . . . collective efforts to further jihad overseas." *Id.* at 1212. Only Hassoun—the Rule 14 movant—was also charged with additional "falsity" counts related to "various acts of alleged obstruction, all related to the underlying substantive material support and conspiracy counts." *Id.* at 1213. Accordingly, Hassoun "request[ed] that . . . the falsity counts . . . be severed from the material support and conspiracy counts and be tried separately. He contend[ed] that joinder of the falsity counts with the material support and conspiracy counts [would be] prejudicial." *Id.* Specifically, Hassoun asserted that "his right to present a 'complete defense' on the falsity counts w[ould] conflict with his constitutionally mandated right not to incriminate himself on the material support counts." *Id.* at 1229. The court agreed. According to the court, without a severance, "*Hassoun would be forced to choose between the two strategies and unnecessarily give up defenses to which he is constitutionally entitled.*" *Id.* (emphasis added).

As to the issue of "spillover," the court found that "a jury charge directing that any defenses posed with regard to the falsity counts not be considered when deciding upon the material support and conspiracy counts w[ould] not ameliorate the problem." *Id.* Indeed, the court was "*not convinced that even a fair and reasonable juror could undeniably avoid an evidentiary spillover that could potentially poison the well of pure unbiased thought*." *Id.* (emphasis added). "[T]he very serious nature of the conspiracy and material support counts and the nature of the crimes charged"

were particularly "concern[ing]," such that it was "important" that the Court "avoid any undue prejudice that could potentially taint the jury in this case. In this instance, where the potential for prejudice is high and the effect of the prejudice profound, this Court is compelled to consider any measure that could mitigate or alleviate the problem. Severing the falsity counts negates the problem, and assures a fair trial, free from spillover." *Id.* at 1230.

Like in *Hassoun*, the present case involves a criminal prosecution against multiple Defendants (Rivera and Nuhfer) in which only one (Rivera) is facing ancillary, secondary charges (the Tax Counts). But even more troublesome here is that there is *no nexus* between the FARA/Money Laundering Counts and the Tax Counts, whereas there was certainly such a nexus in *Hassoun* between the support counts and falsity counts. If Hassoun was entitled to provide complete defenses against the closely related support counts and falsity counts, so too is Rivera entitled to prevent a complete defense against the FARA/Money Laundering and Tax Counts.

And also like in *Hassoun*—a case involving alleged support of terrorism—the present case involves incendiary allegations that Defendants lobbied on behalf of the Maduro dictatorship in Venezuela, a regime that will be (rightfully) vilified by nearly every Miami juror in the juror pool. While Defendants vehemently deny these allegations, there is a strong possibility that that the inflammatory nature of the government's FARA/Money Laundering allegations could cause a juror to assume—regardless of the weight of the evidence—that Rivera is guilty of the Tax Counts. This possibility must be preempted by a severance.

### III. Trying the FARA/Money Laundering and Tax Counts simultaneously would further prejudice Rivera by needlessly prolonging and complicating trial.

Even without the Tax Counts, this is going to be a long and complicated trial. There is a mountain of communications between various individuals connected to the FARA/Money Laundering Counts that will need to be reviewed in painstaking detail by both government and

9

defense witnesses. Having reviewed over 200 gigabytes of discovery, Rivera's counsel anticipate the need to conduct extended cross-examinations of many government witnesses in order to establish the true nature of those witnesses' communications with Defendants (and others) during the alleged conspiracy.[7] These witnesses appear to include Secretary of State and National Security Advisor Marco Rubio ("U.S. Senator 1"); Donald Trump's former campaign manager and ongoing advisor Kellyanne Conway ("White House Advisor 1"); and Texas Congressman Pete Sessions ("U.S. Congressman 1"), among others, all of whom are specifically alleged to have played significant roles in the case. These witnesses will likely present complex issues at trial.

Furthermore, the FARA regime is itself notoriously complicated, which will likely cause this Court to spend a significant amount of time addressing issues arising under FARA (and under its exceptions) and then explaining the contours of the statute and its implementing regulations to the jury, an endeavor that will no doubt be highly contested by both the government and Defendants. Regardless of the length of trial period that the government has estimated, it is unrealistic to think that it will be resolved in less than a month.[8] Accordingly, it simply makes no sense to ask a jury—after having been inundated for weeks with complicated, nuanced testimony about the FARA/Money Laundering Counts—to temporarily forget that testimony and instead spend several days (or possibly more) listening to competing accountants describe in great detail the intricacies of Rivera's wholly unrelated tax filings.

---

[7] Of the 92 overt acts charged in Count 1 (conspiracy to violate FARA), only 16 do *not* involve text or email communications between persons allegedly involved in the conspiracy. The government's apparent reliance on these communications will require Rivera to properly characterize *those communications* within the context of thousands of *related communications* produced during discovery. This will be tedious and time consuming.

