IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cr-20552-DAMIAN/Torres

UNITED STATES OF AMERICA,

vs.

DAVID RIVERA and ESTHER NUHFER,

    Defendants.
_____/

## DEFENDANTS' MOTION TO STRIKE PREJUDICIAL AND CONFUSING SURPLUSAGE FROM THE SUPERSEDING INDICTMENT

Defendants David Rivera and Esther Nuhfer respectfully move this Honorable Court, pursuant to FED. R. CRIM. P. 7(d), to strike as prejudicial and confusing surplusage Sections "F" and "G" of the overt acts portion of Count 1 of the Superseding Indictment [ECF No. 122]—as well as the corresponding "Manners and Means of the Conspiracy" paragraphs 13–14—and in support thereof state as follows:

### INTRODUCTION

On December 14, 2023, a federal grand jury returned the operative Superseding Indictment against Rivera and Nuhfer, alleging that each Defendant:

- Conspired to Commit Offense against the United States in violation of 18 U.S.C. § 371 (Count 1); and

- Failed to Register as a Foreign Agent in violation of 22 U.S.C. §§ 612(a) and 618(a)(1) (Count 2).

*See* Superseding Indictment at 5–28.[1] In support of the conspiracy count, the government has alleged 92 overt acts. Of those 92 overt acts, the following must be stricken as prejudicial and confusing surplusage pursuant to Rule 7(d):

1. Section "F," entitled "Venezuelan Sanctions" (overt acts 66–81), pertaining to alleged efforts by Rivera and Nuhfer to remove particular Venezuelan nationals from the Office of Foreign Assets Control ("OFAC") sanctioned persons list; and

2. Section "G," entitled "U.S. Congressman 1 Meets with President Maduro" (overt acts 82–88), pertaining to an alleged 2018 trip by Rivera and others to Caracas, Venezuela.

(The Defendants will refer to these overt acts as the "OFAC Allegations" and the "Caracas Allegations," respectively.) These overt acts must be stricken because the activities described therein—assuming their truth for the purposes of this Motion—were entirely lawful, yet presenting said allegations to the jury would serve no purpose in advancing the government's case other than to cause prejudicial and confusing innuendo.

## THE LAW

"Upon the defendant's motion, the court may strike surplusage from the indictment or information." FED. R. CRIM. P. 7(d). "[T]he chief function of an indictment," after all, "is to inform the defendant of the nature of the accusation against him by providing enough information about the essential facts to permit the defendant (and the court) to know the specific crimes that have been charged." *United States v. Trump*, 736 F. Supp. 3d 1206, 1216 (S.D. Fla. 2024) (citing *Russell v. United States*, 369 U.S. 749, 767–68 (1962)). "The inclusion of clearly unnecessary language in an indictment that could serve only to inflame the jury, confuse the issues, and blur the elements

---

[1] There were other charges as well, but those charges are irrelevant to the present Motion. Needless to say, Defendants maintain their innocence as to all Counts.

necessary for conviction under the separate counts involved surely can be prejudicial." *United States v. Sheppard*, No. 2022-cr-20290, 2023 U.S. Dist. LEXIS 194954, at *10 (S.D. Fla. Oct. 31, 2023) (quoting *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971))). Accordingly, "where an indictment contains allegations that are clearly irrelevant and/or inflammatory and prejudicial, courts have discretion under Rule 7(d) to strike those allegations, although the threshold for doing so is 'most exacting.'" *Trump*, 736 F. Supp. 3d at 1216 (quoting *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992)).

