UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

No. 22-cr-20552-DAMIAN/Torres

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID RIVERA and ESTHER NUHFER,

    Defendants.

_____/

## DEFENDANTS' JOINT MOTION TO DISQUALIFY ASSISTANT UNITED STATES ATTORNEY ROGER CRUZ

Defendants David Rivera and Esther Nuhfer, through undersigned counsel, submit this Motion to Disqualify Assistant United States Attorney Roger Cruz because of (1) conflicts of interest (and the appearance of impropriety) and (2) a personal animus against one of the defense attorneys. These concerns substantially outweigh any need on the side of the government for AUSA Cruz to remain on this case, as he joined the already robust prosecution team less than a month ago (on January 5, 2026)—in other words, 37 months into a 38-month-old case. Defendants raised these issues with AUSA Cruz (as well as the rest of the prosecution team) on January 21, 2026, in an effort to resolve them without the Court's intervention, but AUSA Cruz has refused to withdraw.

### BACKGROUND

AUSA Cruz's continued participation in this case presents serious conflicts of interest and the appearance of impropriety that threaten Defendants' right to a fair proceeding. Multiple

undisputed facts raise questions about his objectivity: (1) AUSA Cruz's wife, Mrs. Maria "Mary" Lievano Cruz, continues to be engaged in lucrative business dealings tied to Ballard Partners—a lobbying firm that employs multiple key witnesses in this case; (2) AUSA Cruz (*after* becoming counsel of record in this case) and his wife recently attended a private event hosted by a managing partner of Ballard Partners; (3) Mrs. Lievano Cruz has a long-standing history of political and professional conflicts with both Defendants; and (4) Mr. Cruz reportedly made a statement suggesting strong personal animus towards David Oscar Markus, who is lead counsel for Defendant Nuhfer (essentially, AUSA Cruz expressed enthusiasm for the opportunity to convict a Markus client). Each of these issues, when considered in isolation, is enough to justify the disqualification of AUSA Cruz. But when considered in the aggregate, the evidence in favor of disqualification is overwhelming, especially when AUSA Cruz is easily replaceable given the mere three-and-a-half weeks that he has been involved in this case.

## THE LAW

It is a fundamental principle of our justice system that "[t]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). A criminal prosecution must be pursued by an impartial, disinterested prosecutor; if a prosecutor has a conflict of interest or a personal stake in the outcome, the defendant's due process rights are implicated. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803 (1987) ("[F]ederal prosecutors are prohibited from representing the Government in any matter in which they, their family, or their business associates have any interest."). Indeed, "[a] concern for actual prejudice in such circumstances misses the point, for what is at stake is the public perception of the integrity of our criminal justice system. 'Justice

must satisfy the appearance of justice,' and a prosecutor with conflicting loyalties presents the appearance of precisely the opposite." *Id.* at 811–12 (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). "[F]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," *Wheat v. United States*, 486 U.S. 153, 160 (1988)"), and individual lawyers—for their part—"should avoid even the appearance of professional impropriety," *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 (11th Cir. 1982) (quoting Canon 9 of the Code of Professional Responsibility)).

The two-part *Norton* test is directly applicable here. In *Norton*, the Eleventh Circuit stated that the recusal (or disqualification) of an attorney is necessary when there exists (i) a "reasonable possibility that some specifically identifiable impropriety did in fact occur," and (ii) "the likelihood of public suspicion or obloquy . . . outweigh[s] the social interests that will be served by the attorney's continued participation in the case." 689 F.2d at 942. While *Norton* was a civil case, its test should be applied even more rigorously in the criminal context, where the public's trust in the justice system is of even greater importance. As will be explained in greater detail, *Norton* requires the disqualification of AUSA Cruz.

In addition to these constitutional and jurisprudential standards, federal statutes also impose strict ethical duties on prosecutors to avoid conflicts and the appearance of conflicts. Pursuant to 28 U.S.C. § 528, "[t]he Attorney General shall promulgate rules and regulations which *require* the disqualification of any officer or employee of the Department of Justice, including a United States attorney or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, or the appearance thereof." 28 U.S.C. § 528 (emphasis added). And 18 U.S.C.

