IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:22-cr-20552-DAMIAN/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

DAVID RIVERA and ESTHER NUHFER,

    Defendants.

_____/

**DEFENDANTS' REPLY IN SUPPORT OF THEIR JOINT MOTION [ECF NO. 327] TO DISQUALIFY ASSISTANT UNITED STATES ATTORNEY ROGER CRUZ**

The irony here is impossible to ignore. The core allegation in this case is that Mr. Rivera and Ms. Nuhfer committed crimes by *failing to disclose* alleged agency relationships. Yet the government itself *failed to disclose* serious and disqualifying conflicts that go directly to prosecutorial impartiality. These were not trivial or technical matters—they were significant conflicts that should have been affirmatively disclosed and addressed, but instead had to be uncovered by the defense. That failure is particularly striking given the government's conduct earlier in this very case, when it appropriately disclosed a potential conflict involving prosecutor David Ryan and a relative's representation of certain witnesses. The defense did not believe that issue warranted Court intervention, but the government did the right thing by raising it. Against that backdrop, the government's silence here is deeply troubling. In a prosecution premised on nondisclosure, the government's own nondisclosure of conflicts while blustering about beating defense counsel undermines confidence in the fairness of these proceedings and heightens, rather than alleviates, the ethical concerns that require disqualification.

#110732131v2

## PRELIMINARY STATEMENT

The government uses its Response [ECF No. 339] to delve into issues completely unrelated to the Motion. *See* Response at 2–3. Specifically, the government decries Defendants' efforts to have the non-meritorious charges against them either dismissed by this Court or dropped by the Department of Justice ("DOJ"). In other words, the government appears to be frustrated that Defendants have not rolled over and pled guilty to crimes that they did not commit. But because the government decided to mention the December 3, 2025, meeting with the U.S. Attorney's Office for the Southern District of Florida, Defendants would like to provide a bit more detail.

Attorney General Pamela Bondi issued a directive (the "Bondi Memo") to all of DOJ on February 5, 2025, that stated—in part—that "[r]ecourse to criminal charges under [FARA] . . . shall be limited to instances of alleged conduct similar to more traditional espionage by foreign government actors." Bondi Memo at 4. Here, it is undisputed that there are no allegations against either Defendant of "conduct similar to more traditional espionage." Accordingly, Defendants requested a meeting with the United States Attorney to understand why this case was still proceeding when FARA cases exactly like it—*see United States v. Enrique "Henry" Cuellar*, No. 24-cr-00224 [ECF No. 138] (S.D. Tex. Aug. 19, 2025)—were dropped by the government. To date, Defendants have not received an explanation. This can only mean one of two things:

A. The United States Attorney for the Southern District of Florida is prosecuting this case in direct violation of Attorney General Bondi's explicit orders (which seems unlikely); *or*

B. The Attorney General has decided to make an exception to her own directive and prosecute Rivera and Nuhfer for reasons unknown, a decision—that if true—would raise significant concerns of a selective and vindictive prosecution.

Either scenario should be distressing to anyone who believes in the integrity of the criminal justice system, and—as a matter of logic—one of these scenarios must be true.

2

**ARGUMENT**

Defendants seek to protect the integrity and perceived fairness of a criminal prosecution. The government's Response does not meaningfully grapple with the governing principle that "justice must satisfy the appearance of justice," *Offutt v. United States*, 348 U.S. 11, 14 (1954), and that prosecutors, like all public servants, must avoid circumstances that cause reasonable observers to question their impartiality. Instead, the government distorts the applicable legal framework and falsely denies the factual allegations.

**I.  The government has distorted the legal framework that governs the disqualification of federal prosecutors.**

The government has misrepresented the law governing the disqualification of federal prosecutors. Specifically, the government describes in detail the financial-conflict rules (18 U.S.C. § 208 and 5 C.F.R. § 2635.402), *see* Response at 9–10, while glossing over the appearance-of-bias rules (5 C.F.R. § 2635.502), *see id.* at 10. This sleight of hand, however, cannot go unchecked. After all, Defendants are not obligated to *prove* that AUSA Cruz has conflicts of interest that merit his disqualification—although Defendants believe they have done so for the reasons articulated below—but Defendants are merely obligated to establish that there exists an *appearance of bias*. *See* 5 C.F.R. § 2635.502 ("When an employee knows that a person with whom the employee has a covered relationship is or represents a party to a particular matter involving specific parties, and the employee determines that *the circumstances would cause a reasonable person with knowledge of the relevant facts to question their impartiality in the matter*, the employee should not participate in the matter unless the employee has received a determination from the agency designee regarding the *appearance problem*[.]" (emphases added)). In other words, the dispositive issue before this Court is not whether AUSA Cruz and his wife's professional prospects and economic standing are

#110732131v2

tied to the success of Ballard Partners, but whether there exists *an appearance* of such a symbiotic relationship.

