UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

No. 22-cr-20552-DAMIAN/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DAVID RIVERA and ESTHER NUHFER,

    Defendants.
_____/

**DEFENDANT DAVID RIVERA'S RESPONSE IN OPPOSITION
TO NEIL SCHUSTER'S MOTION TO QUASH SUBPOENA**

On February 24, 2026, third-party attorney Neil Schuster[1] (and his law firm, Neil Schuster, P.A.) filed a Motion to Quash Subpoena [ECF No. 369] (the "Motion"). Defendant David Rivera therefore files this Response in Opposition and states as follows:

### INTRODUCTION

As a threshold matter, Mr. Rivera would like to narrow for this Court and for Mr. Schuster exactly what Mr. Rivera seeks through the subpoena: (1) the portion of the typed statement (the "Schuster Memo") that Mr. Schuster read to and/or summarized for law enforcement agents and prosecutors during a February 26, 2020, interview, and a March 18, 2020, phone call with an investigating agent; and (2) Mr. Schuster's *possible* trial testimony limited to the single issue of whether his client—Hugo Perera—supplied him with certain information that Mr. Schuster

---

[1] As this Court is aware, Mr. Schuster has been—and remains—the attorney for Hugo Perera, the government's key witness in this case.

#111259305v2

subsequently published to the government in written form (the "Written Disclosure").[2] As to the latter request, this testimony would be limited to the sole purpose of impeaching Mr. Perera should he testify falsely in connection with the substance of that document consistent with Federal Rule of Evidence 613(b). *None of the aforementioned information is privileged.*

Given the limited scope of the subpoena[3], much of Mr. Schuster's Motion needs no response. For example, his extended discussion of the recent litigation surrounding the subpoena to Susan Wiles is irrelevant, as the two issues are apples and oranges. Ms. Wiles was subpoenaed because she was personally involved in the underlying events that gave rise to this prosecution; Mr. Schuster has been subpoenaed because he is in possession of a non-privileged document (the Schuster Memo) and can testify as to a non-privileged matter (the information underlying the Written Disclosure), both of which are directly relevant to impeaching the government's chief witness, Mr. Perera.

Furthermore, Mr. Schuster's lengthy discussion about how denying his Motion would somehow open the floodgates to defense attorneys being subpoenaed anytime their clients are government witnesses is inapposite and without merit. The current situation is unusual, as defense attorneys rarely waive privilege as to information that is highly relevant to a criminal trial in the way that Mr. Schuster has done here. Denying the Motion will therefore have no discernible impact on the defense bar in Florida.

In short, this Court only needs to answer the following questions to adjudicate the Motion:

1. Is the specific information that Mr. Schuster published to third parties—specifically, federal agents and prosecutors—privileged?

---

[2] If necessary, Mr. Rivera can provide this Written Disclosure to the Court *in camera*.

[3] To the extent this Court would like Mr. Rivera to serve an amended version of the subpoena on Mr. Schuster that is limited to the items just described, Mr. Rivera will do so.

   2. Is such information relevant, material, and favorable to Mr. Rivera?

Because the answers to those questions are "no" and "yes," respectively, this Court must deny Mr. Schuster's Motion to Quash and order him to comply with the (narrowed) subpoena.

**ARGUMENT**

**I. Mr. Schuster waived any work-product protections or attorney-client privilege that may have existed as to information he published to the government.**

  *i.*  *The Schuster Memo*

On February 26, 2020, the FBI and federal prosecutors interviewed Mr. Perera and his attorney, Mr. Schuster. According to the 302 report produced by one of the FBI special agents in attendance, "[t]he CHS [*i.e.*, **Mr. Perera**] prepared a typed statement [the Schuster Memo] which was read to the group by attorney Neil Schuster." 302 Report at 1. And just under a month later—on March 18, 2020—that same FBI agent contacted Mr. Schuster "who summarized the letter for purposes of [the 302] report." *Id.* The FBI agent then wrote down—in the same 302 report—a summary of that summary. *See id.* The Schuster Memo appears to have been a long and detailed overview of Mr. Perera's interactions with Mr. Rivera during the relevant time period, an overview that Mr. Rivera believes is substantially inaccurate.

