UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cr-20552-DAMIAN/TORRES

UNITED STATES OF AMERICA

vs.

DAVID RIVERA and
ESTHER NUHFER,

        Defendants.
_____/

### RIVERA AND NUHFER'S EXPEDITED[1] MOTION TO TAKE CERTAIN DEPOSITIONS AND COMPEL PRODUCTION OF CERTAIN WRITTEN MATERIALS

#### INTRODUCTION

At 5:19 PM on Friday, March 13, 2026—the last business day before jury selection—the defense received a disclosure (**Exhibit 1**) from the government that stands in a category by itself in undersigned counsel's cumulative decades of experience. The government's key cooperating witness, Hugo Perera—an unindicted, uncharged, alleged co-conspirator who has sat on the sidelines of this prosecution since at least 2020 while the government built its case around his statements—has, together with his attorney, *submitted more than sixty substantive edits to the FBI 302 interview reports*[2] that memorialized his debriefings. Those reports span four interviews conducted between March 2020 and October 2021.

---

[1] For the reasons that will be explained in greater detail herein, adjudication of this motion by close of business on Wednesday March 18, 2026, will be necessary to allow the depositions to occur before opening statements.

[2] The defense counts 82 total changes to the interview reports, but some of these changes—like where Perera went to high school—are of no moment and do not concern defense counsel. This motion addresses the substantive changes to the reports done 5 years after the interviews and on the eve of trial.

#111381549v1

The government and the defense have spent years preparing for the upcoming trial. The government's theory of the case, its anticipated proof, its narrative at trial, and the defense's entire preparation for cross-examination have been shaped by the 302 reports as produced. And now, on the Friday before trial, ***all that preparation has been upended by a wave of after-the-fact revisions asserted not by the FBI agent who authored the original report but rather by the witness himself***—a man who, in the exact same disclosure (**Exhibit 1**), casually admits to having committed federal bank fraud. And unsurprisingly, the newly revealed "changes" to the 302 reports substantially alter Mr. Perera's statements, such that they have morphed from being highly favorable to the defense to being highly favorable to the government.

What happened here is, to put it plainly, extraordinary. In the many decades of federal practice, undersigned counsel has never seen a cooperating witness—let alone an unindicted, uncommitted, agreement-free, alleged co-conspirator—given the opportunity to sit with his own attorney and rewrite his FBI interview reports before trial. FBI 302 reports are the government's contemporaneous memorialization of what a witness said under interview conditions. They are the baseline against which trial testimony is measured, and thus they are the bedrock of cross-examination. ***FBI 302 reports are not a working draft to be workshopped by the witness and his lawyer on the eve of trial.*** *Cf. Norelus v. Denny's, Inc.*, 628 F.3d 1270 (11th Cir. 2010) (explaining in the civil context that a deposition is "not a take-home exam").

The damage to the defense is concrete, specific, and severe. The bulk of the edits do not involve minor clarifications or typographical corrections but instead include the following substantive changes:

- The wholesale removal of Mr. Perera's prior admission that the conduct at issue was illegal;

- the upgrade of dozens of uncertain "he thought" and "he did not recall" statements to confident "he knew" and "he remembered" assertions tailored to the government's theory;

- the addition of entirely new facts—including that Mr. Perera attended a consequential breakfast meeting—that were never in any 302 report previously produced to the defense;

- the deletion of exculpatory admissions about what Mr. Perera did not know; and

- the remarkable addition of a fresh admission that Mr. Perera manipulated a financial document (that has since become Government Exhibit 197) in 2017 to display a false name—conduct that constitutes federal bank fraud under 18 U.S.C. § 1344, was never disclosed to the defense, and which has never triggered a prosecution.

The government has hitched its wagon to this witness. ***Mr. Perera, after all, is the government's only so-called "co-conspirator" or "insider witness."*** The jury cannot fairly evaluate his testimony without knowing that his story is a moving target that he—in conjunction with his lawyer (and perhaps in conjunction with the government)—has rewritten just days before trial. And the defense cannot prepare effective cross-examination of a witness whose account has been fundamentally altered in more than sixty different ways on the eve of trial and under unknown and highly suspicious circumstances. This Court should act now, before opening statements, to level the playing field.

