**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 22-CR-20552-DAMIAN/TORRES**

**UNITED STATES OF AMERICA**

**vs.**

**DAVID RIVERA and**
**ESTHER NUHFER,**

      **Defendants.**

                               /

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS'**
**EXPEDITED MOTION TO TAKE CERTAIN DEPOSITIONS**
**AND COMPEL PRODUCTION OF CERTAIN WRITTEN MATERIALS (DE 399)**

The Defendants' Motion is based on a fatally flawed premise. In their view, Hugo Perera

("Perera") "submitted more than sixty substantive edits to the FBI 302 interview reports" and

"upended" the defense's trial preparation through his "after-the-fact revisions." (Mot. 1–2). But

Perera did not in fact "edit" or change any of the 302s in this case. These 302s are the same now

as they were when they were first drafted by the FBI and subsequently provided to Defendants in

discovery in November 2024. Neither the government nor the agents have adopted Perera's and

his lawyer's "edits" by amending, editing, or changing the original 302s, and it is of course obvious

that a witness cannot (and does not) have the ability to unilaterally rewrite an agent's report.

At bottom, what the so-called "edits" amount to is nothing more than an email to the

government in which Perera's attorneys represent, based on their conversations with their client,

that the four FBI 302 reports at issue (totaling a combined 26 pages) contain a number of

statements that, in their view, are either erroneous or incomplete and then set forth their suggested

"edits" to correct or clarify those statements based on Perera's current recollection on matters reflected in the reports.  Those matters, in turn, range from the non-substantive (such as the name of his former restaurant in Coral Gables) to more substantive issues (such as his knowledge, or lack thereof, regarding the requirement to register under FARA in 2017).[1]  However, as the government has disclosed both the reports and Perera's "edits" or "objections" to them (and has also since turned over the agents' interview notes for the FBI 302s), Defendants' counsel can prepare and use one or all of them at trial to cross-examine Perera in a manner subject to the rules of evidence and procedure.

Moreover, even if the Court accepts Defendants' hyperbolic premise that Perera's "edits" constitute an "extraordinary" circumstance, extraordinary circumstances are not synonymous with extraordinary prejudice, nor do extraordinary circumstances necessarily warrant extraordinary remedies. Rather than prejudicing Defendants, Perera's "objections" to the 302s are if anything a potential benefit for Defendants coming in the form of his own attorney's proffer rather than a supplemental FBI 302 interview report. These "objections" have informed the defense of Perera's anticipated testimony on various subject matters well in advance of his taking the stand and they will also provide an opportunity for defense counsel to potentially impeach Perera with additional information learned before trial. Still unsatisfied, however, the Defendants want this Court to order

---

[1] The Defendants concede that a great deal of these objections are "of no moment" and deal with trivial matters such as where Perera went to high school. (Mot. at 1 n.2). Moreover, their principal complaint (that Perera's "objections" removed his "prior admission that the conduct at issue was illegal") is itself greatly overstated. The prior 302 reports provided in discovery reflect that Perera's attorney had previously clarified that Perera was unfamiliar with FARA's registration requirements in 2017 and that Perera himself had told the government in his interviews (corroborated by various text messages from 2017 produced in discovery) that Perera had asked Rivera from time to time to consult with an attorney regarding the legality of their activities.

2

several depositions and compel the Government to "immediately" produce additional records and notes. Since there is no legal basis for these remedies, the Court should deny the Motion.

<u>**Analysis**</u>

The Defendants first argue that this Court should authorize a pre-trial deposition of Hugo Perera under its "inherent authority." (Mot. 5). The Defendants posit that district courts can "order pre-trial depositions [in criminal cases] when the circumstances demand it." (*Id.* (citing *United States v. Carrigan*, 804 F.2d 599, 604 (10th Cir. 1986)). And, the Defendants continue, the sudden disclosure of the Perera's "objections" to the 302s present "exceptional" circumstances because: (1) the witness "reconstruct[ed] an official government record"; (2) it would be "tedious and difficult to cross-examine Mr. Perera" with the 302s; (3) Mr. Perera purportedly "admitted . . . that he manipulated a financial document" and the defense needs an opportunity to investigate this specific claim; and (4) the defense needs a more complete opportunity to examine Mr. Perera for bias, additional *Giglio* material, or other defense purposes. (*Id.* at 7–9). The purpose of this extraordinary deposition is clear from the face of the Motion: Defendants want an opportunity to conduct this additional discovery so they can better impeach a "key" government witness. Mot. 1.