[8] Rivera now believes that the government's estimated trial length of 11–20 days is woefully short, particularly with the addition of the Tax Counts.

The present case is similar to *United States v. Waters*, No. 11-cr-00012, 2011 U.S. Dist. LEXIS 148308 (S.D. Ala. Dec. 23, 2011). There, Waters was one of several defendants jointly charged with anti-kickback violations within the healthcare context. *See id.* at *4. Waters, however, was also charged with bankruptcy fraud, an allegation that had no connection to the other defendants or charges. *Id.* at *5. Waters therefore argued that "he and the other defendants w[ould] be prejudiced because the jury [would have to] sift through the unrelated healthcare fraud evidence along with the bankruptcy fraud evidence and because allowing the continued joinder of offenses would confuse the jury." *Id.* The court agreed, finding that Waters had "met his burden of demonstrating that he and the remaining defendants may be prejudiced by inclusion of the bankruptcy fraud counts in the upcoming trial." *Id.* According to the court,

> [t]he bankruptcy counts [we]re not related to any other offense or defendant charged in this action. Although a cautionary instruction to the jury may mitigate *any confusion of the jury* or spill over prejudice resulting from trial of the bankruptcy counts with the anti-kickback, conspiracy, and health care fraud counts, the risk thereof weighs in favor of severance in this instance where only Waters is charged with bankruptcy fraud.

*Id.* at *5–6 (emphasis added).

Like in *Waters*, the present case—again—involves a situation where two Defendants (Rivera and Nuhfer) have been jointly named in several counts (the FARA/Money Laundering Counts) but only one defendant (Rivera) has been named in ancillary, secondary counts (the Tax Counts). And, also like in *Waters*, there is no connection here between the two sets of counts.[9] To

---

[9] The government in *Waters*, for its part, did try to establish a connection between the anti-kickback violations and the bankruptcy fraud. *See Waters*, 2011 U.S. Dist. LEXIS 148308, at *5 ("The United States respond[ed] that [the two sets of counts] [were] properly joined . . . because Waters failed to disclose information in his bankruptcy in an attempt to conceal the alleged violations of the anti-kickback statute."). That argument failed, as would any argument in this case that the Tax Counts somehow relate to the FARA/Money Laundering Counts. And, even if they were so related, such a connection would be far from dispositive. *See Hassoun*, 477 F. Supp. 2d at

11

ask jurors to first spend weeks wading through a daunting amount of highly contested evidence in the context of the FARA/Money Laundering Counts and then to shift their focus to tedious, technical, tax-related evidence is a recipe for prejudicial juror confusion. This Court can easily avoid this possibility by simply severing the Tax Counts.

* * *

In short, Rivera asks this Court to do the prudent thing, which is to avoid the risk of an unfair trial (or even a mistrial) by severing the Tax Counts from the FARA/Money Laundering Counts. The only possible justification for trying all the counts at once is speed, but even that justification is illusory. The time saved in the short term by not severing the Tax Counts would be completely wiped out (and then some) should such haste result in flawed verdicts that have to be rectified by the Eleventh Circuit on appeal and this Court on remand. Indeed, the court in *Hassoun* aptly summed up this risk:

> It appears that the trial in this case will be a lengthy one, fraught with complex issues, an array of witnesses and novel, sometimes cumbersome, legal strategies. Navigating this arduous course will expend enormous amounts of all parties to this action's time, effort and resources. If convictions were obtained at a trial where the falsity counts were not severed, and the Eleventh Circuit later upheld Hassoun's arguments regarding the prejudicial effect of these counts, the drain on judicial resources would be substantial. Severing the falsity counts ensures a fair trial on both "sets" of counts and provides a safeguard against such an ill-fated outcome.

*Hassoun*, 477 F. Supp. 2d at 1230.

**WHEREFORE**, Defendant David Rivera respectfully moves this Honorable Court to sever Counts 9–11 from the Superseding Indictment [ECF No. 122] pursuant to FED. R. CRIM. P. 8(a) and 14(a).

---

1230 (severing counts that were indisputably related to each other); *Wasserman*, 2024 U.S. Dist. LEXIS 3325, at *3 (same).

**Respectfully submitted on October 2, 2025:**

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (305) 679-5700
By:*/s/ Edward R. Shohat*
**Edward R. Shohat**
Florida Bar No. 152634
eshohat@joneswalker.com
**David S. Weinstein**
Florida Bar No. 749214
dweinstein@joneswalker.com
**Thomas P. Bardenwerper**
Florida Bar No. 1044458
tbardenwerper@joneswalker.com

*Counsel for David Rivera*

## CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies in accordance with S.D. FLA. LOCAL RULE 88.9(a) that he conferred with Assistant U.S. Attorney Harold Schimkat who opposes the relief sought herein.

*/s/ Edward R. Shohat*
**Edward R. Shohat**