### ARGUMENT

I. **The OFAC Allegations are surplusage because engaging the US government to remove a foreign national from the sanctions list does not require FARA registration.**

A lawyer's efforts to remove a foreign client from the OFAC sanctions list is exempted from FARA by the statute's exemption for legal representation (the "Legal Exemption"). According to the Legal Exemption, "[t]he requirements of section 612(a) of [FARA] shall not apply to the following agents of foreign principles:

> Any person qualified to practice law, insofar as he engages or agrees to engage in the legal representation of a disclosed foreign principal before any court of law or any agency of the Government of the United States: Provided, That for the purposes of this subsection legal representation does not include attempts to influence or persuade agency personnel or officials other than in the course of judicial proceedings, criminal or civil law enforcement inquiries, investigations, or proceedings, or agency proceedings required by statute or regulation to be conducted on the record.

22 U.S.C. § 613(g). And according to the Department of Justice's FARA guidance, "[t]he scope of the [Legal Exemption], once triggered, *may include an attorney's activities outside those [formal] proceedings* so long as those activities do not go beyond the bounds of normal legal representation of a client within the scope of that matter." JUSTICE.GOV, Foreign Agents

3

Registration Act—Frequently Asked Questions, https://www.justice.gov/nsd-fara/frequently-asked-questions (last accessed on August 22, 2025) (emphasis added).

In its FARA Advisory Opinions pertaining to the Legal Exemption, the DOJ's primary inquiry is whether the lawyer who has sought DOJ guidance will be *either* advocating on behalf of a specific client within the judicial process *or* attempting to influence US policy generally. *See, e.g.*, August 2, 2018, Adv. Op. (determining that "the limited scope of [US law firm]'s activities, which [are reported] as stopping short of attempts to influence policy, but rather, are limited to representation of [foreign government ministry] in the arbitration and providing comments in response to investigative activity," would qualify for the Legal Exemption); August 27, 2003 DOJ Adv. Op. at 1 (finding that the exemption applied to a law firm that had been "retained by the [foreign government] to prepare litigation" related to "commercial contracts," but that the exemption "would not apply if [the law firm's representation] later expanded to include political consulting activity or activity including lobbying or public relations").

Unsurprisingly, then, this Legal Exemption often applies to efforts made by lawyers to have a foreign client removed from the OFAC sanctions list. For example, in one representative Advisory Opinion, the DOJ found that the Legal Exemption applied to a law firm that was going to "advise [its] clients about US sanctions and . . . represent them before OFAC, and, as necessary, other U.S. Government agencies in relation to the sanctions imposed on [their] clients." April 22, 2020, DOJ Adv. Op. And in another, the DOJ concluded that "the limited scope of [US law firm's] letter to OFAC appears to stop short of an attempt to influence OFAC's policies regarding its sanctions regime beyond its specific application to [US law firm's] two clients. *If* . . . [US law firm] engages in a wider discussion or exchange with OFAC that implicates policy or political considerations, *then* it would not be able to avail itself of the exemption[.]." May 3, 2018, DOJ

Adv. Op. #1 at 2 (emphasis added). The list goes on. *See, e.g.*, May 3, 2018, DOJ Adv. Op. #2 at 2 (same); September 10, 2013, DOJ Adv. Op. at 1 (finding that a law firm was covered by the Legal Exemption because a "foreign corporation" hired the law firm "to remove it from the [OFAC] Entity List" and because the law firm stated that it would "not engage in any political activities as defined by FARA"). Furthermore, such non-FARA-triggering OFAC-related efforts can also include "*informal advocacy* to advance [a foreign client's] interests in being removed from the [OFAC] List," to include "engage[ment] only with Executive Branch agencies that could have a role in the decision-making process with respect to [that client's] status on [the List]." May 24, 2021, DOJ Adv. Op. at 4. The Legal Exemption applies to "informal advocacy" in the OFAC context because there is an "absence of implementing regulations establishing such formal agency proceedings on the record." March 31, 2023, DOJ Adv. Op. at 7.