3

§ 208 prohibits an executive branch employee (including a prosecutor) from participating "personally and substantially" in any matter in which the employee or his or her "spouse" has a "financial interest." 18 U.S.C. § 208(a).

So, too, do federal regulations and internal DOJ policies require that prosecutors be vigilant in protecting against the appearance of impropriety, such that they withdraw from a case where the appearance of such impropriety exists. According to the Standards of Ethical Conduct for Employees of the Executive Branch, when such an employee—including a prosecutor—"knows that a particular matter involving specific parties is likely to have a direct and predictable effect on the financial interest of a member of the employee's household, and the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question the employee's impartiality in the matter, the employee should not participate in the matter unless the employee has received a determination from the agency designee regarding the appearance problem[.]" 5 C.F.R. § 2635.502(a)(1). The DOJ's internal Ethics Handbook for On- and Off-Duty Conduct encapsulates these common-sense rules in even simpler terms: **"You should recuse yourself when your official actions affect, or appear to affect, your private interests, whether financial or non-financial."** The Ethics Handbook goes on to advise AUSAs to seek guidance and likely recuse in any scenario where their "impartiality could be questioned" due to personal relationships, including situations where a spouse's employment or affiliations overlap with the subject matter of a DOJ proceeding.

In sum, federal caselaw, federal statutes and regulations, and internal DOJ policy uniformly recognize that improprieties—or even just the appearance of improprieties—cannot infect criminal prosecutions. A prosecutor must voluntarily withdraw from a case (or be disqualified by the court)

if personal interests—whether they are pecuniary, familial, political, or otherwise—reasonably appear to conflict with the duty of impartial justice.

## ARGUMENT

### I. AUSA Cruz's wife is engaged in several ongoing business ventures involving Ballard Partners, a lobbying firm that employs several critical witnesses.

AUSA Cruz's wife is currently engaged in business activities that are directly connected to Ballard Partners, a national lobbying firm that is deeply enmeshed in this case. Ballard Partners, after all, currently employs multiple critical witnesses expected to be called by the government and/or the defense, including Brian Ballard, Sylvester "Syl" Lukis, and Bridget Nocco. And current White House Chief of Staff, Susie Wiles—who is also expected to testify—is a former Ballard Partner lobbyist.

Specifically, Mrs. Lievano Cruz serves as a vice-president of a real estate development company (GLC Real Estate) and has been involved in major public projects and regulatory matters alongside Ballard Partners personnel. For example, as recently as late 2025, Mrs. Lievano Cruz testified before the Florida Public Service Commission in support of Florida Power & Light's ("FPL") multi-billion-dollar rate increase. FPL is one of Ballard Partners' largest clients. Additionally, Mrs. Lievano Cruz has worked on initiatives related to "The Underline" project in Miami; issues brought before the Greater Miami Expressway Authority; and ventures involving the local rock mining industry—all matters in which Ballard Partners and its clients have significant stakes. In essence, AUSA Cruz's spouse is professionally intertwined with Ballard Partners' clients and projects, creating a network of financial and professional interests that overlap with individuals involved in this case.

That the financial fortunes of AUSA Cruz's household are aligned with Ballard Partners could subtly, or not so subtly, incentivize a prosecutorial approach favorable to Ballard Partners'

position or vindictive toward its adversaries. Conviction of Defendants would bolster the credibility and influence of those witnesses and their firm (*e.g.*, by validating allegations they made, or by neutralizing Defendant Rivera—a former U.S. Congressman and rival). Conversely, if the prosecution fails or appears mishandled, Ballard Partners' witnesses might come under scrutiny, or their clout may diminish. In short, Ballard Partners' reputation is intertwined with the outcome of this trial. AUSA Cruz, by virtue of his wife's ties, therefore has at least an indirect financial interest in Ballard Partners' standing and client satisfaction.