The government also tries to say that AUSA Cruz's conflicts of interest are much ado about nothing since he supposedly ran the issue up the chain of command and received a favorable "determin[ation]" from "the General Counsel's Office for Executive Office of the United States Attorneys." Response at 2. First of all, this development was not relayed to undersigned counsel—only a perfunctory email from AUSA Harold Schimkat that "[w]e've reviewed the matter and have reached a final decision that a recusal is not in order." Second—and far more importantly—the determination of the General Counsel's Office is meaningless if that entity was provided the same faulty, incomplete, and (arguably) deceptive information that the government has put forth in its Response. At the very least, if the issue of DOJ approval is important to the Court after it considers the evidence laid out below, the Court must hold an evidentiary hearing on the matter instead of taking the government's word that no conflict (or appearance of conflict) exists.

> **II.    The government has not only whitewashed (or arguably falsely denied) Defendants' factual allegations, it has also repeatedly misrepresented the significance of these allegations.**

> *1. It defies reason to think that Ms. Lievano-Cruz has not had extensive professional interactions with Ballard Partners given their mutual lobbying interests.*

The government's denial of any substantial overlap between Ms. Lievano-Cruz's professional endeavors and those of Ballard Partners is patently false for the following reasons:

- **2014-2017:** Ms. Lievano-Cruz worked for Florida East Coast Industries as Vice President of Corporate Development at the same time that Ballard Partners was the Florida lobbyist for Florida East Coast Industries. *See* **Exhibit 1** (Ms. Lievano-Cruz's LinkedIn Profile); **Exhibit 2** (Excerpt from the Florida Legislature's 2014–2017 Registrations by Principal Name).

- **2024:** Ms. Lievano-Cruz was Vice President of Corporate Development and registered to lobby for Florida East Coast Industries. *See* **Exhibit 3** (Ms. Lievano-Cruz's Profile from the Miami-Dade County Lobbyist Reporting

System) at 2. At the same time, Ballard Partners—and Jose Felix Diaz[1] specifically—was registered to lobby for Friends of the Underline, *see* **Exhibit 4** (Diaz's Profile from the Miami-Dade County Lobbyist Reporting System) at 6, an organization created to increase Metrorail ridership. These efforts supported Miami Central Station and the Brightline, the latter of which is owned by Florida East Coast Industries.

- **2024:** Ms. Lievano-Cruz was registered to lobby for Florida East Coast Railway LLC. *See* **Exhibit 3** at 2. At the same time, Ballard Partners—and Jose Felix Diaz specifically—was registered to lobby for rock mining company Titan America LLC, *see* **Exhibit 4** at 17, whose limestone and aggregate is transported by The Florida East Coast Railway.

- **2025:** Ms. Lievano-Cruz was registered to lobby for Brightline Trains, *see* **Exhibit 3** at 2, and affiliate MDC Commuter, LLC, *see id.* at 3. At the same time, Ballard Partners—and Jose Felix Diaz specifically—was registered to lobby for Friends of the Underline, *see* **Exhibit 4** at 6, an organization created to increase Metrorail ridership linking to the Miami Central Station and the Brightline (which—again—is owned by Florida East Coast Industries).

- **2025:** Ms. Lievano-Cruz was registered to lobby for Florida East Coast (FEC) Railway LLC. *See* **Exhibit 3** at 2. At the same time, Ballard Partners, and Jose Felix Diaz specifically, was registered to lobby for rock mining company Titan America LLC, *see* **Exhibit 4** at 17, whose limestone and aggregate is transported by The Florida East Coast Railway (FEC).