Mr. Schuster claims that the Schuster Memo—contrary to what the FBI agent stated in the 302 report—was, in fact, written by Mr. Schuster. *See* Motion at 14 ("The FBI 302 . . . is factually incorrect—Attorney Schuster prepared the document, ***not*** witness Perera."). However, Mr. Schuster himself admits that he "represented to the government, in essence, that the statement 'was Perera's.'" *Id.* Nevertheless, Mr. Schuster claims that he "prepared" the memo, "delivered the statement himself, alone, using the statement in part, after speaking with Perera." *Id.* But even if this Court accepts Mr. Schuster's eleventh-hour attempt to cloak the Schuster Memo in the

3

protective robes of the work-product privilege, that privilege was nonetheless waived because Mr. Schuster disclosed the contents of the Schuster Memo to a third party—in this case, the government. *See United States v. Zahn*, No. 22-cr-00023, 2022 U.S. Dist. LEXIS 227927, at *26 (M.D. Fla. Dec. 19, 2022) ("[V]oluntary disclosure to a government agency to effect a goal by the disclosing party other than assistance in prospective or ongoing litigation . . . generally constitutes waiver." (quoting *Brown v. NCL (Bah.), Ltd.*, 155 F. Supp. 3d 1335, 1340 (S.D. Fla. 2015)); *id.* at *27 (noting that a party waives its work-product protection when it "submit[s] a report to the prosecutor in an attempt to avoid prosecution" (citing *In re Grand Jury Proceedings*, No. M-11-188, 2001 U.S. Dist. LEXIS 2425, at *61–62 (S.D.N.Y. Mar. 9, 2001)). Mr. Perera, after all, was only speaking with law enforcement in an effort to avoid prosecution himself, as Mr. Perera was intricately involved in the events that underlie this case.

      The cases Mr. Schuster cites for the proposition that "[d]ocuments that attorneys prepare for their client's interview sessions [with the government]—such as the Schuster Memo—are not discoverable," *id.* at 15, are easily distinguishable. In *United States v. Shah*, the criminal defendant who had served the subpoena on counsel for a government witness was requesting "[a]ll attorney notes or other documents prepared by [counsel] from each Proffer Session attended by [the client] in connection with this Matter." No. 19-cr-00833, 2022 U.S. Dist. LEXIS 78360, at *6–8 (S.D.N.Y. Apr. 29, 2022). That is entirely different from the present situation; the criminal defendant in *Shah* was attempting to secure items created by the third-party attorney *during* the proffer session that were—apparently—*never disclosed to anyone*. Clearly that is not permissible. Likewise consider *United States v. Lischewski*, No. 18-cr-00203, 2019 U.S. Dist. LEXIS 190342 (N.D. Cal. Nov. 1, 2019). There, a criminal defendant sought "[a]ny notes, memoranda, or documents, memorializing or relating to communications with representatives of the United States

4

Department of Justice on or about December 16, 2016, in connection with your representation of [third party]." *Id.* at *2. Not only did this request lack any specificity, but again the defendant was seeking documents created by the third-party attorney that *had never been shared with anyone*. *United States v. Arias*, 373 F. Supp. 2d 311 (S.D.N.Y. 2005) is no different, as the defendant sought "notes taken by a [third-party] lawyer" *during* proffer sessions that, again, were *never shared*. Finally, in *Brown v. NCL*—which at least involved the disclosure of a work-product item to a third party (the police)—that item was not produced to law enforcement *voluntarily*. 155 F. Supp. 3d 1335, 1337 (S.D. Fla. 2015).

Mr. Schuster, however, relies most heavily on *United States v. Zahn*, No. 22-cr-00023, 2022 U.S. Dist. LEXIS 227927 (M.D. Fla. Dec. 19, 2022). But this distinguishable case actually explains in helpful detail why the scenario currently before this Court *does* result in the waiver of the work-product privilege. The two critical differences between *Zahn* and the present case are that (i) the *Zahn* memorandum was prepared *in anticipation of litigation*, and (ii) the third-party entity in *Zahn* was engaged in simultaneous civil litigation *in conjunction with the government* against one of the criminal defendants. *See id.* at *27 (finding that the memorandum in question was "absolutely privileged as opinion work product prepared in connection with the development of [the third party's] litigation and trial strategies in the civil action against [one of the defendants]" (emphasis added)); *id.* (noting that the criminal defendant was a "mutual adversary" given previously described, ongoing civil litigation that involved the government). Neither of these critical elements are present here; there is no indication (i) that the Schuster Memo was prepared *in anticipation of litigation* or (ii) that Mr. Perera and the government are working *together* in such litigation against Mr. Rivera. Instead, the Schuster Memo was prepared solely to summarize Mr.

5

#111259305v2

Perera's *voluntary* disclosures to law enforcement and prosecutors for the simple reason that Mr. Perera was trying to escape prosecution.

As to the first point, the *Zahn* court notes that "[t]he work product protections of Rule 26(b)(3) typically apply 'only to documents prepared in anticipated or ongoing litigation.'" *Id.* at *21 (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 471 (S.D.N.Y. 1993)). "In order for the work product doctrine to apply, the party asserting the doctrine must demonstrate that at the time the materials were created or drafted, the entity must have anticipated litigation." *Id.* (quoting *Schulte v. NCL Ltd.*, No. 10-cv-23265, 2011 U.S. Dist. LEXIS 9520, at *5 (S.D. Fla. Jan. 25, 2011)). Mr. Schuster has made no attempt to establish that the Schuster Memo was prepared in anticipation of litigation. *See* Schuster Affidavit [ECF No. 369-2] at 2 ("The Schuster Memo is a specific document that I prepared so that I could personally address the government during a meeting with my client."); *see also id.* (nowhere mentioning any anticipated litigation).