Accordingly, Mr. Rivera and Ms. Nuhfer respectfully move for: (1) a deposition of Hugo Perera before he testifies; (2) depositions of the FBI agents who authored the original 302 reports that have since been inexplicably altered; and (3) an order compelling the government to immediately produce all versions and drafts of the 302 reports, all correspondence between Mr. Perera's attorney and the government, and all other materials reflecting the editing process. Time is not an issue, as jury selection runs Monday and Tuesday (and possibly Wednesday), thus leaving Thursday and Friday available before opening statements.

## FACTUAL BACKGROUND

### I.     The Witness

Hugo Perera is *the* central figure in the government's case, as he is the government's only insider witness. The government intends to call him as a cooperating witness to provide testimony going to the heart of the charged conduct. Significantly, Mr. Perera has never been charged or indicted; he has no formal cooperation agreement with the government; and he has no proffer agreement and no immunity. He is, in legal terms, a free agent—an alleged co-conspirator who remains uncharged while Mr. Rivera and Ms. Nuhfer sit accused at the defense table.

### II.    The FBI 302 Reports

FBI agents interviewed Perera on at least four occasions over an approximately nineteen-month period: March 10, 2020; August 27, 2020; June 15, 2021; and October 28, 2021. Each interview was memorialized in an FBI 302 report and produced to the defense in discovery. The defense relied on these reports—as any defense team would—in developing its theory of the case, its understanding of the government's proof, and its preparation for cross-examination.

### III.   The Eve-of-Trial Disclosure

On Friday, March 13, 2026, at 5:19 PM—*i.e.*, the last business day before the start of jury selection—the government disclosed that Mr. Perera and his attorney had submitted written edits to all four 302 reports. The government also disclosed—again, for the first time—that Mr. Perera has admitted to manipulating a financial document (that has since become Government Exhibit 197) in 2017 to display the name "Damian Riviera" rather than the true name of the person

involved. The government has not provided the correspondence between Mr. Perera's attorney and the prosecution team, but it has provided the underlying FBI agent notes.

### IV.     The Nature and Scope of the Edits

The edits encompass more than sixty substantive changes to all four interview reports. Most of these changes are substantive and reveal a witness whose account of critical events has been systematically revised—in coordination with his attorney, in the days before trial—to remove admissions, add new inculpatory content directed at Mr. Rivera and Ms. Nuhfer, and construct a more favorable narrative for the government.

#### ARGUMENT

### I.      This Court should authorize the pre-trial deposition of Hugo Perera pursuant to the Court's inherent authority.

> i.     *The Court's inherent authority permits depositions.*

Federal courts possess the inherent authority to manage the proceedings before them, authority that exists independently of the Federal Rules of Criminal Procedure and encompasses the power to order pre-trial depositions when the circumstances demand it. *See United States v. Carrigan,* 804 F.2d 599, 604 (10th Cir. 1986) (finding that a district court had the "jurisdiction" to "order the taking of adverse witness's depositions in criminal cases" in "unusual circumstances" like the ones at issue here).

That inherent authority has been exercised to authorize pre-trial depositions in precisely the circumstances presented here: where the government's FBI 302 interview reports have been shown to be inaccurate, distorted, or materially incomplete, and where the defense cannot

adequately prepare for trial—or the court cannot make necessary pre-trial determinations—without sworn testimony from the relevant witnesses.

The most compelling precedent for the Court's exercise of its inherent authority is *United States v. Meek*, No. 19-cr-00378, ECF No. 267 (S.D. Ind. July 12, 2022) (**Exhibit 2**). The parallels between *Meek* and this case are striking and require extended discussion.