To the extent a district court has the inherent authority to order a pre-trial deposition in a criminal case, it is not appropriate for the Court to exercise that authority here. "Principles of deference counsel restraint in resorting to inherent power, and require its use to be a reasonable response to the problems and needs that provoke it[.]" *Degen v. United States*, 517 U.S. 820, 823–24 (1996) (internal citations omitted). The few courts that have ordered pre-trial depositions under their own inherent authority have done so when <u>the government's misconduct</u> interfered "with a defendant's access to potential prosecution witnesses[.]" *Carrigan*, 804 F.2d at 604 (denying

government's mandamus petition to vacate order permitting defense depositions of government witnesses where the government had told the witnesses that "they could not or should not talk with defense representatives"); *see also United States v. Blanco*, No. 09-CR-1, 2010 WL 2640060, at *1 (D. Utah June 29, 2010) ("Under [its inherent authority], a court may sanction a prosecutor for obstructing communications with a prospective witness by ordering a deposition."); *United States v. Rogers*, 16-CR-18, 2018 WL 11297469, at *1 (S.D. Ind. Dec. 10, 2018) ("The depositions **are not being used as a discovery mechanism**; rather, they are necessary to determine **whether the Government has committed misconduct** in that course of this case that is so egregious as to require the dismissal of the indictment." (emphases added)).

There is no such government misconduct here, and Defendants do not even specifically accuse the government of misconduct. The government did not deprive the Defendants of the ability to contact Perera, nor did it hide Perera's "edits" from the defense. Instead, as the government already explained to Defendants, it provided Perera's attorney with the agents' 302s as a courtesy to help him prepare his client to testify and, in doing so, asked him not to share the reports with Perera. Defendants do not allege (nor could they) that the government committed misconduct in taking this commonplace step with a witness who is represented by counsel or indeed that the government would have engaged in misconduct by asking Perera's attorneys to review the reports with Perera to identify any inaccuracies they believed the reports may have contained. Regardless, Perera's attorneys clearly discussed the reports with Perera in detail and then shared the email summary of those corrections and/or clarifications with the government who in turn provided them to defense counsel in advance of trial—and several weeks before Perera is

4

expected to testify. (*See* Mot. 8). In sum, there is no link between Perera's objections and any government misconduct that would justify a deposition under this Court's inherent authority.

Defendants' Motion relies heavily on an order in *United States v. Meek*, No. 19-CR-00378 (S.D. Ind. July 12, 2022), where the district court ordered depositions because "the FD-302 Report of Mr. Peavler's proffer statement is not entirely accurate and is in some ways distorted." (DE 399-2 at 3). Although the Defendants try their best to analogize this case to *Meek*, they ignore that the *Meek* court specifically ordered these depositions to determine if "there [was] any merit to Mr. Peavler's contention that the Government may have committed systemic misconduct." (*Id.*). Again, unlike *Meek*, there is no allegation of government misconduct here, and the Court cannot order a pre-trial deposition under its inherent authority without a substantial allegation of government misconduct. *See Carrigan*, 804 F.2d at 604. Put another way, the Court cannot order a pre-trial deposition under its inherent authority so it can "be[ ] used as a discovery mechanism[.]" *Rogers*, 2018 WL 11297469, at *1.

Next, Defendants move to depose "the FBI agent(s) who authored the four 302 reports at issue." (Mot. 10). Defendants claim that these depositions are required to "confirm the accuracy" of the original 302 reports and to learn if the agents had any involvement with the so-called "edited" 302s. (*Id.* at 10–11). Unlike Mr. Perera's proposed deposition, Defendants couch this request under Rule 15 of the Federal Rules of Criminal Procedure. (*See id.*).[2]

There is no legal basis to depose these FBI agents under Rule 15. Rule 15 applies in only two circumstances: (1) when "a prospective witness [must] be deposed in order to preserve

---

[2] Of course, the Government would also object to an "inherent authority" deposition for all the reasons discussed above.

testimony for trial"; or (2) when a witness is detained under 18 U.S.C. § 3144. Fed. R. Crim. P. 15(a)(1)–(2). "The moving party bears the burden of showing that exceptional circumstances exist to warrant the deposition. Three factors guide the exceptional-circumstances analysis: whether (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the movant's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party." *United States v. Carter*, 776 F.3d 1309, 1325 (11th Cir. 2015) (internal citations and quotation marks omitted). The FBI agents are certainly not detained under § 3144, and Defendants have utterly failed to assert any "exceptional circumstance" justifying the preservation of the agents' testimony in advance of trial. (*See* Mot. at 10–11); *see also United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993) ("Depositions generally are disfavored in criminal cases. Their 'only authorized purpose is to preserve evidence, not to afford discovery.'" (internal citation omitted) (quoting *Simon v. United States*, 644 F.2d 490, 498 n.12 (5th Cir. 1981))).