Because working as a lawyer to have a foreign client removed from the OFAC sanctions list does not trigger the FARA reporting requirements pursuant to the Legal Exemption, it follows that helping a foreign national retain such a lawyer likewise does not trigger the FARA reporting requirements. And that is exactly what the Superseding Indictment alleges that Rivera and Nuhfer were doing in the OFAC Allegations. That section is entitled "Venezuelan Sanctions," and the first overt act quotes an alleged text message from Rivera on August 30, 2017, discussing how much to charge for efforts to have various Venezuelan nationals removed from the OFAC list. *See* Overt Act 66. After a back-and-forth about billing, Rivera allegedly sent a text message saying that "[Attorney 1] is your guy" because "his [law] firm gets people off the [sanctions] list regularly[.]" Overt Act 71. Then the government alleges that Rivera sent yet another text message, this one referencing "our efforts for [Family Member 1]" with OFAC. Overt Act 74. Because these OFAC-related efforts were entirely legal, the corresponding OFAC Allegations are irrelevant to the

5

government's case. Furthermore, such surplusage—for the reasons to be discussed in Section III, *infra*—must be stricken as confusing and prejudicial under Rule 7(d).

> II. **Likewise, the Caracas Allegations are surplusage because FARA only prohibits unregistered agency on behalf of a foreign principal that occurs "<u>within the United States</u>."**

A close reading of FARA reveals that it only prohibits unregistered agency on behalf of a foreign principal that occurs *within* the United States. In the Eleventh Circuit, any statutory "analysis . . . begins and ends with the statutory text." *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1314 (11th Cir. 2019); *see also Lee v. U.S. Bank N.A.*, 102 F.4th 1177, 1189 (11th Cir. 2024) ("Our decision should begin and end with the text of the statute by giving the text its 'plain, ordinary, and most natural meaning.'" (first citing *Heyman v. Cooper*, 31 F.4th 1315, 1318 (11th Cir. 2022), then quoting *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995))). And "'[i]t is a cardinal rule' of statutory interpretation that [the court] tr[ies] to give 'effect . . . to every clause . . . of a statute.'" *Singh*, 945 F.3d at 1314 (quoting *United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019)); *see also* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS § 26, at 174 (2012) ("If possible, every word and every provision [of a statute] is to be given effect[.]"). Such an analysis of FARA, then, reveals that the statute only prohibits agency on behalf of a foreign principal that occurs "*within the United States*." 22 U.S.C. § 611(c).

Here, the government has alleged that Defendants *conspired to violate* FARA (Count 1) and *violated* FARA (Count 2). Those counts are specifically tethered to FARA §§ 612(a) and 618(a)(1). *See* Superseding Indictment at 5, 28. Section 612(a) states the following:

> No person shall act as an ***agent of a foreign principal*** unless he has filed with the Attorney General a true and complete registration statement . . . or unless he is exempt from registration under the provisions of this subchapter. Except as hereinafter provided, every

6

> person who becomes an agent of a foreign principal shall, within ten days thereafter, file with the Attorney General, in duplicate, a registration statement, under oath on a form prescribed by the Attorney General. The obligation of an agent of a foreign principal to file a registration statement shall, after the tenth day of his becoming such agent, continue from day to day, and termination of such status shall not relieve such agent from his obligation to file a registration statement for the period during which he was an agent of a foreign principal.

22 U.S.C. § 612(a) (emphasis added).[2] And the legislature has defined "agent of a foreign principal" as:

> 1. any person who acts as an agent, representative, employee, or servant, or any person who acts in any other capacity at the order, request, or under the direction or control, of a foreign principal or of a person any of whose activities are directly or indirectly supervised, directed, controlled, financed, or subsidized in whole or in major part by a foreign principal, and who directly or through any other person—
>
>    i. engages *within the United States* in political activities for or in the interests of such foreign principal;
>
>    ii. acts *within the United States* as a public relations counsel, publicity agent, information-service employee or political consultant for or in the interests of such foreign principal;
>
>    iii. *within the United States* solicits, collects, disburses, or dispenses contributions, loans, money, or other things of value for or in the interest of such foreign principal; or
>
>    iv. *within the United States* represents the interests of such foreign principal before any agency or official of the Government of the United States; and
>
> 2. any person who agrees, consents, assumes or purports to act as, or who is or holds himself out to be, whether or not pursuant to

---

[2] Section 618(a)(1) simply provides the enforcement mechanisms to be employed against "any person who willfully violates any provision of this subchapter or any regulation thereunder." 22 U.S.C. § 618(a)(1).