This situation falls squarely under 18 U.S.C. § 208's prohibition of an employee participating in a matter affecting the financial interest of his spouse. And under 5 C.F.R. § 2635.402, the "financial interests" of a prosecutor's spouse are "imputed" to the prosecutor and "require the recusal" of the prosecutor "to the same extent as if they were the employee's own interests." 5 C.F.R. § 2635.402(b)(2). While Mrs. Lievano Cruz is not an employee of Ballard Partners, she is collaborating with them in highly lucrative endeavors. Furthermore, FPL (a Ballard Partners client) is also effectively her client in the Public Service Commission matter

Again, the Justice Department's remedy for when there is even a hint of such conflicts of interest is simple: recusal (or disqualification). The Ethics Handbook states unequivocally that "[i]f you have a financial conflict of interest or believe your impartiality might be questioned, you must either disqualify yourself from taking action that could affect your interest or contact your Deputy DAEO" for further guidance. Given the magnitude of the overlap, it is hard to imagine a waiver being granted if the full facts were known.

## II.   Since recently becoming counsel of record, AUSA Cruz attended a birthday party hosted by one of Ballard Partners' senior partners.

After becoming counsel of record in this case, AUSA Cruz and his wife attended a private birthday gathering hosted by former Florida legislator and current Ballard Partners managing

6

partner Jose Felix Diaz on January 17, 2026. AUSA Cruz did not disclose this interaction; instead, the defense team had to uncover it itself. By attending a social event in an intimate setting at the home of Ballard Partners' leadership, AUSA Cruz and his spouse engaged in *ex parte* contact with individuals who—again—have direct ties to the prosecution's witnesses as well as potential defense witnesses. This creates, at the very least, an appearance of impropriety and divided loyalties.

A reasonable observer could question whether such off-duty fraternization with the employer of multiple key witnesses might compromise the prosecutor's impartiality. How can AUSA Cruz objectively evaluate and present the testimony of Ballard Partners-related witnesses— or challenge their credibility if necessary—when he and his spouse have close personal ties with the firm's leadership? Furthermore, AUSA Cruz could easily interfere with the current and former Ballard Partners employees whom the defense intends to call as witnesses, since he has both the means and the motive. As to the means, there is only one degree—at most—of social separation between AUSA Cruz and these witnesses. And as to the motive, protecting current and former Ballard Partners would curry favor with those individuals in such a way that could have positive financial and professional ramifications for AUSA Cruz's wife.

The only solution to the concerning issues triggered by AUSA Cruz's attendance at the Ballard Partners party is disqualification. Under the *Norton* test, there clearly exists a "reasonable possibility that some specifically identifiable impropriety did in fact occur," and "the likelihood of public suspicion or obloquy . . . outweigh[s] the social interests that will be served by the attorney's continued participation in the case." 689 F.2d at 942. Imagine, for instance, the following scenario at trial: defense counsel cross-examines a Ballard Partners witness about potential bias or interest. The jury then learns that the lead prosecutor was at a birthday party at that witness's employer's

7

house just weeks prior. This would be highly damaging to the perceived credibility of the prosecution. The mere possibility of that impression is enough to justify disqualification now, before any taint attaches to the trial.

### III. AUSA Cruz's wife has a history of adverse political interactions with both Defendants.

AUSA Cruz's wife has been a prominent figure in local politics and government. Notably, she served as Chief of Staff to former Miami-Dade County Commissioner Jose "Pepe" Diaz during a period when Commissioner Diaz and Defendant Rivera were well-known political adversaries. Their rivalry involved significant disputes over policy and governance, and Mrs. Lievano Cruz was directly aligned with Commissioner Diaz's opposition to Defendant Rivera. More directly, Defendant Nuhfer had a long professional and social relationship with Mrs. Lievano Cruz dating back to the late 1990s. That relationship eventually soured, and the two found themselves on opposite sides of multiple political campaigns, lobbying efforts, and local initiatives during the years since. These adversarial interactions were not minor; they occurred in the very same social and political circles implicated in this case. In short, Mrs. Lievano Cruz has been personally and professionally at odds with both Defendants.