- **2025:** Ms. Lievano-Cruz was registered to lobby before the Greater Miami Expressway Authority. *See* **Exhibit 5** (the GMX Lobbyist Registry). At the same time, Ballard Partners—and specifically Jose Felix Diaz—was also registered to lobby before the Greater Miami Expressway Authority. *See id.*

- **2025:** Ms. Lievano-Cruz was registered to lobby for rock mining company White Rock Quarries. *See* **Exhibit 3** at 4. At the same time, Ballard Partners—and specifically Jose Felix Diaz—was registered to lobby for rock mining company Titan America. *See* **Exhibit 4** at 17.

- **2026:** Ms. Lievano-Cruz is registered to lobby for Brightline Trains and affiliate MDC Commuter, LLC. *See* **Exhibit 3** at 2–3. At the same time, Ballard Partners—and Jose Felix Diaz specifically—is registered to lobby for Friends of the Underline, which—again—benefits Miami Central Station and the Brightline. *See* **Exhibit 4** at 6.

---

[1] Mr. Diaz is a senior partner at Ballard Partners and—as discussed more fully below—is also a neighbor and close personal friend of AUSA Cruz and his wife.

5

- **2026:** Ms. Lievano-Cruz is registered to lobby before the Greater Miami Expressway Authority. *See* **Exhibit 5**. At the same time, Ballard Partners—and specifically Jose Felix Diaz—is also registered to lobby before the Greater Miami Expressway Authority. *See id.*

- **2026:** Ms. Lievano-Cruz is registered to lobby for rock mining company White Rock Quarries. *See* **Exhibit 3** at 4. At the same time, Ballard Partners—and specifically Jose Felix Diaz—is registered to lobby for rock mining company Titan America. *See* **Exhibit 4** at 17.

There can be absolutely no dispute, then, that Ms. Lievano-Cruz and Ballard Partners operate in the same exclusive and rarefied ecosystem of regulated, lucrative, and politically sensitive matters.[2] The government nonetheless asks this Court to overlook this long history of overlapping and—in some cases—intertwined lobbying enterprises and somehow conclude that Ms. Lievano-Cruz and Ballard Partners did not interact or share financial or professional interests in the success of the mutual lobbying efforts. This is hard to believe. But even if this assertion is somehow true, there nonetheless exists more than enough evidence to create the *appearance* of a conflict of interest and thus necessitate AUSA Cruz's disqualification.

   2. *The government misses the point regarding the recent birthday party hosted by Jose Felix Diaz, and AUSA Cruz's representations about that party and Mr. Diaz do not seem believable.*

The government's Response regarding the January 17, 2026, birthday party hosted by a senior, managing partner at Ballard Partners is another example of misdirection. The government tries to minimize this event on the grounds that "there were no potential witnesses" in attendance. Response at 6. This misses the point, as the issue is if "[a] reasonable observer [w]ould question

---

[2] Contrary to the government's Response, Defendants have not alleged that Ms. Lievano-Cruz has any contractual relationship with Ballard Partners. Rather, Defendants' allegations of conflict (and the appearance of conflict) is based on Ms. Lievano-Cruz's intertwined and overlapping business interests with Ballard Partners, which—as documented here—are quite substantial.

whether such off-duty fraternization with the employer of multiple key witnesses might compromise the prosecutor's impartiality." Motion at 7. The government's Response does not directly address, much less undercut, this basic proposition.

Furthermore—and far more concerning—is the government's assertion that AUSA Cruz was not aware that the party's host—Jose Felix Diaz—works at Ballard Partners. *See* Response at 6. This is a preposterous claim, especially when it comes after the admissions that (i) Jose Felix Diaz is a "personal friend" and neighbor of AUSA Cruz and his wife; (ii) their children are on the same high school sports team; and (iii) they "share a carpool." *Id.* Combine these statements with the fact that both AUSA Cruz and his wife inhabit the rarified world of South Florida politics and business—one in which Mr. Diaz himself is personally involved according to the exhibits set out above and appended hereto. Moreover, as is crystal clear from Mr. Diaz's LinkedIn Profile, *see* **Exhibit 6**, and the "Our Team" page on Ballard Partner's website, *see* **Exhibit 7**, his public facing and networking persona is that he is the managing partner of Ballard's Miami office. Combined with the close lobbying tie ins between Ms. Lievano-Cruz and Jose Felix Diaz set forth above, this supposed ignorance by AUSA Cruz and his wife of the identity of their close friend and neighbor's employer is—again—very hard, if not impossible, to believe. The evidence included here establishes not only the appearance of a conflict, but the <u>existence of a real conflict</u> on the part of AUSA Cruz such that he must be disqualified.[3]