It follows, then, that because the Schuster Memo was not prepared in anticipation of *any litigation*, it certainly could not have been prepared in anticipation of litigation between Mr. Perera and the government, on the one hand, and Mr. Rivera on the other. While it is true that Mr. Perera and Mr. Rivera—and their respective companies—have been involved in civil litigation off and on during recent years, the government has no stake in those proceedings.[4] Therefore, because there is no overlap between the government's prosecution of Mr. Rivera for alleged FARA violations and Mr. Perera's civil litigation against Mr. Rivera regarding business disputes, Mr. Rivera is not a "mutual adversary" of Mr. Perera and the government. To conclude otherwise

---

[4] Undersigned counsel also believes that the civil litigation between Mr. Rivera and Mr. Perera has ended.

would lead to bizarre results, as any time an individual is simultaneously the subject of a criminal prosecution and litigant in a civil action—regardless of how unrelated the two proceedings are—the government and the civil adversary could join forces. That cannot be.

Because work-product protections are of no moment, here, this leaves just the attorney-client privilege. But Mr. Schuster waived that as well as to the portions of the Schuster Memo that he read to and summarized for the third-party law enforcement agents and federal prosecutors on both February 26, 2020, and March 18, 2020. The attorney-client privilege "is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987). "The purpose of the attorney-client privilege is to promote freedom of consultation between client and lawyer by eliminating the fear of subsequent compelled legal disclosure of confidential communications. However, at the point where attorney-client communications are no longer confidential, *i.e.*, where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege. For that reason, it has long been held that once waived, the attorney-client privilege cannot be reasserted." *Id.* (citations omitted). "The attorney-client privilege 'belongs solely to the client,' who may waive it either 'expressly or by implication.'" *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1313 (11th Cir. 2021).

Mr. Schuster, as the "proponent of the privilege, has the burden of proving its applicability," *Guarantee Ins. Co. v. Brokers, Inc.*, 300 F.R.D. 590, 596 (S.D. Fla. 2014) (citing *Hickman v. Taylor*, 329 U.S. 495, 510–12 (1947)), which he has failed to do here. And besides all of this, the Schuster Memo—which was written based on substantive information supplied by Mr. Perera—appears to have been prepared for the purpose of Mr. Perera's proffer to the government for which it was, in fact, used. Like a tax return prepared for filing, the Schuster Memo is simply

not a privileged document. *See MCC Mgmt. of Naples v. Arnold & Porter, LLP*, 2009 U.S. Dist. LEXIS 44992, at *71 (M.D. Fla. May 29, 2009) ("[A]ny information [the client] transmitted to [the attorney/accountant] for the purpose of preparing his tax returns, including the sources of his income, is not privileged information." (quoting *In re Grand Jury*, 842 F.2d 1223, 1224–25 (11th Cir. 1987))).

While there are exceptions in some jurisdictions to the rule that disclosure of a document to a third party waives the attorney-client privilege, none of those exceptions apply here. First, this was not an "inadvertent disclosure." *See Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 753 F. Supp. 936, 938 S.D. Fla. 1991). Second, the law enforcement agents and federal prosecutors were not "agents" of Mr. Perera or Mr. Schuster. *See Diamond Resorts U.S. Collection Dev., LLC v. U.S. Consumer Attys, P.A.*, 519 F. Supp. 3d 1184, 1199 (S.D. Fla. 2021). Third, the waiver here was not "court-ordered." *See Johnson*, 9 F.4th at 1313. And fourth, the "common-interest exception," *see United States v. Patel*, 509 F. Supp. 3d 1334, 1340 (S.D. Fla. 2020), does not apply here for the same reasons the "mutual adversary" doctrine does not apply in the work-product context.

In short, the contents of the Schuster Memo that were shared with law enforcement during (i) the February 26, 2020, interview with law enforcement and (ii) the follow-up March 18, 2020, phone call with law enforcement are not privileged and must be produced to Mr. Rivera as relevant, material, and favorable to his defense.

    ii.    *The Written Disclosure*

The same analysis applies to the *contents* of the Written Disclosure that Mr. Schuster sent on Mr. Perera's behalf to the government. The government's filter team has already provided the Written Disclosure to Mr. Rivera, so the issue here is not the production of the document itself, but rather Mr. Schuster's possible trial testimony about how he learned of the substantive content