In *Meek*, the defendant was a corporate executive charged with securities fraud and related offenses. Prior to indictment, he had participated in a proffer session with the government. After receiving discovery—including the FBI's 302 report purporting to summarize that session—defense counsel wrote to the prosecution identifying specific inaccuracies in the 302: the report omitted the defendant's repeated denials of knowledge and criminal intent, and it affirmatively misattributed to the defendant statements that had actually been made by the FBI agents themselves. Defense counsel requested that the government review all interview memoranda and notes in the investigation, correct inaccuracies, and ensure *Brady* compliance. The government did not meaningfully respond.

The court, confronted with this record, made an express factual finding on the record that "the FD-302 Report of [the defendant's] proffer statement is not entirely accurate and is in some ways distorted." *Id.* at 2. The court further found that "more information is necessary to determine whether the Government's FD-302 Reports concerning statements given by potential witnesses are similarly inaccurate, or whether there is any merit to [the defendant's] contention that the Government may have committed systemic misconduct." *Id.* Relying squarely on its "inherent authority to regulate the proceedings before it," the court authorized the defendants to depose ten witnesses—five per defendant—for the express purpose of testing the accuracy of the 302 reports concerning those witnesses' statements. *Id.* The government objected, but the court overruled it.

Before the depositions could be completed, the government moved to dismiss the indictment with prejudice, offering no reason other than that dismissal was "in the interests of justice." *United States v. Meek*, No. 19-cr-00378, ECF No. 278 (S.D. Ind. Aug. 10, 2022)

The *Meek* court's exercise of inherent authority rested on three independent predicates: (1) a judicial finding that an FBI 302 report was inaccurate and distorted; (2) the absence of any adequate alternative mechanism to test the accuracy of the government's interview records; and (3) the court's institutional obligation, prior to trial, to determine the scope of any systemic misconduct affecting the integrity of the proceeding. All three predicates are present here—and this case is actually stronger than *Meek* on every dimension.

> ii. *Exceptional circumstances are overwhelmingly present, weighing strongly in favor of this Court exercising its inherent authority.*

The circumstances here are not merely "exceptional"—they are without precedent in defense counsels' collective decades of experience. Each of the following constitutes an independent exceptional circumstance; together, they are overwhelming:

- <u>The witness and his attorney have rewritten wholesale all four of the official FBI interview reports on the eve of trial</u>. An FBI 302 is not a living document; it is the government's contemporaneous record of a witness interview. Mr. Perera and his attorney submitted more than sixty substantive edits to four separate 302 reports spanning nearly two years of interviews. This is not error-correction; it is the reconstruction of an official government record. It is also worth noting that at our request, the government produced on Saturday the handwritten notes from the FBI agents of the interviews. Those contemporaneous notes comport with the typewritten 302s and ***not*** with the rewrites.

7

#111381549v1

- <u>It is going to be tedious and difficult to cross examine Mr. Perera with FBI 302s.</u> The original 302s—upon which the defense relied for years—have been replaced by a new narrative. Is Mr. Perera—when cross-examined at trial—going to say that the agents misreported what he said over sixty times? Or is he going to say that the "changes" reflect his new story today? The defense has asked the government this precise question without a response. The defense also has asked the government for the circumstances of how the 302s were edited. The government only told us that they provided Mr. Perera's counsel with the 302s and asked him not to share them with his client. However, they were either shared in writing or orally. The government refuses to tell us anything else about the process or share its correspondence, necessitating a deposition.

- <u>*Brady/Giglio* violations make it impossible to prepare cross-examination.</u> The edits are *Brady/Giglio* material, as they reveal prior inconsistent statements, demonstrate the witness's willingness to alter his account, and reflect an ongoing relationship between Mr. Perera's attorney and the prosecution. *See Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). These disclosures arrived at the last possible moment.

- <u>The bank fraud admission is new *Brady/Giglio* material.</u> Perera has admitted for the first time that he manipulated a financial document (that is now Government Exhibit 197) to display a false name, conduct constituting federal bank fraud under 18 U.S.C. § 1344, which carries a possible prison sentence of up to 30 years. This uncharged criminal exposure gives Perera a powerful motive to cooperate with and please the government. Yet the government has

8

only disclosed this item on the eve of trial, thus negating whatever opportunity the defense may have had to investigate it. *See United States v. Ignasiak*, 667 F.3d 1217, 1238–1239 (11th Cir. 2012).