If Defendants wish to call these FBI agents—the authors of interview reports for a witness (*see* Mot. 3-4)—to potentially impeach Perera's trial testimony, they certainly can take steps to subpoena them. However, Rule 15 does not offer an alternative method through deposition to pursue that aim, and defendants offer no authority supporting such a request.  To the contrary, the law is clear that a Rule 15 deposition is for the preservation of evidence, not as a discovery device, *Drogoul*, 1 F.3d at 1551, and, consequently, there is no basis for the Court to grant defendants' requested relief.

Finally, Defendants request "the immediate production of all underlying correspondence, and related materials" to the "edited" 302s. (Mot. 11). They specifically request: (1) any

6

"contemporaneous records created by any FBI agent during or immediately after any interview or debriefing of Hugo Perera"; (2) "[a]ll drafts, versions, and iterations of every FBI 302 report relating to Mr. Perera, in the form they existed before the edits, including any intermediate drafts"; (3) "[t]he document or documents containing the written edits submitted by Mr. Perera's attorney, in whatever form they exist (email, letter, redlined 302 report, tracked-changes document, or otherwise)"; (4) "[a]ll correspondence, emails, letters, memoranda, and other communications between Mr. Perera or his attorney and any member of the prosecution team relating to the 302 reports, the editing process, Mr. Perera's anticipated testimony, Government Exhibit 197, or any potential benefits to Mr. Perera in connection with his cooperation"; and (5) "[a]ll materials relating to Perera's admitted manipulation of Government Exhibit 197, including any investigation of that conduct." (Mot. 11–12).

Defendants do not even attempt to provide a legal basis to justify these wide-ranging demands, and for good reason. The first two categories are documents that are simply not discoverable. *See, e.g.*, *United States v. Soto*, 711 F.2d 1558, 1562 (11th Cir. 1983) (holding that "rough notes or the rough draft of a report prepared by a government agent" are not discoverable, even if "the agent uses them to prepare his final report"); *United States v. Van Nguyen*, 456 F. Supp. 2d 1366, 1367 (N.D. Ga. 2006) (holding "interview notes" are not discoverable (citing *United States v. Jordan*, 316 F.3d 1215, 1227 (11th Cir. 2003))). Moreover, as previously stated, the government has already voluntarily provided defense counsel with copies of the agents' notes for the interview reports, so this request has been rendered moot to a significant extent.

As to any documents concerning "the written edits submitted by Mr. Perera's attorney," the government has already provided all of the edits it received to defense counsel regarding

7

Perera's edits to his 302s and the full email from his attorney to the government was included as an exhibit to Perera's attorneys sur-reply in the motion to quash pending before Magistrate Judge Torres. Any additional written records (if they even exist) would be in Perera's counsel's possession.

Next, any communications between the government and Perera's attorney about Perera and his putative testimony are not subject to discovery under Rule 16 or otherwise, and defendants offer no authority to support this request.

Lastly, the Government has agreed not to use Government's Exhibit 197 in its case-in-chief, so there is no basis to request additional records concerning that exhibit. Defendants will be free to impeach Perera with Government's Exhibit 197 at trial if they are so inclined. Of course, if Defendants choose to impeach Perera using Government's Exhibit 197, the government would be free to elicit on redirect why Perera might have felt compelled to modify the document to avoid telling the bank that Defendant Rivera was involved in the transaction.

**Conclusion**

Although Perera's first-hand, through his attorneys, edits, objections, or clarifications (whatever term may apply) to parts of the 302s may have come as a surprise to Defendants, the government informed Defendants of these matters before trial commenced and defense counsel will be able to incorporate them into their preparation of an effective cross-examination for when Perera testifies at trial. Defendants cannot use these developments as an excuse to begin an extraordinary, far-reaching, and legally dubious request for additional discovery. For the foregoing reasons, the Court should deny the Defendants' Expedited Motion to Take Certain Depositions and Compel Production of Certain Written Materials.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:     _/s/ Harold E. Schimkat_
Harold E. Schimkat, AUSA
Roger Cruz, AUSA
Court ID No. A5500567
Fla. Bar No. 157971
99 N.E. 4th Street, 4th Floor
Miami, Florida 33128
Office: (305) 961-9298
Cell: (786) 378-4344
Harold.schimkat@usdoj.gov

&

_/s/ David J. Ryan_
David J. Ryan
Trial Attorney, National Security Division
Special Bar ID No. A5503306
District of Columbia Bar No. 888325195
950 Pennsylvania Ave., NW, Room 7700
Washington, DC 20530
Tel: (202) 353-7842
David.ryan2@usdoj.gov

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 19, 2026, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.

*/s/ Harold E. Schimkat*
Harold E. Schimkat
Assistant United States Attorney