7

#104221774v1
#110035665v1

> contractual relationship, an agent of a foreign principal as defined in clause (1) of this subsection.

22 U.S.C. § 611(c); *see also United States v. Cuellar*, No. 24-cr-00224, ECF No. 138 (S.D. Tex. Aug. 19, 2025) (describing the analogous 18 U.S.C. § 219 as "covering many who assist foreign principals in conducting political business *in the United States*" (emphasis added)). Accordingly, this frequent and consistent use of the phrase "*within the United States*" makes clear that one *cannot* act as an "agent of a foreign principal" when engaging *extraterritorially* in any of the four categories of activities delineated in § 611(c). FARA simply does not apply to such situations.

The Caracas Allegations, however, describe an entirely extraterritorial endeavor. Specifically, they discuss email correspondence before the trip to Caracas regarding the trip, *see* Overt Acts 82–83; the trip to Caracas itself, *see* Overt Acts 84–86; and email correspondence after the trip regarding the trip, *see* Overt Acts 87–88. Because these allegations describe putative political activity to take place only in Caracas, activity that was not illegal under FARA, the allegations are irrelevant to the government's case. And such surplusage—for the reasons to be discussed in Section III, *infra*—must be stricken as confusing and prejudicial under Rule 7(d).

**III. Because the OFAC and Caracas Allegations are not just surplusage but rather *prejudicial and confusing* surplusage, they must be stricken under Rule 7(d).**

An "overt act" is "any transaction or event, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy." *United States v. Hersh*, 297 F.3d 1233, 1246 n.18 (11th Cir. 2002). Defendants recognize, then, that not every overt act alleged in Count 1 needs to be illegal when viewed in isolation. The issue here, though, is that the OFAC and Caracas Allegations described in the Superseding Indictment are portrayed as the *alleged <u>objectives</u> of the conspiracy* as opposed to purely ancillary factual context.

#104221774v1
#110035665v1

Indeed, the OFAC and Caracas Allegations come at the end of a lengthy narrative of overt acts, and there is no indication in the Superseding Indictment that the government believes that Defendants allegedly conspired to engage in any further unregistered agency on behalf of the government of Venezuela beyond the OFAC or Caracas Allegations. This becomes clear when Count 1 (*conspiring to violate* FARA) is compared with Count 2 (*violating* FARA). In Count 2, the government alleges that Defendants violated FARA because of activities they allegedly engaged in from February 2017 through December 2018. *See* Superseding Indictment at 28. But—as described in Count 1's lengthy narrative of overt acts—the only FARA-related activities that allegedly occurred *after* the fall 2017 OFAC Allegations and the spring 2018 Caracas Allegations were alleged efforts by Defendants to collect and distribute funds related to their alleged agency. *See id.* at 27. Accordingly, the OFAC and Caracas Allegations have not been presented as two innocent overt acts in which Defendants allegedly engaged to achieve some further illegal objective; instead, the OFAC and Caracas Allegations are portrayed as *the alleged objectives of the FARA conspiracy*. And because these supposed conspiracy objectives (*i.e.*, OFAC removal efforts and the trip to Caracas) were not illegal—as the former were covered by the Legal Exemption and the latter occurred outside the United States—those allegations must be stricken from the Superseding Indictment as confusing and prejudicial surplusage. Jurors, after all, would likely fail to appreciate the nuances in the FARA statutory scheme already discussed in this Motion, meaning that there exists a strong likelihood that jurors would hold against Rivera and Nuhfer the OFAC and Caracas allegations and convict them on those improper bases alone.