This history gives rise to a reasonable question whether AUSA Cruz can be wholly impartial in prosecuting either Defendant, when his own spouse has been embroiled in conflicts with each of them and is connected to figures who may benefit from a vigorous prosecution. AUSA Cruz, consciously or not, may press the case more zealously against family foes than he would otherwise. Or he may have access to extrajudicial information via his spouse's experiences and contacts. At the very least, the public might reasonably suspect that AUSA Cruz's prosecutorial decisions are influenced by the antagonistic political history between his wife, on the one hand,

and Defendants, on the other. For the reasons already explained in the previous two sections, the only solution here is disqualification.

### IV. AUSA Cruz appears to have a strong personal animus against Defendant Nuhfer's lead counsel.

Finally, an alarming report has surfaced that AUSA Cruz himself expressed a personal grudge against Defendants' lead counsel. According to information received by the defense, AUSA Cruz remarked that he was "looking forward to the opportunity to convict a Markus client and put Markus in his place," or words to that effect. Again, David Oscar Markus is lead defense counsel for Defendant Nuhfer. Such a statement, if made, suggests that Mr. Cruz is approaching the case with the improper motive of scoring a personal victory over a particular defense attorney regardless of how the evidence shakes out. This raises a profoundly troubling specter of personal animus. After all, the prosecution of any criminal case must be driven solely by the pursuit of justice, not by personal vendettas or professional rivalries. If a prosecutor views a defendant as merely a proxy to "get at" that defendant's attorney, the essential neutrality of the sovereign is lost. Indeed, just the possibility that AUSA Cruz's prosecutorial decisions would be colored by hostility toward Mr. Markus (as opposed to an impartial assessment of the evidence and law) is untenable.

If AUSA Cruz approaches this case with the mindset of wanting to defeat Mr. Markus personally, this creates at least two unacceptable risks: (1) he might take prosecutorial steps not because they are just or proportional, but because they would embarrass or disadvantage defense counsel (for example, refusing reasonable stipulations, making inflammatory remarks, or even pursuing charges with insufficient evidence in order to burden the defense); and (2) regardless of what he actually does, the defense (and public) will understandably worry that his every decision is driven by this vendetta, which in turn could necessitate satellite litigation about selective or vindictive prosecution claims. The entire focus of the trial could shift from the defendants' guilt

or innocence to a sideshow about the prosecutor's motives. That is not in the interest of justice or judicial economy.

A prosecutor's personal animus towards a defendant's lawyer independently violates the Due Process Clause of the Fifth Amendment. As the Supreme Court reiterated in *United States v. Goodwin*, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" 457 U.S. 368, 372 (1982) (quoting *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363 (1978)). And here, AUSA Cruz would be effectively punishing Defendant Nuhfer—by prosecuting her in a manner different than he would otherwise—based simply on the fact that she selected a particular attorney—Mr. Markus—to represent her.

The Southern District of Florida's decision in *United States v. Shaygan*, 661 F. Supp. 2d 1289 (S.D. Fla. 2009), is illustrative.[1] There, personal animus drove another Southern District of Florida prosecutor to take inappropriate actions in a case against both the defendant and the defendant's attorneys. As the Court stated, any actions taken by a prosecutor due to his "displeasure and ill will" towards a criminal defendant's attorney "constitute unethical behavior not befitting the role of a prosecutor." *Id.* at 1314. Indeed, "[o]ur system of criminal justice cannot long survive unless prosecutors strictly adhere to their ethical obligations [and] avoid even the appearance of partiality . . . [I]t is the responsibility of the United States Attorney and his senior staff to create a culture where 'win-at-any-cost' prosecution is not permitted" *Id.* at 1292. Allowing AUSA Cruz to remain on the current case creates an undue risk that AUSA Cruz will make prosecutorial decisions—both minor and major—that are motivated not by his desire to see justice

---

[1] Although the Eleventh Circuit vacated Judge Gold's award of attorney's fees and costs to the criminal defendant, the court did not disturb Judge Gold's observations and conclusions about the glaring impropriety of a prosecutor having a personal animus towards a criminal defendant's lawyer. *See United States v. Shaygan*, 652 F.3d 1297 (11th Cir. 2011).

done, but rather by his desire to punish Defendant Nuhfer simply for the fact that she retained a particular lawyer. This cannot be.