> *3. Ms. Nuhfer and Ms. Lievano-Cruz do indeed have a longstanding professional relationship that has—at times—been adversarial.*

The government asserts that Ms. Lievano-Cruz did not work closely with Ms. Nuhfer and that the two lack a long-standing relationship. That assertion is demonstrably false. The evidence

---

[3] At the very least, an evidentiary hearing is in order.

establishes that Ms. Lievano-Cruz and Ms. Nuhfer worked closely for years—a fact corroborated by multiple witnesses and documentary proof.

In or about December 2002, Ms. Nuhfer began working in the Communications Department for Miami-Dade County. As Special Events Coordinator, she was responsible for organizing the County's special events, including those involving Commissioner Jose "Pepe" Diaz. In that role, Ms. Nuhfer worked extensively with the Commissioner's Office.

Ms. Nuhfer worked directly and closely with Ms. Lievano-Cruz, who at the time worked in Commissioner Diaz's office. Their collaboration included coordinating official events in Miami. Ms. Nuhfer, Ms. Lievano-Cruz, and others also traveled together to Tallahassee on several occasions in 2003 and 2004 for Miami-Dade Days. These are annual two-day advocacy events held during the Florida Legislative Session, where over 1,000 leaders from the public and private sectors gather to promote Miami-Dade County's legislative priorities. Ms. Nuhfer, Ms. Lievano-Cruz, and others from Miami-Dade County and Commissioner Diaz's office also socialized.

Multiple witnesses confirm this working relationship. Carolina Sivoli, who worked alongside Ms. Lievano-Cruz in Commissioner Diaz's office, recalls that Ms. Lievano-Cruz worked closely with Ms. Nuhfer in the early 2000s. *See* **Exhibit 8** (Declaration of Carolina Sivoli). Guerlin Escar Mangos, another employee in Commissioner Diaz's office, likewise recalls that the Commissioner's staff—which included Ms. Lievano-Cruz—worked alongside Ms. Nuhfer while Ms. Nuhfer served as the County's events coordinator. *See* **Exhibit 9** (Declaration of Guerlin Escar-Mangos). Cire Andino, Ms. Nuhfer's supervisor in the Communications Department of Miami-Dade County, similarly recalls coordinating multiple special events over several years with Ms. Nuhfer and Ms. Lievano-Cruz (while Ms. Lievano-Cruz was in the Commissioner's Office). *See* **Exhibit 10** (Declaration of Cire Andino).

The relationship between Ms. Lievano-Cruz and Ms. Nuhfer continued after Ms. Nuhfer left Miami-Dade County in approximately May of 2004 to work in political fundraising. During that period, while Ms. Lievano-Cruz remained in the Commissioner's Office, the two continued to interact and, at times, did so in adversarial contexts. For example, one dispute arose from an endorsement of Tomas Regalado's candidacy that was approved by Commissioner Diaz but was seemingly opposed by Ms. Lievano-Cruz. *See* **Exhibit 11** (Nuhfer-Lievano-Cruz Email dated 07/16/2023). On another occasion, Ms. Lievano-Cruz declined to move legislation advanced by Ms. Nuhfer to the floor, which resulted in a direct confrontation between them. *See* **Exhibit 12** (Nuhfer-Lievano-Cruz Email dated 10/16/2014).

Ms. Lievano-Cruz has also attended fundraisers hosted by Ms. Nuhfer and made contributions on behalf of FECI. *See* **Exhibit 13** (Nuhfer-Lievano-Cruz Email dated 06/14/2018). For example, in February 2020, Ms. Lievano-Cruz attended a fundraiser for the reelection of Commissioner Joe Martinez. *See* **Exhibit 14** (Nuhfer-Lievano-Cruz Email dated 02/18/2020).

Despite these undisputed facts, the government's Response relies solely on conclusory assertions and is unsupported by any affidavit from Ms. Lievano-Cruz. The evidentiary record, however, squarely refutes the government's position that Ms. Lievano-Cruz and Ms. Nuhfer did not have a long-standing relationship, which led to various adversarial interactions.