8

that comprises it. In other words, Mr. Rivera intends to cross-examine Mr. Perera about the representations Mr. Schuster made on Mr. Perera's behalf in that Written Disclosure. Should Mr. Perera (i) deny that he ever provided such information to Mr. Schuster or (ii) state that the information conveyed in the Written Disclosure is incorrect, Mr. Rivera intends to call Mr. Schuster as a witness to impeach Mr. Perera. The line of questioning would be extremely limited, consisting—essentially—of only the following: *Did Mr. Perera provide you—Mr. Schuster—the information contained in this document? If so, is this document an accurate representation of that information?* To do so would be in keeping with Federal Rule of Evidence 613(b), which allows—once the witness has an opportunity to explain—for the admission of "extrinsic evidence of a prior inconsistent statement." Here, that extrinsic evidence would be the Written Disclosure and Mr. Schuster's testimony about it.

## II. The preceding items—(i) the Schuster Memo and (ii) Mr. Schuster's possible, limited testimony regarding the Written Disclosure—will be admissible at trial, as they are relevant, material, and favorable to Mr. Rivera's defense.

With the issues of privilege resolved, there is no disagreement that the impeachment evidence here would be admissible at trial, as it would clearly satisfy Federal Rule of Evidence 401. And while "the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses," it undisputably "guarantees him 'compulsory process for obtaining witnesses in his favor.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982) (quoting U.S. Const. 6th Amendment). The party issuing a subpoena under Rule 17 therefore "bear[s] the burden to show that the proposed witness's testimony would provide a 'material and plausible benefit to their case.'" *Id.* "[I]n the Sixth Amendment context[,] . . . evidence is material if its exclusion might prejudice the outcome of the defendant's case."

*United States v. Rosen*, 520 F. Supp. 2d 802, 811 (E.D. Va. 2007) (citing *Valenzuela-Bernal*, 458 U.S. at 867–69).

Here, there is no doubt that the portions of the Schuster Memo published to the government and Mr. Schuster's possible trial testimony as to the Written Disclosure would provide a "material and plausible" benefit to Mr. Rivera's case. As to the Schuster Memo, this is a critical document that has summarized Mr. Perera's story to the government, a story that is central to the government's case. Indeed, there would likely be no case if it were not for Mr. Perera's cooperation. But this story—suspects Mr. Rivera—is riddled with holes, inconsistencies, inaccuracies, and misrepresentations. Mr. Rivera cannot be forced to accept the FBI agent's summation of that story in the 302 Report, a summation, after all, that Mr. Schuster claims is incorrect as evidenced by his disagreement with that FBI agent over who prepared the Schuster Memo. In short, the Schuster Memo is classic impeachment evidence that must be disclosed—the non-privileged portions only, of course—to Mr. Rivera. *See e.g.*, *United States v. Scheer*, 168 F.3d 445, 451 ("[F]avorable, exculpatory or *impeachment* evidence is material[.]" (quoting *United States v. Noriega*, 117 F.3d 1206, 1218 (11th Cir. 1997) (emphasis added))); *United States v. Newton*, 44 F.3d 913, 918 (11th Cir. 1994) ("Evidence favorable to the accused includes impeachment evidence." (citing *United States v. Bagley*, 473 U.S. 667 (1985))).

The same analysis applies to the possible testimony of Mr. Schuster about the Written Disclosure. Again, if Mr. Perera denies having supplied Mr. Schuster with the information upon which Mr. Schuster's written disclosure to the DOJ was based, Mr. Schuster's testimony would be critical impeachment evidence—under Federal Rule of Evidence 613(b)—of *the* central government witness. It is hard to imagine more "material and favorable" evidence to Mr. Rivera.

#111259305v2

Because this testimony would not delve into privileged issues for the reasons previously discussed, Mr. Schuster must make himself available to be called to the witness stand.

\* \* \*

WHEREFORE, Defendant David Rivera asks that this Honorable Court (i) deny Neil Schuster's and Neil M. Schuster, P.A.'s Motion to Quash Subpoena [ECF No. 369] and (ii) order Mr. Schuster to produce the non-privileged portions of the Schuster Memo and to make himself available for live testimony during the trial.

**Respectfully submitted on March 4, 2026,**

**EDWARD R. SHOHAT, PA**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (786) 525-3621
By:   */s/ Edward R. Shohat*
      **Edward R. Shohat**
      Florida Bar No. 152634
      ed@edwardrshohat.com

**JONES WALKER LLP**
201 S. Biscayne Blvd., Suite 3000
Miami, FL 33131
Tel: (305) 679-5700
By:   */s/ David S. Weinstein*
      **David S. Weinstein**
      Florida Bar No. 749214
      dweinstein@joneswalker.com
      **Thomas P. Bardenwerper**
      Florida Bar No. 1044458
      tbardenwerper@joneswalker.com

*Counsel for David Rivera*

#111259305v2