- <u>There is no cooperation agreement or immunity</u>. Despite the extensive coordination between Mr. Perera's attorney and the prosecution team, Mr. Perera has no formal cooperation agreement, no proffer agreement, and no immunity. The jury is entitled to evaluate whether he is testifying under an implicit expectation of favorable treatment—a classic *Giglio* bias argument. The absence of a formal agreement does not eliminate the bias; if anything, it makes it worse, because the implicit nature of the arrangement makes it harder to expose at trial.

- <u>The deposition preserves a sworn baseline for impeachment.</u> Even if this Court determines the deposition cannot be used substantively at trial, the deposition will create a sworn transcript of Mr. Perera's current account that can be used for impeachment under Fed. R. Evid. 613 if he changes his testimony yet again, this time from the witness stand.

  iii. *No countervailing factor renders this deposition unjust.*

The government cannot claim prejudice from requiring its own witness to testify under oath before trial. If Mr. Perera is prepared to tell the truth, a deposition costs the government nothing. If the government is concerned that a deposition will expose further inconsistencies in Mr. Perera's account, that concern only confirms why the defense needs it.

  iv. *Timing permits the deposition without significant disruption.*

Jury selection is scheduled for this Monday and Tuesday (and perhaps Wednesday). Opening statements will not take place until the following week. This provides ample time to complete Mr. Perera's deposition—the defense requests a single day—without any disruption to the trial schedule. To the extent any minor delay would be warranted, such a delay would be entirely attributable to the government's decision to make this disclosure on the last business day before jury selection.

## II. This Court should authorize Rule 15 depositions of the FBI agents who authored the now heavily edited Perera 302 reports.

The defense also moves to depose—prior to trial—the FBI agent(s) who authored the four 302 reports at issue. This request serves three different but equally critical purposes than the Perera deposition would serve.

*First*, the original 302 reports—as produced to the defense before the edits—are the only contemporaneous record of what Mr. Perera actually said during his FBI interviews. The agents who prepared those reports are the only witnesses who can confirm the accuracy of the original text, explain discrepancies between the original and edited versions, and authenticate the original reports for use as prior inconsistent statements to impeach Mr. Perera at trial. Without their sworn testimony, the defense may have difficulty establishing the foundation necessary to confront Mr. Perera with his original statements.

*Second*, the editing process raises fundamental questions about the integrity of the 302 reports that the agents themselves must answer: Were the agents consulted before the edits were submitted? Did they review or approve any changes? Did they prepare new or supplemental 302 reports? Do the original reports accurately reflect what Mr. Perera said, and if so, why are more than sixty substantive changes being made years later? Only the agents can answer these questions. Their answers will determine the scope and strategy of trial cross-examination.

*Third*, the agents may possess additional information not reflected in the 302 reports—including rough notes, handwritten records, and other materials that may become producible Jencks Act statements once the agents' testimony is taken. Deposing the agents before trial allows the defense to identify and compel production of all such materials before Mr. Perera takes the stand. Such material is directly relevant in light of Perera's "changes" to the reports.

The exceptional circumstances justifying a Rule 15 deposition of the agents track those supporting the Perera deposition: eve-of-trial disclosure, fundamental alteration of the evidentiary record, irreplaceable testimony bearing on the integrity of the government's proof, and no adequate remedy at trial. The defense again requests a single day for the agents.

### III. The Court should compel the immediate production of all underlying correspondence, and related materials.

To the government's credit, it did produce the FBI's handwritten notes of the interviews on March 14, 2026, upon the request of the defense. These notes demonstrate that Mr. Perera said what the 302s reflect. This raises the questions of why all of the changes now on the eve of trial and how did these changes come about.