The situation here is similar to *United States v. Green*, 873 F.3d 846 (11th Cir. 2017). There, a defendant was charged with being a felon in possession of a firearm. *Id.* at 851. The defendant—who had twelve prior felony convictions—stipulated before trial that he had a prior

9

felony conviction, such that the district court "removed from the indictment the list of [d]efendant's 12 prior felony convictions, before giving the indictment to the jury." *Id.* at 854. "Over [d]efendant's objection, however, the district court refused to change the word 'crimes' to 'crime' in the following sentence of the indictment: 'For each of these crimes, [the defendant] was subject to punishment by a term of imprisonment exceeding one year." *Id.* On appeal, the defendant argued "that the indictment's reference to 'crimes' (plural, rather than singular) was prejudicial, because it allowed the jury to infer that [d]efendant had more than one felony conviction, and irrelevant, because a single felony would have satisfied the convicted-felon element of the § 922(g) offense." *Id.* The Eleventh Circuit "conclude[d]" as follows:

> [T]he district court should have granted [d]efendant's request to redact the indictment to remove any reference to "crimes" (plural), given that [d]efendant had stipulated to having a prior felony conviction. First, a district court has the power to redact an indictment to avoid unfair prejudice. *Cf.* FED. R. CRIM. P. 7(d) ("Upon the defendant's motion, the court may strike surplusage from the indictment or information."); *United States v. Adkinson*, 135 F.3d 1363, 1376 (11th Cir. 1998) ("A redaction of an indictment is permissible so long as the elements of the offense charged are fully and clearly set out in what remains.").
>
> Second, the indictment's reference to [d]efendant's previous "crimes" was, in Rule 403 parlance, cumulative, with the potential to unfairly prejudice Defendant. It was cumulative insofar as the word "crime" would have established the convicted-felon element of the § 922(g) offense with the same force as the word "crimes." As for unfair prejudice, unnecessarily communicating to a jury that a defendant has multiple convictions, which could mean two convictions or dozens of convictions, increases the risk of unfair prejudice. Thus, "the evidence regarding [defendant's] additional felony convictions added very little to the case against him," *United States v. Quintero*, 872 F.2d 107, 112 (11th Cir. 1989), while at the same time creating a risk that the jury would "declar[e] guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). We therefore conclude that the district court should have agreed to [d]efendant's request that it redact the indictment.

*Green*, 873 F.3d at 856. In other words, the Eleventh Circuit found that the district court should have struck the disputed language from the indictment pursuant to Rule 7(d)—with an acknowledgment of the helpful, guiding principles of FED. R. EVID. 403 along the way—because the disputed language (i) added nothing to the indictment in terms of substance and (ii) created a substantial risk that the jury would find the defendant guilty of the instant offense for reasons untethered to the whether the government had proved beyond a reasonable doubt that the elements of the charged crime.

Also on point is *United States v. Martin*, No. 17-cr-00301, 2018 U.S. Dist. LEXIS 128020 (M.D. Fla. July 15, 2018). There, the defendant—who faced charges of "conspiracy to commit Medicare fraud, mail fraud, [and] health care fraud"—moved to strike as surplusage the inclusion of two of his aliases in the indictment against him, specifically "Doctor Martin" and "Doctor Rick." *Id.* at *5–6. According to the defendant—who was not a doctor—"the government [was] not charging [him] with the unlicensed practice of medicine and so the inclusion of these alleged aliases [were] irrelevant and unfairly prejudicial to Mr. Martin's defense of the charges the government ha[d] brought." *Id.* The court agreed, finding that the inclusion of the aliases "[did] not appear to serve any purpose in terms of connecting the identity of Mr. Martin to the acts charged in the Indictment. Further, these aliases do not hold any other relationship to the acts charged and so their inclusion in the Indictment is surplusage [which] is prejudicial to Mr. Martin as it insinuates that he was practicing medicine without a license." *Id.* at *7. The court therefore struck the offending language from the indictment. *Id.*