### V. Even though each of these four issues independently warrants AUSA Cruz's disqualification, their cumulative effect is overwhelming, especially in such a high-profile case.

Each of the above circumstances is serious in its own right; collectively, however, they constitute an overwhelming justification that AUSA Cruz must be disqualified. When one prosecutor sets off multiple alarm bells—social entanglement with witnesses, spousal financial overlap with interested parties, political conflict, and alleged personal animus—the result is the profound appearance of conflict and compromised impartiality.

Furthermore, this is not a case that will be tried in a nearly empty courtroom, unnoticed by the outside world. Instead, this is a high-profile, highly sensitive, and politically charged prosecution that has been written about extensively by the press. Defendants and many of the witnesses are public figures, and the allegations involve political lobbying activity in relation to Venezuela, a country that has been dominating the news locally, nationally, and internationally over the last several weeks. While the appearance of even-handed justice must be scrupulously maintained in every case, it would be exceptionally damaging to the criminal justice system to abandon such care in a case that will be so closely followed by the public. For many such citizens, this case may be their first—and perhaps last—exposure to the federal criminal justice system, and what they observe they will impute to this country's criminal justice system as a whole.

[SPACE INTENTIONALLY LEFT BLANK]

**VI.    The disqualification of AUSA Cruz—who joined the prosecution team 37 months into a 38-month-old prosecution—will have no effect, prejudicial or otherwise, on the government.**

Finally, we note that disqualifying AUSA Cruz will not prejudice the Government. He was a very recent addition[2] to a robust, competent, and experienced prosecution team that has already been handling this case for over three years. The other prosecutors who have been involved in this case from the outset and are fully capable of continuing without him, and—to the degree that team needs additional support—the United States Attorneys' Office for the Southern District of Florida is loaded with experienced and skilled prosecutors who could fill in for AUSA Cruz, especially since trial is not yet underway.

\* \* \*

WHEREFORE, Defendants David Rivera and Esther Nuhfer respectfully ask that Court grant this Motion and disqualify AUSA Roger Cruz from any further participation in this case. The integrity of the proceedings and the Defendants' right to a fair trial free from conflicts of interest or the appearance of impropriety require nothing less, especially because AUSA Cruz only recently joined the case and can be easily replaced. The Defendants also request any further relief the Court deems just and proper, including such protective and remedial measures (*e.g.*, screening of tainted information, if any, obtained by AUSA Cruz) as may be necessary to ensure that the prosecution going forward is unaffected by the issues described above.

---

[2] Again, AUSA Cruz filed a notice of appearance [ECF No. 317] on January 5, 2026.

**Respectfully submitted on January 30, 2026,**

| | |
|---|---|
| **JONES WALKER LLP**<br>201 S. Biscayne Blvd., Suite 3000<br>Miami, FL 33131<br>Tel: (305) 679-5700<br>By:   */s/ Edward R. Shohat*<br>        **Edward R. Shohat**<br>        Florida Bar No. 152634<br>        eshohat@joneswalker.com<br>        **David S. Weinstein**<br>        Florida Bar No. 749214<br>        dweinstein@joneswalker.com<br>        **Thomas P. Bardenwerper**<br>        Florida Bar No. 1044458<br>        tbardenwerper@joneswalker.com<br><br>*Counsel for David Rivera* | **MARKUS/MOSS PLLC**<br>40 N.W. Third Street, PH1<br>Miami, FL 33128<br>Tel: (305) 379-6667<br>By:   */s/ David Oscar Markus*<br>        **David Oscar Markus**<br>        Florida Bar No. 119318<br>        dmarkus@markuslaw.com<br>        **A. Margot Moss**<br>        Florida Bar No. 91870<br>        mmoss@markuslaw.com<br>        **Melissa Madrigal**<br>        Florida Bar No. 93241<br>        mmadrigal@markuslaw.com<br><br>*Counsel for Esther Nuhfer* |

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 88.9(a), undersigned counsel certifies that he has conferred with AUSA Harold Schimkat who opposes the relief sought in this motion.

>                                   */s/ Edward R. Shohat*
>                                   Edward R. Shohat