    4. *The government does not deny the animus allegations and again misconstrues the issue.*

The government does not deny that AUSA Cruz made the statement that he "looked forward to the opportunity to convict a Markus client and put Markus in his place," or words to that effect. The government instead hedges (without including an affidavit from AUSA Cruz) by stating that AUSA Cruz "does not believe that he ever said that." Response at 6. The government then says that even if AUSA Cruz did make such a statement, he should not be disqualified because

9

the statement was made about defense counsel—as opposed to Defendants themselves—and "in a context that was unrelated to the defendant's criminal prosecution." Response at 11. The second part of this argument is simply wrong—the statement at issue was made *exactly* in relation to Defendants' criminal prosecution—indeed, that was the whole point of the statement. And as to the first part of the argument, there is no caselaw stating that a prosecutor can remain on a case just because his strong personal animus is towards a defendant's lawyer and not towards the defendant himself. At the end of the day, it is the defendant who pays the price regardless, as it is the defendant whose chances of being convicted (or unjustifiably sentenced) increase when a prosecutor is acting not solely out of an interest to uphold the law, but also out of an interest to achieve victory at all costs against a particular defense attorney.

In any event, the government is also wrong to suggest that *Shaygan* did not involve personal animus toward defense counsel. Judge Gold made explicit factual findings that the subject AUSA's conduct was driven by personal hostility toward the defense team, and that this animus led that AUSA to engage in unethical decision-making during the prosecution. See *United States v. Shaygan*, 652 F.3d 1297 (11th Cir. 2011). The Eleventh Circuit did not disturb those factual findings; it merely held that such misconduct was not compensable under the Hyde Amendment's narrow fee-shifting standard. That procedural holding does not minimize the underlying danger Judge Gold identified: prosecutorial discretion warped by personal animus. Nor does it matter, as the government suggests, that *Shaygan* involved a different prosecutor. The principle is the same regardless of the name on the indictment. Prosecutorial decisions must be driven by evidence and law, not by personal rivalry or hostility toward defense counsel. When animus enters the calculus, the integrity of the proceeding is compromised, and the appearance of justice is irreparably harmed.

### III. The cumulative effect of these issues mandates AUSA Cruz's disqualification.

Finally, the government does not engage with Defendants' argument that where there is smoke here, there, and everywhere, the probability (and thus the appearance) of there being fire somewhere becomes too great to ignore. After all, any analysis of the *appearance* of conflict is necessarily cumulative. While a reasonable observer might discount the risk of bias if presented with just *one* of the preceding red flags, that same reasonable observer will eventually suspect bias after being presented with red flag after red flag after red flag.

Finally, the government has no rebuttal to the simple fact that AUSA Cruz has joined the prosecution team 37 months into a 38-month-old case. What he can add to that team is drastically outweighed by the institutional damage his presence may do. Again, AUSA Cruz's appearance in this case on behalf of the government raises serious concerns about the impartiality of our federal justice system here in South Florida.

In conclusion, Defendants ask that this Honorable Court grant their Joint Motion to Disqualify AUSA Cruz given the multiple grounds for the appearance of a conflict of interest.

**Respectfully submitted on February 11, 2026:**

| JONES WALKER LLP | MARKUS/MOSS PLLC |
|---|---|
| 201 S. Biscayne Blvd., Suite 3000 | 40 N.W. Third Street, PH1 |
| Miami, FL 33131 | Miami, FL 33128 |
| Tel: (305) 679-5700 | Tel: (305) 379-6667 |
| By   */s/ Edward R. Shohat* | By:   */s/ David Oscar Markus* |
| **Edward R. Shohat** | **David Oscar Markus** |
| Florida Bar No. 152634 | Florida Bar No. 119318 |
| eshohat@joneswalker.com | dmarkus@markuslaw.com |
| **David S. Weinstein** | **A. Margot Moss** |
| Florida Bar No. 749214 | Florida Bar No. 91870 |
| dweinstein@joneswalker.com | mmoss@markuslaw.com |
| **Thomas P. Bardenwerper** | **Melissa Madrigal** |
| Florida Bar No. 1044458 | Florida Bar No. 93241 |
| tbardenwerper@joneswalker.com | mmadrigal@markuslaw.com |
| *Counsel for David Rivera* | *Counsel for Esther Nuhfer* |

#110732131v2