The defense therefore requests the following:

1. Any other contemporaneous records created by any FBI agent during or immediately after any interview or debriefing of Hugo Perera;

2. All drafts, versions, and iterations of every FBI 302 report relating to Mr. Perera, in the form they existed before the edits, including any intermediate drafts;

3. The document or documents containing the written edits submitted by Mr. Perera's attorney, in whatever form they exist (email, letter, redlined 302 report, tracked-changes document, or otherwise);

11

4. All correspondence, emails, letters, memoranda, and other communications between Mr. Perera or his attorney and any member of the prosecution team relating to the 302 reports, the editing process, Mr. Perera's anticipated testimony, Government Exhibit 197, or any potential benefits to Mr. Perera in connection with his cooperation; and

5. All materials relating to Perera's admitted manipulation of Government Exhibit 197, including any investigation of that conduct.

## CONCLUSION

This disclosure—delivered late on the Friday afternoon before trial—is as prejudicial as it is remarkable. The government's star witness and his attorney have essentially rewritten his FBI 302 interview reports. Mr. Perera has retracted his admission that the conduct he participated in was illegal. He has added meetings, upgraded his certainty from "thought" to "knew" across a dozen critical points, confessed to backdating a legal document, and admitted to manipulating a bank document in 2017—the last of which constitutes federal bank fraud. And now this witness is expected to take the stand with the jury knowing none of this context, while the defense prepares cross-examination without a sworn prior statement, and with a few days to process a disclosure that the government has apparently known about for some time.[3]

The Court has the inherent authority to order depositions. These circumstances are exceptional by any measure. There is time to take the depositions before openings. There is no prejudice to the government. And there is no other mechanism that will adequately protect Mr.

---

[3] The government has refused to tell the defense when it received the edits to the 302 reports from Mr. Perera's attorney, leaving the defense with no choice but to assume that this communication was not made recently.

Rivera's and Ms. Nuhfer's constitutional right to confront this witness with the full truth of his history.

WHEREFORE, the defense respectfully requests that this Court enter an order:

1. Authorizing and directing the pre-trial Rule 15 deposition of Hugo Perera on an expedited basis before opening statements, conducted under oath and recorded by a stenographer and videographer;

2. Authorizing and directing the pre-trial Rule 15 depositions of the FBI agent(s) who authored the 302 reports of Hugo Perera's interviews, conducted on an expedited basis before opening statements; and

3. Compelling the government to produce immediately all materials described above, including all versions of the 302 reports, and all correspondence between Mr. Perera's attorney and the prosecution team.

**Respectfully submitted on March 15, 2026,**

| | |
|---|---|
| **JONES WALKER LLP**<br>201 S. Biscayne Blvd., Suite 3000<br>Miami, FL 33131<br>Tel: (305) 679-5700<br>By:   */s/ David S. Weinstein*<br>      **David S. Weinstein**<br>      Florida Bar No. 749214<br>      dweinstein@joneswalker.com<br>      **Thomas P. Bardenwerper**<br>      Florida Bar No. 1044458<br>      tbardenwerper@joneswalker.com<br><br>**EDWARD R. SHOHAT, PA**<br>201 S. Biscayne Blvd., Suite 3000<br>Miami, FL 33131<br>Tel: (786) 525-3621<br>By:   */s/ Edward R. Shohat*<br>      **Edward R. Shohat**<br>      Florida Bar No. 152634 | **MARKUS/MOSS PLLC**<br>40 N.W. Third Street, PH1<br>Miami, FL 33128<br>Tel: (305) 379-6667<br>By:   */s/ David Oscar Markus*<br>      **David Oscar Markus**<br>      Florida Bar No. 119318<br>      dmarkus@markuslaw.com<br>      **A. Margot Moss**<br>      Florida Bar No. 91870<br>      mmoss@markuslaw.com<br>      **Melissa Madrigal**<br>      Florida Bar No. 93241<br>      mmadrigal@markuslaw.com<br><br>*Counsel for Esther Nuhfer* |

#111381549v1

| | |
|---|---|
| ed@edwardrshohat.com<br><br>*Counsel for David Rivera* | |

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 88.9(a), undersigned counsel certifies that he has conferred with AUSA Harold Schimkat who opposes the relief sought in this motion.

*/s/ David S. Weinstein*
David S. Weinstein

#111381549v1