As in *Green* and *Martin*, here, the inclusion of either the OFAC or Caracas Allegations in the Superseding Indictment—and in particular *how* they have been included—results in confusing and prejudicial "insinuations." Again, the government portrays the OFAC and Caracas Allegations

11

as the crown jewels of the Superseding Indictment, featuring them prominently at the end of an extensive narrative of overt acts. The reasonable takeaway, then, is that the OFAC and Caracas Allegations *were the objective of the alleged conspiracy to violate FARA*. But they could not have been, as the FARA Legal Exemption encompasses efforts to assist foreign principles from being removed from the sanctions list, *see* DOJ Adv. Ops. Discussed *supra*, and FARA itself only prohibits agency on behalf of a foreign principal that occurs "within the United States," 22 U.S.C. § 611(c). The OFAC and Caracas Allegations therefore add nothing to the Superseding Indictment while creating a substantial risk that the jury could be misled into improperly convicting Defendants of conspiring to violate FARA (Count 1) and violating FARA (Count 2) exclusively on the basis that Rivera and Nuhfer allegedly engaged in *entirely lawful activities—i.e.*, assisting foreign nationals retain counsel for OFAC de-listing efforts and traveling to Venezuela to attend a meeting. To preclude this possibility from tainting the proceedings, then, this Court should strike the discussion of the Venezuela trip from the Superseding Indictment.

**IV.     In the alternative, Defendants request that this Honorable Court not share the Superseding Indictment to the jury.**

Should this Court deny the argument raised in this Motion and refuse to strike Count 1's OFAC and Caracas Allegations, Rivera and Nuhfer ask that this Court ensure that the Superseding Indictment neither be read to nor shared with the jury at trial in keeping with the custom of many district courts from around the country. *See, e.g.*, *United States v. Buckingham*, No. 18-cr-00376, 2018 U.S. Dist. LEXIS 210350, at *25 (N.D. Ala. Dec. 3, 2018) ("[I]t is not the court's practice to provide the jury with a copy of the indictment."); *United States v. George*, 20-cr-00153, No. 2020 U.S. Dist. LEXIS 244894, at *2–3 (E.D. Wash. Dec. 29, 2020) (same); *United States v. Trump*, No. 23-cr-00257, 2023 U.S. Dist. LEXIS 206194, at *3 (D.D.C. Nov. 17, 2023) ("But consistent with its past practice, this court will not provide a copy of the indictment to jurors, eliminating that

source of potential prejudice."). In such a scenario, Rivera and Nuhfer reserve their right to challenge the admission of any associated evidence on FED. R. EVID. 403 grounds.

\* \* \*

WHEREFORE, Defendants David Rivera and Esther Nuhfer respectfully move this Honorable Court to strike Sections "F" and "G" of Count 1 ("Conspiracy to Commit Offense against the United States in violation of 18 U.S.C. § 371") of the Superseding Indictment [ECF No. 122]—as well as the corresponding "Manners and Means of the Conspiracy" paragraphs 13–14—as confusing and prejudicial surplusage pursuant to FED. R. CRIM. P. 7(d). In the alternative, Defendants ask that the Superseding Indictment neither be read to nor shared with the jury.

## CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies in accordance with S.D. FLA. LOCAL RULE 88.9(a) that he conferred with Assistant U.S. Attorney Harold Schimkat who opposes the relief sought herein.

Dated: August 7th, 2025

Respectfully submitted,

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (305) 679-5700
By:   */s/ Edward R. Shohat*
      **Edward R. Shohat**
      Florida Bar No. 152634
      eshohat@joneswalker.com
      **David S. Weinstein**
      Florida Bar No. 749214
      dweinstein@joneswalker.com
      **Thomas P. Bardenwerper**
      Florida Bar No. 1044458
      tbardenwerper@joneswalker.com

13